**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **MATTHEW AND MONICA DAWKINS,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:24-cv-639** |
| | § | |
| **ALLSTATE VEHICLE & PROPERTY** | § | |
| **INSURANCE COMPANY** | § | |
| *Defendant.* | § | |

**PLAINTIFF'S MOTION TO COMPEL APPRAISAL
AND ABATEMENT**

**COMES NOW** Plaintiff in the above-styled lawsuit and files this Motion to Compel

Appraisal of Plaintiff's property damage claim as authorized by the insurance policy at issue in

this case and abate the lawsuit pending completion of the appraisal process, and would respectfully

show the Court as follows:

I.
FACTUAL BACKGROUND

1. This lawsuit arises out of a dispute over an insurance claim made by Plaintiff for damage
   to their property.

2. Defendant's policy provides for appraisal as a means for determining the amount of loss
   when the parties are unable to agree to the amount of loss.

3. Plaintiff timely invoked the appraisal clause of Defendant's policy.

4. To date, Defendant has not named its appraiser pursuant to the insurance agreement.

5. To date, Defendant has refused to participate in the appraisal process.

II.
OVERVIEW

6. The case should be abated and the parties should be compelled to complete the appraisal

1

process.

7. This suit arises out of a disagreement over the amount of loss to Plaintiff's property.

8. The insurance policy contains an appraisal clause for resolution of this type of dispute. The appraisal clause requires the parties, upon written demand, to submit to the appraisal process when they fail to agree on the "amount of loss." Despite this contractual agreement, Defendant refuses to honor this appraisal clause.

9. The Supreme Court of Texas held in *State Farm Lloyds v. Johnson,* 290 S.W.3d 886 (Tex. 2009), that in every property damage claim, someone must determine the "amount of loss." An appraisal clause binds the parties to have the extent or amount of the loss determined in a particular way. Like any other contractual provision, appraisal clauses should be enforced. *Id.* at 895.

10. Texas courts have consistently enforced appraisal provisions with virtually no exception. *See In re Universal Underwriters of Tex. Ins. Co.,* 345 S.W.3d 404, 407 (Tex. 2011) (holding that appraisal clauses generally are enforceable, absent illegality or waiver); *In re Slavonic Mut. Fire Ins. Ass'n,* 308 S.W.3d 556, 559 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

11. Completion of appraisal in accordance with Defendant's policy is a condition precedent to filing suit on the insurance contract. *Woodward v. Liberty Mut. Ins. Co.* No. 3:09-CV-0228-G, 2010 WL 1186323 *3 (N.D. Tex. Mar. 26, 2010). "When one party to an insurance contract properly invokes the contract's appraisal clause…a court should exercise its discretion to stay the suit pending completion of the appraisal." *Woodward,* 2010 WL 1186323 at *3; *see also In re Slavonic Mut. Fire Ins. Ass'n,* 308 S.W.3d 556, 565 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("[a] remedy to enforce a condition precedent

in its policy is abatement of the case"); *see also United Neurology, PA v. Hartford Lloyd's Ins. Co.,* No. H-10-4248, 2012 WL 423417 (S.D. Tex. Feb. 8, 2012) (abating case while the appraisal goes forward); *Rice v. Certain Underwriters at Lloyds*, Civ. A. No. H-10-4660, 2011 WL 240421 (S.D. Tex. Jan. 21, 2011) (abating case until appraisal process is complete).

12. Here, Plaintiff timely invoked the appraisal provisions of its policy.  Plaintiff requests that the court exercise its discretion to abate this case pending the completion of the appraisal process.

13. Furthermore, judicial economy is best served by staying this matter until such time as the appraisal process is complete.  *See Slavonic,* 308 S.W.3d at 565; *see also Butler v. Prop. & Cas. Ins. Co. of Hartford,* Civ. A. No. H-10-3613, 2011 WL 2174965 (S.D. Tex. June 3, 2011) (holding that abatement of the case pending appraisal is appropriate and "in the interest of the efficient and inexpensive administration of justice").  Moving forward with discovery related to alleged breach of contract and extra-contractual causes of action when a condition precedent to the breach of contract claim has not been satisfied is a waste of the parties' and the Court's resources.

14. The purpose of appraisal is to determine the amount of loss and possibly resolve the case with "no attorneys, no lawsuit, no pleadings, and no hearings."  *State Farm Lloyd's v. Johnson,* 290 S.W.3d 886, 894 (Tex. 2009) (noting that appraisals are less costly and faster than litigation, and often resolve disputes such as this one).  Consistent with the purpose of appraisal, *i.e.*, to prevent or reduce litigation efforts and costs, Plaintiff requests the Court abate this lawsuit until the appraisal process is completed.

III.
ARGUMENT & AUTHORITIES

15. Texas courts specifically enforce appraisal clauses in standard Texas policies and have routinely required insurers to participate in the appraisal process as contracted under their policies. *See Universal,* 345 S.W.3d at 412; *In re Allstate County Mut. Ins. Co.,* 85 S.W.3d 193, 196 n. 5 (Tex. 2002); *In re State Farm Lloyds,* 170 S.W.3d 629, 634-635 (Tex. App.—El Paso 2005, orig. proceeding); *Vanguard Underwriters Ins. Co. v. Smith,* 999 S.W.2d 448, 449 (Tex. App.—Amarillo, 1999, no pet.).

16. The Supreme Court of Texas has reaffirmed the mandatory nature and enforceability of appraisal clauses and noted that this is a principle that has been followed consistently since at least 1888. *Universal,* 345 S.W.3d at 406-07 (holding that appraisal clauses are generally enforceable, absent illegality or waiver); *Johnson,* 290 S.W.3d at 888-89 (citing *Scottish Union & Nat. Ins. Co. v. Clancy,* 8 S.W. 630 (Tex. 1888)); *see also In re Allstate,* 85 S.W.3d at 196.

17. In *Johnson,* the Texas Supreme Court affirmed the Dallas Court of Appeals holding that appraisal must still be enforced even if there is some underlying dispute because the parties still need to know the "amount of loss." *Johnson,* 290 S.W.3d at 895. The facts of *Johnson* are instructive. There, the insured made a claim under his State Farm Lloyds homeowners policy alleging the roof of the home had been damaged during a hail storm. State Farm Lloyds' adjuster concluded that hail caused only minimal damage to the ridgeline of the roof which fell below the policy's deductible. *Id.* Accordingly, no payment was made on the claim. The insured's contractor argued that hail had damaged the entire roof thus mandating that the entire roof be replaced. *Id.* The Texas Supreme Court determined that

4

the dispute over roof damage was properly subject to the policy's appraisal provision holding that "[a]ny appraisal necessarily includes some causation element, because setting the 'amount of loss' requires appraisers to decide between damages for which coverage is claimed from damages for everything else." *Id.* at 893. The application of *Johnson* to this case is clear; irrespective of the cause of the insured's claimed roof damage (old damage or new damage), or whether it is a covered loss, someone must determine what the amount of that loss is resulting from the alleged storm.

18. It is undisputed that the appraisal clause applies to the dispute over the amount of Plaintiff's loss. Plaintiff has properly and timely invoked the appraisal clause in the Policy. Therefore, Texas law mandates that Defendant comply with the appraisal clause as properly requested by Plaintiff.

19. In *Johnson,* the Court held that "the scope of appraisal is damages, not liability." *Id.* at 890. However, this does not mean the cause of damage is not relevant in the appraisal process. In explaining its holding, the *Johnson* Court recognized that "causation relates to both liability and damages because it is the connection between them." *Id.* at 891-892. Therefore, "appraisers must always consider causation, at least as an initial matter." *Id.* at 893. The Court made clear that, "an appraisal is for damages caused by a specific occurrence, not every repair a home might need." *Id.* Therefore, appraisal cannot be avoided merely because there is a question of causation. *Id.*

20. In *Johnson,* State Farm made the argument that appraisal was not appropriate because there was a dispute concerning causation. The Supreme Court held that State Farm's argument failed because appraisers must be allowed to allocate damages between covered and

excluded perils or they would never be able to assess hail damage unless a roof was brand new.

21. This holding has been followed by the appellate courts in numerous cases in which the insurer denied there was a covered loss. *See In re Texas Windstorm Ins. Ass'n,* 2013 WL 4806996 (Tex.App.—Houston [14th Dist.] 2013, orig. proceeding); *In re Public Service Mut. Ins. Co.,* 2013 WL 692441 (Tex.App.—Austin 2013, orig. proceeding), *In re Southern Ins. Co.,* 2011 WL 846205 (Tex.App.—Beaumont 2011, orig. proceeding).

22. The court in *In re Southern,* 2011 WL 846205 (Tex.App.—Beaumont 2011, orig. proceeding) rejected the plaintiff's argument that the insurer must agree that the loss is covered by the policy before there was a failure to agree as to "amount of loss." The court held:

> The parties dispute causation. Southern contends that the damage to Neisen's home is the result of long term repeated leakage, and Neisen contends the damage was caused by winds during Hurricane Ike. Nevertheless, following the Supreme Court's decision in *Johnson,* we conclude that under the circumstances the appraisal should be determined as an initial matter and the parties may then litigate causation questions. *See id.* at 894. "[W]hen an indivisible injury to property may have several causes, appraisers can assess the amount of damage and leave causation up to the courts. When divisible losses are involved, appraisers can decide the cost to repair each without deciding who must pay for it." *Id.* "When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong." *Id.* The appraisal clause "binds the parties to have the extent or amount of the loss determined in a particular way, leaving the question of liability for such loss to be determined, if necessary, by the courts." *Scottish Union & Nat'l Ins. Co.,* 8 S.W. at 631.

23. Under similar facts here, the policy does not require the insurer to acknowledge liability before appraisal is appropriate. As such, under Texas law, the policy appraisal provisions should be enforced in this matter.

24. While Texas courts have held that an insured can waive its right to appraisal, the intent for such waiver must be clearly demonstrated by the surrounding facts and circumstances. *In re Continental Cas. Co.,* No. 141-10-00709-CV, 2010 WL 3703664, at *3 (Tex.App.—Houston [14th Dist.] September 23, 2010, no pet.) (citing *Jernigan v. Langley,* 111 S.W.3d 153, 156-57 (Tex. 2003)).

25. Texas courts are extraordinarily hesitant to find waiver of an appraisal clause. *See Scottish Union,* 8 S.W. at 632 (holding inspection of damage, partial adjustment of claim, offer to pay for certain items and acceptance of inventory of lost or damaged items did not waive appraisal as to value of disputed items damaged in fire). To constitute a waiver of appraisal, the action by the insured must be "reasonably calculated to induce the insurer to believe that compliance by him with the terms and requirements of the policy is not desired, or would be of no effect if performed. The acts relied on must amount to a denial of liability or a refusal to pay the loss." *Id.*

26. The facts in this case do not give rise to a waiver. Plaintiff invoked appraisal only after Defendant failed to pay the full amount owed under the policy.  Moreover, Plaintiff invoked the appraisal provision after the parties reached an impasse in negotiations.  This is the direct evidence of disagreement between the parties on the amount of loss, thereby justifying Plaintiff's demand for appraisal.

27. In addition, a "waiver is an affirmative defense that can be asserted against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right." *In re Acadia Ins. Co.,* 279 S.W.3d 777, 779 (Tex. App.—Amarillo 2007, orig. proceeding) *(citing Tenneco, Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 643

(Tex. 1996)) (applying waiver standard to appraisal clause). As such, the Defendant bears the burden of showing affirmative facts evidencing an insured's intention to relinquish the right to appraisal. *In re State Farm Lloyds,* 170 S.W.3d at 634. Defendant has not and cannot show any facts to meet its burden in this case.

28. The *Universal* Court noted that "mere delay is not enough to find waiver; a party must show that it has been prejudiced." *Universal,* 345 S.W.3d at 411 (citing *Terra Indus., Inc. v. Commonwealth Ins. Co. of Am.,* 981 F.Supp. 581 (N.D. Iowa 1997)). The court reasoned that "[i]f the insured has suffered no prejudice due to delay, it makes little sense to prohibit appraisal when it can provide a more efficient and cost-effective alternative to litigation." *Id.* In light of this rationale, and noting the tendency of other jurisdictions to so require, the court concluded that in order to establish waiver a party must show that "an impasse was reached, and that any failure to demand appraisal within a reasonable time prejudiced the opposing party." *Id.* at 412. The court then went on to note that "it is difficult to see how prejudice could ever be shown when the policy ... gives both sides the same opportunity to demand appraisal." *Id.*

29. As the *Universal* court noted, it is difficult to demonstrate how Defendant could be prejudiced by appraisal, as the policy of insurance provides Defendant with the same opportunity to demand appraisal afforded to Plaintiff. Proceeding with appraisal in the instant case would not cause Defendant to suffer any "inherent unfairness in terms of delay, expense or damage to his legal position." *See Id.* at 411, (citing *Perry Homes v. Cull,* 258 S.W.3d 580, 597 (Tex. 2008).

30. Consistent with the *Universal* opinion, two more recent appellate opinions have held the

Defendant must show delay and prejudice to avoid appraisal. In *EDM v. Hartford*, the court found no prejudice to the insured. No. H-10-3754, 2011 WL 2619069, at *1 (S.D. Tex. 2011). In that matter, the claim was originally adjusted but suit not filed until almost two years after the storm. *Id.* After suit had been filed the parties proceeded to mediation. *Id.* Only after mediation failed and several months after suit was filed did the carrier invoke appraisal. *Id.* at *2. The court found that impasse had been reached only after the parties failed at mediating their claims. *Id.* at *6. Moreover, the insured had not demonstrated any prejudice. *Id.* (defining prejudice for the purposes of waiver as the inherent unfairness in terms of delay, expense, or damage to a party's legal position). *See also In re Cypress Texas Lloyds,* 419 S.W.3d 443, 444-45 (Tex.App.—Beaumont 2012, orig. proceeding).

31. The Court in *In re Cypress Texas Lloyds,* held that there was no prejudice even though they had incurred litigation expenses including hearings, motions and expert fees. 419 S.W.3d at 444-45. The court stated that the parties could have avoided the costs by requesting the appraisal and concluded that "when a party knows of its right to request an appraisal and does not make that request, it is difficult to attribute the costs incurred to the opponent." *Id.* at 445.

32. Pursuant to the Policy's terms, Defendant in this case was entitled to demand appraisal and could have avoided any perceived prejudice by making the demand itself. *Universal,* 345 S.W.3d at 412; *In re Cypress Texas* Lloyds, 419 S.W.3d at 445-45. Defendant did not proactively exercise its rights nor can it show any prejudice as a result of Plaintiff's actions. Therefore, no waiver has occurred and appraisal should be compelled. In the instant case, Defendant would suffer no prejudice by this matter proceeding to appraisal. To date, Defendant has incurred little notable expenses and the parties have conducted minimal

discovery in this matter.

33. Courts have the discretion to stay or abate insurance litigation—such as the instant case—until appraisal is complete. *See In re Slavonic Mut. Fire Ins. Ass'n,* 308 S.W.3d at 564-65; *Vanguard Underwriters Ins. Co.,* 999 S.W.2d at 450-51; *James v. Prop. & Cas. Ins. Co. of Hartford,* No. H-10-1998, 2011 WL 4067880 (S.D. Tex. Sept. 12, 2011); *United Neurology, P.A. v. Hartford Lloyds Ins. Co.,* No. H-10-4248, 2012 WL 423417 (S.D. Tex. Feb. 8, 2012). Moreover, recognizing this as the law and that to allow the litigation to proceed while appraisal is underway would be an unnecessary waste of valuable court resources and otherwise unnecessarily increase attorney and litigation fees to all parties; courts have the discretion and have been staying or abating insurance litigation such as the one here until appraisal is complete. *See In re Slavonic Mut. Fire Ins. Ass'n,* 308 S.W.3d 556, 564-65 (Tex.App.—Houston [14th Dist.] 2010); *Vanguard Underwriters Ins. Co. v. Smith,* 999 S.W.2d 448, 450-51, (Tex.App.—Amarillo 1999); *James v. Prop. & Cas. Ins. Co. of Hartford,* No. H-10-1998, 2011 WL 4067880 (S.D. Tex. Sept. 12, 2011); *United Neurology, P.A. v. Hartford Lloy''s Ins. Co.,* No. H-10-4248, 2012 WL 423417 (S.D. Tex. Feb. 8, 2012).

34. The Texas Court of Appeals in *Vanguard Underwriters Ins. Co.,* and *In re Slavonic Mut. Fire Ins. Ass'n* also upheld abatement of the lawsuit pending the appraisal process finding a condition precedent in the policy which provides, "no suit or action can be brought unless the policy provisions have been complied with. Action brought against us must be started within two years and one day after the cause of action accrues." *Vanguard,* 999 S.W.2d at 450-51; *In re Slavonic Mut. Fire Ins. Ass'n,* 308 S.W.3d at 565; *James,* No. H-10-1998,

2011WL4067880 at *2; *United Neurology, P.A.,* No. H-10-4248, 2012 WL 423417 at *1-2. These Courts have concluded that because appraisal is a condition precedent to suit, abatement is appropriate. In the instant matter, the same policy language is present. Accordingly, this Court should also abate this lawsuit pending the appraisal process.

35. Plaintiff therefore moves for abatement of all of the pre-trial deadlines currently pending in an effort to avoid the unnecessary expenditure of time and resources in a case where such investment may prove ultimately unnecessary. Plaintiff's request is not made for the purposes of delay.

36. Appraisal is appropriate in this matter. It is required by the insurance policy, and the Texas Supreme Court has held that "like any other contractual provision, appraisal clauses should be enforced." *Johnson,* 290 S.W.3d at 895. Similarly, it is appropriate and within this Court's discretion to abate this lawsuit pending the appraisal process.

IV.
<u>REQUEST FOR ATTORNEY FEES</u>

37. Defendant has been attempting to evade appraisal across multiple lawsuits—in some cases after it had already agreed to appraisal. Here, Defendant has no valid reason to disregard the terms of its policy; has not provided any such reason other than they simply do not wish to go through appraisal; and has forced Plaintiff to draft, file, and argue this motion. Appraisal is a condition under the terms of the policy once properly invoked. As discussed in the motion, Plaintiff has properly invoked appraisal in this case, and Defendant is required to participate. Instead, Defendant wants to waste the parties' and the Court's time and resources arguing baseless and frivolous objections. Therefore, Plaintiff requests the

court to award Plaintiff reasonable attorney fees and costs associated with preparing, drafting, and arguing the motion.

## V.
## CONCLUSION & PRAYER

38. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays this Court grant this Motion to Compel Appraisal and Abatement pending completion of the appraisal process, and stay all proceedings, including but not limited to, all discovery, pending motions and hearings, until such time as Plaintiff and Defendant advise the Court that the appraisal process has been completed.

Respectfully submitted,

Eric B. Dick, LL.M.
SBN: 24064316
DICK LAW FIRM, PLLC
3701 Brookwoods Drive
Houston, Texas 77092
832-207-2007 Office
eric@dicklawfirm.com

## <u>CERTIFICATE OF CONFERENCE</u>

On March 14,2024 the undersigned counsel for Plaintiff contacted Defendant's counsel via email correspondence to confer as to the contents of this motion. To date Defendant's counsel has  indicated that they are opposed to this motion.

_____
Eric B. Dick, LL.M.
SBN: 24064316

## <u>CERTIFICATE OF SERVICE</u>

I certify that in accordance with the Federal Rules of Civil Procedure I served a true and correct copy of the above on the parties of record. This service was made in a manner appropriate under the Federal Rules of Civil Procedure.

_____
Eric B. Dick, LL.M.
SBN: 24064316

March 17, 2024



**EXHIBIT A**

**582 S.W.3d 400 (2018)**

# IN RE AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY.

No. 04-18-00138-CV.

**Court of Appeals of Texas, San Antonio.**

Delivered and Filed: July 5, 2018.

Original Mandamus Proceeding[1].

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED.

APPELLANT ATTORNEY: Michael Tate Barkley, Gregory Chandler, Bain and Barkley, 14090 Southwest Fwy., Ste 450, Sugarland, TX 77478-3679, Andrew Nelson, R. Russell Hollenbeck, Wright & Close & Barger, L.L.P., One Riverway, Ste. 2200, Houston, TX 77056.

APPELLEE ATTORNEY: Jeffrey L. Raizner, Andrew Slania, Raizner Slania LLP, 2402 Dunlavy Street, Houston, TX 77006, Peter M. Kelly, Dana Brooke Levy, Kelly, Durham & Pittard, LLP, 1005 Heights Boulevard, Houston, TX 77008.

Sitting: Karen Angelini, Justice, Marialyn Barnard, Justice, Luz Elena D. Chapa, Justice.

402

\*402 **OPINION**

Opinion by: Luz Elena D. Chapa, Justice.

==Relator filed a petition for writ of mandamus complaining about the trial court's denial of its motion to compel appraisal in the underlying dispute over the amount of loss sustained by a building insured by relator.[2] Real party in interest, Inae Oh, is the insured. Because we conclude the trial court erred by denying the motion to compel appraisal and there is no adequate remedy by appeal, we conditionally grant the petition for writ of mandamus.==

# BACKGROUND

Relator issued an insurance policy on a commercial building owned by Oh. On April 29, 2016, Oh filed a claim for damages to the building arising from a hail storm. Oh alleged damage to the building's roof, exterior, and interior. In May 2016, relator investigated the claim, and concluded the building sustained only minor damage. However, relator retained an engineering company to re-inspect the building. Following the re-inspection, relator's local claims representative, William Dupnik, Jr., prepared an estimate totaling $421.77. Because the estimate was below the policy deductible of $18,380, relator did not issue payment to Oh. Relator sent a partial denial and under deductible letter to Oh dated July 19, 2016.

About a month later, Oh sued relator and Dupnik, alleging, among other claims, Texas Insurance Code violations, breach of contract, breach of duty of good faith and fair dealing, DTPA violations, and fraud. Relator filed its general denial and jury demand.[3] In May 2017, the trial court ordered the parties to be

ready for trial in November 2017. On July 31, 2017, the parties attempted, but failed, to mediate a settlement of the case.

On August 7, 2017, relator gave Oh notice of its intent to invoke the insurance policy's appraisal clause. Shortly thereafter, relator filed its motion to compel appraisal and to abate the case pending appraisal (hereinafter, "motion to compel"). Relator also served Oh with its third amended responses to Oh's requests for disclosure. In one of its responses, relator asserted that its invocation of appraisal and abatement pending appraisal was not waived by the filing of its disclosure responses.

Oh filed her response to the motion to compel asserting relator waived its right to appraisal because (1) relator did not plead appraisal as an affirmative defense, (2) relator denied her claim, (3) relator instituted litigation against Oh inconsistent with its right to appraisal, and (4) relator availed itself of court proceedings by taking/defending multiple depositions, filing/responding to several motions, and requiring numerous industry experts to provide their opinions. Oh alternatively asserted the policy's appraisal clause was unenforceable because it violated public policy. Finally, Oh alleged she was substantially prejudiced.

403    *403 On September 13, 2017, relator filed its first amended answer, pleading, among other affirmative defenses, its right to appraisal and abatement of the case pending appraisal.

The trial court heard the motion to compel, and later signed an order denying the motion, without stating its grounds. On September 28, 2017, relator filed its first petition for writ of mandamus and motion to stay the trial court proceedings. After this court denied the petition, relator asked the trial court to reconsider its ruling, which the trial court denied. Relator then filed this petition for writ of mandamus, to which Oh responded.

## STANDARD OF REVIEW

To obtain mandamus relief, a relator generally must show both the trial court clearly abused its discretion and relator has no adequate remedy by appeal. _In re Prudential Ins. Co. of Am._, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); _Walker v. Packer_, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). Trial courts have no discretion to ignore a valid appraisal clause. _State Farm Lloyds v. Johnson_, 290 S.W.3d 886, 888 (Tex. 2009). A trial court's abuse of discretion in failing to enforce an appraisal clause cannot be remedied by appeal. _In re Allstate Cty. Mut. Ins. Co._, 85 S.W.3d 193, 196 (Tex. 2002) (orig. proceeding).

## THE APPRAISAL CLAUSE

The policy relator issued to Oh contains the following appraisal clause:

D. Appraisal

The Appraisal Property Loss Condition is replaced by the following:

APPRAISAL

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either

may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:

a. You will retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Property Loss Condition; and

b. We will still retain our right to deny the claim.

In her response to relator's petition, Oh raises several arguments as to why the appraisal clause should not be enforced, including that relator waived its right to seek an appraisal by denying her claim and by engaging in intentional conduct inconsistent with the enforcement of that right; and public policy does not support enforcement of the appraisal clause because its benefits—speed and avoidance of costly litigation—are no longer attainable.

## THE POLICY'S NONWAIVER CLAUSE

As a preliminary matter, relator asserts this court need not reach any of Oh's arguments because the insurance policy contains the following clause that addresses when the terms of the policy can be waived:

B. Changes

404    *404 This policy contains all the agreements between you and us concerning the insurance afforded. The First Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

Relator asserts this clause is dispositive of all issues because it did not waive its right to an appraisal in writing.

"Non-waiver clauses are generally considered valid and enforceable." *In re GuideOne Mut. Ins. Co.,* No. 10-16-00404-CV, 2017 WL 1749793, at *2 (Tex. App.— Waco May 3, 2017, orig. proceeding) (mem. op.); *In re GuideOne Nat'l Ins. Co.,* No. 07-15-00281-CV, 2015 WL 5766496, at *3 (App.—Amarillo Sept. 29, 2015, orig. proceeding) (mem. op.). Here, nothing in the mandamus record indicates relator issued an endorsement waiving the appraisal clause.

However, the Texas Supreme Court recently considered "the force and effect of a nonwaiver provision in light of Texas's public policy that `strongly favors freedom of contract.'" *Shields Ltd. P'ship v. Bradberry,* 526 S.W.3d 471, 481 (Tex. 2017) (citations omitted). In *Shields Ltd.,* the Court considered a lease that required Bradberry to pay rent on time, in full, and without demand. Rent paid more than ten days late was a default under the lease. Regarding the enforcement of the lease terms, Shields (the landlord) and Bradberry agreed that:

> All waivers must be in writing and signed by the waiving party. Landlord's failure to enforce any provisions of this Lease or its acceptance of late installments of Rent shall not be a waiver and shall not estop Landlord from enforcing that provision or any other provision of this Lease in the future.

The record in *Shields Ltd.* contained no evidence the parties agreed in writing to waive any lease obligation, and no party claimed otherwise. Instead, "the issue [was] simply whether Shields could, by its conduct, manifest clear intent to waive the nonwaiver provision. Otherwise, the nonwaiver provision is facially dispositive." *Id.*

The Court acknowledged that, "[g]iven Texas's strong public policy favoring freedom of contract, there can be no doubt that, as a general proposition, nonwaiver provisions are binding and enforceable. This acknowledgment accords with our treatment of nonwaiver agreements in the insurance context." *Id.* 481-82 (footnote omitted). But, the Court noted "the question is not whether the nonwaiver clause in the parties' agreement is enforceable, [the question is] whether that clause is waivable and, if so, the circumstances under which waiver may occur." *Id.* at 482. The Court held, "[t]o the extent there has been any doubt up to this time, we affirm that a party's rights under a nonwaiver provision may indeed be waived expressly or impliedly. On this point, there is much agreement." *Id.* at 482-83 (footnote omitted). The Court also noted, "the mere fact that a nonwaiver provision may be waived does not render the provision `wholly ineffective.'" *Id.* at 483.

The Court agreed "a nonwaiver provision absolutely barring waiver in the most general of terms might be wholly ineffective." *Id.* at 484. The Court did not agree

> that a nonwaiver provision is wholly ineffective in preventing waiver through conduct the parties explicitly agree will never give rise to waiver. Such a contract-enforcement principle would be "illogical, since the very conduct which the clause is designed to permit [without effecting a waiver would be] turned around to constitute waiver of the clause *405 permitting [a party to engage in] the conduct [without effecting a waiver].

405

*Id.* (citation omitted).

Therefore, the Court held that "engaging in the very conduct disclaimed as a basis for waiver [accepting late rental installments] is insufficient as a matter of law to nullify the nonwaiver provision in the parties' lease agreement." *Id.* at 484-85. However, the Court stated

> For purposes of this case, the critical inquiry is whether Shields intentionally engaged in conduct inconsistent with claiming the right to enforce the nonwaiver agreement. We have explained:
>
> Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances. There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right.
>
> Waiver is "essentially unilateral" in character and "results as a legal consequence from some act or conduct of the party against whom it operates; no act of the party in whose favor it is made is necessary to complete it." Importantly, "[w]hile waiver may sometimes be established by conduct, that conduct must be unequivocally inconsistent with claiming a known right."

*Id.* at 485 (citations and footnotes omitted).

The Court held the evidence of Shields accepting late rent could not, as a matter of law, establish that Shields waived compliance with that term of the lease because the nonwaiver provision in the lease explicitly stated that acceptance of late rent did not constitute a waiver. *Id.* at 484. After examining the record, the Court concluded Bradberry did not identify any conduct constituting waiver other than Shields's acceptance of late installments of rent without protest. *Id.* at 486. Nor did the Court find in the record any other conduct "unequivocally inconsistent" with Shields claiming its rights under the nonwaiver provision. *Id.* Therefore, the Court concluded that "[b]ecause the lease explicitly precludes acceptance of rental payments as constituting waiver of Shields's enforcement rights, Shields conclusively established all the elements of a forcible-detainer claim." *Id.*

Although *Shields Ltd.* did not involve an appraisal provision in an insurance contract, we believe its reasoning applies here, and we hold that the inclusion in an insurance contract of a broadly-worded nonwaiver clause such as the one in this case is not dispositive, as a matter of law, on the issue of whether the insurer waived any of its rights under the contract. *See EWB-I, LLC v. PlazAmericas Mall Tex., LLC, 527 S.W.3d 447, 468 (Tex. App.— Houston [1st Dist.] 2017, pet. denied)* (applying *Shields Ltd.* to restrictive covenant, and holding, "A nonwaiver clause, itself, can be waived.... Parties may waive nonwaiver clauses through their conduct."). Therefore, we must determine whether relator "intentionally engaged in conduct inconsistent with claiming the right to enforce the nonwaiver agreement." *See Shields Ltd., 526 S.W.3d at 485*.

Here, unlike in *Shields,* the nonwaiver clause contains no specific provision regarding the conduct at issue, there is no other nonwaiver clause that mentions appraisals, the clause does not provide that any delay or omission in exercising a contractual right shall not be construed as a waiver of that right, and the clause does not expressly address whether specific conduct can constitute a waiver. Instead, the nonwaiver clause here is written in general terms and does not address specific *406 conduct. However, Oh does not argue the nonwaiver clause is wholly ineffective; therefore, we do not consider that question. *See id.* at 484 ("a nonwaiver provision absolutely barring waiver in the most general of terms might be wholly ineffective").

Oh points to no evidence in the record that relator "intentionally engaged in conduct inconsistent with claiming the right to enforce the nonwaiver agreement." *See id.* Instead, she raises several policy arguments. First, Oh asserts the nonwaiver clause cannot be used to revive a contractual provision that is offensive to public policy. Second, she asserts the nonwaiver clause cannot be used to contravene the justified expectations of the parties that the contract will be performed in a reasonable time. Finally, she asserts the nonwaiver clause does not entitle relator to squander judicial resources.

Although we do not disagree with many of Oh's assertions, "[c]ourts are not to avoid enforcing the plain meaning of contractual provisions because the court views the result as unreasonable or imprudent." *Fairfield Indus., Inc. v. EP Energy E & P Co., L.P., 531 S.W.3d 234, 250 (Tex. App.—Houston [14th Dist.] 2017, pet. filed)*. Parties have the right to contract as they see fit, even agreeing to provisions some might consider extreme, as long as their agreement does not violate the law or public policy. *See Shields Ltd., 526 S.W.3d at 481; Fairfield Indus., 531 S.W.3d at 249*. Therefore, because Oh did not show relator "intentionally engaged in conduct inconsistent with claiming the right to enforce the nonwaiver agreement," the nonwaiver clause here bars any implied waiver by relator of its right to seek an appraisal. For this reason, we conclude the trial court erred by denying the motion to compel appraisal.

## PREJUDICE TO INSURED

Even if we conclude relator waived the nonwaiver clause and waived its right to seek an appraisal based on delay, Oh was required to also show that any failure to demand appraisal within a reasonable time prejudiced her. *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 411 (Tex. 2011) (orig. proceeding); *see also In re Ooida Risk Retention Grp., Inc.*, 475 S.W.3d 905, 912 (Tex. App.—Fort Worth 2015, orig. proceeding) ("The prejudice required, however, is prejudice *following* impasse and prior to invocation of the appraisal process, *i.e.,* prejudice caused by the insurer's unreasonable delay in invoking the process."). "If the insured has suffered no prejudice due to delay, it makes little sense to prohibit appraisal when it can provide a more efficient and cost-effective alternative to litigation. Of course, prejudice to a party may arise in any number of ways that demonstrate harm to a party's legal rights or financial position." *Universal Underwriters*, 345 S.W.3d at 411. But, "it is difficult to see how prejudice could ever be shown when the policy, like the one here, gives both sides the same opportunity to demand appraisal. If a party senses that an impasse has been reached, it can avoid prejudice by demanding an appraisal itself. This could short-circuit potential litigation and should be pursued before resorting to the courts." *Id.* at 412.

Oh contends the financial impact of relator's litigious conduct exceeds $145,000.[4] She contends "several depositions, motions, expert retentions, mediation, and even a declaratory act have been *407 required by [relator's] litigation conduct." She asserts she "would not have had to incur those significant litigation expenses had [relator] invoked its right to an appraisal, rather than actively litigating the case for over 9 months."

But, Oh initiated the litigation rather than first pursuing an appraisal, she participated in discovery, and she otherwise prepared for mediation or trial. At no point did she request an appraisal. *See In re Cypress Tex. Lloyds*, 419 S.W.3d 443, 445 (Tex. App.—Beaumont 2012, orig. proceeding) (per curiam) ("When a party knows of its right to request an appraisal and does not make that request, it is difficult to attribute the costs incurred to the opponent.").

Also, Oh does not argue the discovery would not have been necessary but for the mediation. *See In re GuideOne Mut. Ins. Co.*, No. 09-12-00581-CV, 2013 WL 257371, at *2 (Tex. App.—Beaumont Jan. 24, 2013, orig. proceeding) (per curiam) (mem. op.) ("The expenses First Baptist incurred developing its case included approximately $10,000 in expert fees for accounting services and over $100,000 in attorney fees. Nevertheless, the mandamus record does not establish that these expenses would not have been incurred if GuideOne had moved for appraisal earlier.").

Accordingly, we conclude, absent an adequate showing of prejudice by Oh, the trial court erred by denying the motion to compel appraisal.

## ABATEMENT

In its petition for writ of mandamus, relator asserts abatement of the underlying lawsuit is appropriate while the appraisal process goes forward. It appears that because the trial court denied relator's motion to compel appraisal, it did not consider relator's request to abate the case pending an appraisal. We, therefore, do not reach this issue.

## CONCLUSION

For the reasons stated above, we conditionally grant relator's petition for writ of mandamus and direct the trial court to (1) vacate its order denying relator's motion to compel appraisal and (2) order the parties to engage in the appraisal process pursuant to the terms of the policy's appraisal clause. The writ will issue only in the event the trial court fails to comply within fifteen days from the date of this opinion.

[1] This proceeding arises out of Cause No. 2016-CI-12807, styled *Inah v. American National Property and Casualty Co. and William Felix Dupnik, Jr.,* pending in the 438th Judicial District Court, Bexar County, Texas, the Honorable David A. Canales presiding.

[2] This is the second mandamus proceeding with these parties on this issue. In appellate cause number 04-17-00627-CV, a panel of this court requested a response, stayed the underlying proceedings, and ultimately denied the petition because relator failed to address all of Oh's arguments. *See In re Am. Nat'l Cty. Mut. Ins.,* No. 04-17-00627-CV, 2017 WL 6502560 (Tex. App.—San Antonio Dec. 20, 2017, orig. proceeding) (per curiam) (mem. op.). After we denied the petition, relator filed a motion for reconsideration in the trial court that was denied. This mandamus proceeding ensued, which includes the same arguments raised in the first mandamus, as well as new arguments.

[3] Dupnik answered on September 12, 2016. He is not a party to this mandamus proceeding.

[4] Oh does not explain the nature of this amount. At the 2017 hearing on relator's first motion to compel, Oh's attorney stated over $100,000 in attorney's fees and over $35,000 in case expenses had been expended.

Save trees - read court opinions online on Google Scholar.



EXHIBIT

B

### In re United Services Automobile Association.

<u>No. 03-19-00292-CV.</u>

**Court of Appeals of Texas, Third District, Austin.**

December 23, 2020.

Original Proceeding from Travis County.

Before Chief Justice Rose, Justices Baker and Kelly.

# MEMORANDUM OPINION

JEFF ROSE, Chief Justice.

<mark>Relator United Services Automobile Association (USAA) has filed a petition for writ of mandamus complaining of the trial court's denial of its motion to compel appraisal. We conditionally grant mandamus relief. *See* Tex. R. App. P. 52.8.</mark>

# BACKGROUND

USAA provided homeowners' insurance to the real parties in interest, Sean and Brenda Forbes (the Forbeses). The policy covered the structure up to $1,047,000 and personal property up to $785,250 and provided loss of use protection, also known as Alternative Living Expenses (ALE), up to $209,400. USAA agreed to pay the lesser of "actual cash value"; the "cost to replace the property with property of like kind, quality, age and condition"; or the "cost to repair or our cost to restore the property to the condition it was in just before the loss." The policy also provided that if the parties disagreed "on the amount of loss," either party could seek a binding appraisal. The relevant policy provisions read as follows:

> Appraisal. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
>
> ***
>
> The appraisers and umpire are only authorized to determine the "actual cash value," replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded and modified by written mutual consent signed by you and us.
>
> ***
>
> Additional Living Expense. If a loss covered under Section I — LOSSES WE COVER makes that part of the "residence premises" where you reside uninhabitable, we cover the reasonable and necessary increase in living expenses so that your household can maintain its normal standard of living. Payment will be for the

shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event, not to exceed 12 months.

In January 2018, the home caught fire, resulting in extensive damage throughout the structure and the Forbeses' personal belongings. During the adjustment process, disputes arose about USAA's decision to clean or repair many of the family's personal property items rather than replace them and about the value of some of the items. In August 2018, the Forbeses filed suit, complaining that USAA had inappropriately insisted that certain items be cleaned instead of replaced, failed to pay for a number of items that had been declared unrestorable, undervalued a number of items that had to be replaced, and wrongly insisted that certain items had been fully restored. The Forbeses asserted that they were entitled to "the replacement cost of all items that have not been restored to pre-loss condition" and leveled claims for breach of contract and violations of the insurance code and the Texas Deceptive Trade Practices Act, claiming USAA had not conducted a reasonable investigation of the claim, had not paid some claims as required by the policy, and had not in good faith sought a fair settlement. USAA answered, and the parties began discovery and other pretrial processes.

On February 4, 2019, the Forbeses filed an amended petition, adding allegations of retaliation after they filed suit and complaining about USAA's decisions related to structural repairs and the Forbeses' ALE. The Forbeses asserted that since the suit was filed, USAA had retaliated by becoming unresponsive and unreasonable, refusing to meet with the Forbeses, refusing to pay for certain repairs, making offers of "gross underestimates of repair costs," refusing "to pay what it actually costs to repair" the home, and denying the Forbeses' ALE claim. The Forbeses further stated that as repairs began, the parties discovered that "the scope of necessary repairs was much greater than USAA originally thought" and encompassed reframing, painting, electrical, lighting fixtures, the HVAC system, woodwork, windows, stucco, and other items. The Forbeses asserted that the difference between their third-party estimates for the repair work to the structure and USAA's offers was more than $400,000. Shortly thereafter, USAA invoked the appraisal clause, filing a motion to compel on March 12. The trial court denied the motion to compel appraisal, leading to this original proceeding.

## DISCUSSION

Appraisal clauses are common and generally enforceable under Texas law. *See, e.g.,* <u>State Farm Lloyds v. Johnson, 290 S.W.3d 886, 888-89 (Tex. 2009)</u>; <u>In re Public Serv. Mut. Ins., No. 03-13-00003-CV, 2013 WL 692441, at *2 (Tex. App.-Austin Feb. 21, 2013, orig. proceeding)</u> (mem. op.). The Texas Supreme Court has held that "mandamus relief is appropriate to enforce an appraisal clause because denying the appraisal would vitiate the insurer's right to defend its breach of contract claim." <u>In re Universal Underwriters of Tex. Ins., 345 S.W.3d 404, 412 (Tex. 2011)</u>; *see also* <u>In re Allstate Cnty. Mut. Ins., 85 S.W.3d 193, 196 (Tex. 2002)</u> (mandamus relief available if trial court abuses its discretion in denying appraisal clause because denial may "vitiate or severely compromise the defendants' defenses to those claims"); <u>In re Public Serv. Mut., 2013 WL 692441, at *2</u> ("Mandamus relief is appropriate when the trial court denies a motion to compel an appraisal, vitiating the insurer's right to defend a breach of contract claim.").

We first turn to whether USAA waived its right to invoke the appraisal process, noting that the insurance policy includes a general "nonwaiver provision," stating that "[a] waiver or change of a provision of this policy must be in writing" to be valid. " [A]s a general proposition, nonwaiver provisions are binding and enforceable," <u>Shields Ltd. P'ship v. Bradberry, 526 S.W.3d 471, 481 (Tex. 2017)</u>, and such provisions may themselves be waived expressly or impliedly, *id.* at 482-83.[1] A party may impliedly waive a nonwaiver provision by "intentionally engag[ing] in conduct inconsistent with claiming the right to enforce the nonwaiver agreement," *id.* at 485, and the Forbeses assert that USAA's delay in invoking the appraisal process should be viewed as waiving its rights under the nonwaiver provision as well as waiving its rights under the appraisal clause. However, even assuming that USAA's delay amounted to intentional conduct inconsistent with claiming its rights to enforce the appraisal agreement, it does not follow that such behavior was also "inconsistent with claiming the right to enforce the nonwaiver agreement." *See id.* It appears, therefore, that the nonwaiver provision remained in effect and thus bars any finding of implied waiver of the appraisal provision.

Even if the nonwaiver clause had been waived or was otherwise ineffective, however, the Forbeses had to establish that USAA had waived its rights under the appraisal clause. The supreme court has held, "Appraisals have proceeded for well over a century with little judicial involvement," noting the rarity of its prior decisions involving appraisals. <u>Universal Underwriters, 345 S.W.3d at 407</u>. When, as here, a policy does not place a time limitation on a party's right to avail itself of the appraisal process and the demand is made within a reasonable time after the parties reach an impasse, invocation of the appraisal process is valid unless waived. <u>Barbara Techs. Corp. v. State Farm Lloyds, 589 S.W.3d 806, 815 (Tex. 2019)</u>. "

[W]aiver in this context occurs when the party seeking appraisal fails to demand it within a reasonable time after the parties reach an impasse on the amount of the loss, if the failure prejudices the opposing party." _Ortiz v. State Farm Lloyds_, 589 S.W.3d 127, 131 (Tex. 2019).

A party waives the right to invoke an appraisal clause by intentionally relinquishing it or engaging in "intentional conduct inconsistent with claiming that right." _Universal Underwriters_, 345 S.W.3d at 407. The Forbeses argue that USAA unreasonably delayed its appraisal demand and thus waived its rights. _See id._ at 408. The reasonableness or unreasonableness of a delay "must be measured from the point of impasse," and the supreme court has explained that "[a]n impasse is not the same as a disagreement about the amount of loss." _Id._ The court defined impasse as "a mutual understanding that neither will negotiate further," referencing other definitions as "the apparent breakdown of good-faith negotiations" or the "point at which the parties have exhausted the prospects of concluding an agreement and further discussions would be fruitless." _Id._ at 409-10 (quoting _Laborers Health & Welfare Tr. Fund v. Advanced Lightweight Concrete Co._, 484 U.S. 539, 544 (1988)).

The Forbeses argue that the parties reached an impasse in June 2018, when USAA sent a letter saying that it "respectfully deni[ed] the request for policy limits" and explaining that several parties hired to help clean and restore the Forbeses' items "feel the items in question have been brought back to pre-loss condition. If you are not in agreement, we can implement the Appraisal Process outlined in the contract." In that letter, USAA also noted that it was revising one valuation upward after correcting an error (designating a sofa as a loveseat) and closed by inviting the Forbeses to reply to the message and attach documentation if needed. Given that USAA referenced the availability of further work on valuation by raising the possibility of the appraisal process and then informed the Forbeses of how to reply and attach any needed documentation, the June 2018 letter does not demonstrate that USAA knew that further negotiations would be of no use. _See id._ at 408 ("Ongoing negotiations, even when the parties disagree, do not trigger a party's obligation to demand appraisal."). Thus, it seems that, as in _Universal Underwriters,_ USAA was put on notice that the parties had reached an impasse at earliest in August, when the Forbeses filed suit over USAA's handling of their personal-property claim. _See id._ at 410 (noting that insurer demanded appraisal about one month after insured filed suit); _see also In re Ooida Risk Retention Grp., Inc._, 475 S.W.3d 905, 912 (Tex. App.-Fort Worth 2015, orig. proceeding) ("Merely filing suit does not inherently signal that the parties have mutually concluded that all future settlement negotiations would be futile.").

USAA invoked the appraisal clause in February 2019, at most six months after the parties reached an impasse, if taken from the point that litigation commenced. "Although a party may waive its contractual right to an appraisal, it does not do so merely by failing to demand it before suit is filed." _Ortiz_, 589 S.W.3d at 131. The parties engaged in discovery and other litigation processes, but it seems that they also were continuing to work on settling the overall claim, at least until the Forbeses filed their amended petition in February 2019, encompassing complaints related to ALE and repairs to the structure itself. Thus, the record does not establish that USAA's delay in invoking an appraisal arose to the level of being intentional conduct so inconsistent with claiming that right as to waive the right altogether. _See Universal Underwriters_, 345 S.W.3d at 407; _cf. In re Allstate Vehicle & Prop. Ins._, 549 S.W.3d 881, 889-92 (Tex. App.-Fort Worth 2018, orig. proceeding) (insurer waived appraisal provision by its conduct post-impasse, which included removing suit to federal court, agreeing to trial setting, seeking extension of time to designate experts, requesting seventh inspection, and "directly verbally express[ing] to the trial court Allstate's intent to go to trial despite the lack of satisfaction of the appraisal clause condition precedent").

Even if USAA's delay in invoking appraisal was unreasonable, the Forbeses also had to establish that the delay prejudiced them, and the supreme court has "recognized the inherent difficulty of demonstrating prejudice when a policy allows both parties the same opportunity to demand appraisal." _Ortiz_, 589 S.W.3d at 131. The Forbeses have not done so.

Appraisal is a process that can "short-circuit potential litigation and should be pursued before resorting to the courts." _Id._ (quoting _Universal Underwriters_, 345 S.W.3d at 412). The supreme court has referred to it as "a condition precedent to suit," noting that appraisals "require no attorneys, no lawsuits, no pleadings, no subpoenas, and no hearings" and can almost always "be completed with less time and expense than it would take to file motions contesting it." _Johnson_, 290 S.W.3d at 894. When, as here, an appraisal clause can be invoked by both sides, "it is difficult to see how prejudice could ever be shown" because both sides have the same opportunity to demand appraisal, and "[i]f a party senses that impasse has been reached, it can avoid prejudice by demanding an appraisal itself." _Universal Underwriters_, 345 S.W.3d at 412.

Similar to the facts presented to our sister court in _In re American National Property and Casualty Co._, 582 S.W.3d 400, 406-07 (Tex. App.-San Antonio 2018, orig. proceeding), the Forbeses assert prejudice because they have incurred substantial

costs from their litigation efforts, noting that USAA filed a jury demand, initiated discovery against the Forbeses, and filed responses to the Forbeses' discovery requests. However, as in *American National,* where the plaintiff incurred more than $145,000 in costs due to "depositions, motions, expert retentions, mediation, and even a declaratory act," *id.* at 406, the Forbeses initiated litigation rather than first pursuing an appraisal, participated in discovery, and otherwise prepared for trial without ever requesting an appraisal. Indeed, USAA referenced the appraisal process in its June 2018 letter, informing the Forbeses that if they were dissatisfied with USAA's determinations on the claim, they could "implement the Appraisal Process outlined in the contract." We hold that the Forbeses did not establish that they were prejudiced by USAA's delay in invoking the appraisal clause. Thus, the trial court erred in so far as it determined that USAA waived its right to demand an appraisal.

We now consider whether the appraisal provision is appropriate for the various elements of the claim. The Forbeses argue that the appraisal provision is not applicable to the dispute related to the contents of the home because that dispute is over coverage, not the amount of the loss—specifically, whether USAA has met its obligation to restore the personal property to the condition it was in before the fire. Because USAA chose to restore most of the damaged personal items rather than replacing them, the Forbeses argue that the "only dispute is whether the restoration job meets the contractual standard," which does not fall within the three issues that the policy authorizes the appraisers to decide—actual cash value, replacement cost, or cost to repair the property—and instead falls within the category of disputes the appraisers are *not* authorized to decide—questions of "coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us."

The supreme court has explained that "in most cases appraisal can be structured in a way that decides the amount of loss without deciding any liability questions" and that "even if an appraisal award is flawed, that can be easily remedied by disregarding it later" at trial. *Johnson,* 290 S.W.3d at 894-95. And courts have enforced appraisal provisions in the following disputes: whether a covered hail storm had damaged all or only the ridgeline of a roof, *Johnson,* 290 S.W.3d at 887; whether auto insurance companies, against which the plaintiffs lodged claims of systematically undervaluing insured vehicles, should be allowed to invoke appraisal provisions to obtain appraisals of the automobiles, *Allstate Cty. Mut.,* 85 S.W.3d at 194; whether after paying for property damage after a windstorm, an insurance company should also have paid "additional payment for their contractor's overhead, profit, and sales tax," *In re Acceptance Indem. Ins.,* 562 S.W.3d 645, 648 (Tex. App.-San Antonio 2018, orig. proceeding); whether a roof needed repairs due to age, a covered windstorm, or another storm that predated coverage, *Public Serv. Mut.,* 2013 WL 692441, at *4; and whether a building damaged by fire "could be restored and the fire loss compensated only by the complete reconstruction or replacement of the whole interior of the building" or simply by "reconstructing some parts and replacing other parts of the interior" at a much lower cost, *Gulf Ins. Co. of Dall. v. Pappas,* 73 S.W.2d 145, 146 (Tex. App.-San Antonio 1934, writ ref'd).

USAA attempted to restore the personal property through cleaning or repair, and the Forbeses insist the property is still damaged after those efforts. This dispute thus involves questions about the kind of items that were damaged, the quality and cost of the items, the degree of damage they suffered, and how they can be restored to their pre-fire condition through replacement or cleaning. The appraisers have the authority to determine "actual cash value, replacement cost, or cost to repair the property," and if they determine through the appraisal that USAA's restoration efforts have failed, that information will be incorporated into the final results. As the supreme court has said, "repair or replacement is an `amount of loss' question for the appraisers." *Johnson,* 290 S.W.3d at 891; *see also id.* at 893 (stating that in refusing writ in *Pappas,* 73 S.W.2d at 146-47, supreme court adopted lower court's holding that "whether the building's interior should be repaired or completely replaced to restore it to its previous condition" was question for appraisers). We agree with USAA that the question of whether its restoration efforts satisfy its contractual obligation falls within a determination of the cost to restore the property to pre-loss condition and hold that the personal-property dispute is subject to the appraisal clause. *See id.* at 894-95 ("[T]he scant precedent involving disputes about the scope of appraisal suggests that appraisals generally resolve such disputes," and "[l]itigating the scope of appraisal is wasteful and unnecessary if the appraisal itself can settle this controversy.").

Similarly, whether USAA has improperly refused to pay for or has paid insufficient amounts for certain structural repairs are also questions appropriate for the appraisers to consider. Although the Forbeses assert that the parties have not yet reached an impasse on the amount of loss and that their dispute is instead about USAA's retaliatory behavior—its alleged refusal to communicate with Forbes, its refusal to pay for certain repairs, and its refusal to make good-faith efforts to settle the claim—the heart of the claims is that the Forbeses believe that USAA should be paying more to repair the home.[2] Further, the appraisal clause does not place limits on when it may be invoked, and although the point of impasse is relevant

to the unreasonableness of a party's delay in invoking appraisal, it does not follow that an appraisal clause may not be invoked until an impasse is reached. The dispute related to the structural repairs is thus subject to USAA's demand for an appraisal. *See id.* at 893.

As for the Forbeses' ALE claims, USAA argues that those sums should also be referred to the appraisal process, while the Forbeses argue that their ALE claim is not subject to appraisal.

USAA argues that ALE "falls under the policy's `loss' of use' coverage," and thus "represent a type of `loss,' and [that] how much `use' the Forbeses have lost is a question of `amount.'" USAA also notes several Texas cases in which appraisers set a claimant's ALE. *See Anderson v. American Risk Ins.*, No. 01-15-00257-CV, 2016 WL 3438243, at *2-3 (Tex. App.-Houston [1st Dist.] June 21, 2016, no pet.) (mem. op.) (appraisal award "set the total additional living expenses (`ALE') owed"); *Timberlake v. Metropolitan Lloyds Ins.*, 230 S.W.3d 798, 799 (Tex. App.-Dallas 2007, no pet.) (appraisal award included "additional living expenses"); *Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 254-55 (Tex. App.-Austin 2002, pet. granted, judgm't vacated w.r.m.) (noting that appraiser's award included sum for additional living expenses).[3]

Although ALE is a "Loss of Use Protection" under the policy, rather than being defined as a component of an insured's "loss," an insured only incurs ALE as a part of its overall loss, and it makes logical sense to allow for an independent assessment when the parties disagree about whether an insured has made arrangements that reasonably allow them to maintain their normal standard of living. Further, as noted by the supreme court, "[l]itigating the scope of appraisal is wasteful and unnecessary if the appraisal itself can settle this controversy," and "if an appraisal award is flawed, that can be easily remedied by disregarding it later." *Johnson*, 290 S.W.3d at 895. We hold that the Forbeses' ALE claim should be included in the appraisal process.

## CONCLUSION

We have held that the trial court erred in denying USAA's demand for an appraisal on the Forbeses' claims. Because the appraisal will impact at least the Forbeses' breach-of-contract claims, we hold that mandamus relief is appropriate. *See Universal Underwriters*, 345 S.W.3d at 412 ("We have held that mandamus relief is appropriate to enforce an appraisal clause because denying the appraisal would vitiate the insurer's right to defend its breach of contract claim."); *Allstate Cty. Mut.*, 85 S.W.3d at 196 ("Because the appraisals go to the heart of the plaintiffs' breach of contract claim, we need not decide here the significance of the appraisals to each of the remaining claims."). Writ will issue only in the unlikely event that the trial court does not comply with this opinion.

[1] The supreme court has stated that "a nonwaiver provision absolutely barring waiver in the most general of terms might be wholly ineffective," *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 484 (Tex. 2017), but that is not the case here—this contract allows for waiver of or change to the nonwaiver provision, as long as the alteration or waiver is in writing.

[2] For example, the Forbeses alleged that "USAA had dramatically underestimated the repair cost" and had paid $400,000 less than the Forbeses' third-party estimates.

[3] USAA also cites to *In re State Farm Lloyds, Inc.,* for the proposition that the court of appeals reversed the denial of a motion to appraise "in a suit against insurer for `failing to pay for Plaintiff's loss of use of her home,'" but that case does not discuss whether an ALE claim should be part of an appraisal and simply notes that the plaintiff sought ALE in suing for the insurer's alleged failure to pay for use of her home and to compensate "for the damaged and destroyed personal items." 170 S.W.3d 629, 631, 635 (Tex. App.-El Paso 2005, orig. proceeding).

Save trees - read court opinions online on Google Scholar.



**EXHIBIT**

**C**

**IN RE LIBERTY INSURANCE CORPORATION, Relator.**

<u>No. 01-15-00956-CV.</u>

**Court of Appeals of Texas, First District, Houston.**

Opinion issued June 9, 2016.

Panel consists of Justices Keyes, Brown, and Huddle.

# OPINION

EVELYN V. KEYES, Justice.

In this insurance coverage dispute, relator, Liberty Insurance Corporation ("Liberty"), filed this petition for writ of mandamus seeking to vacate the trial court's order denying Liberty's motion to compel appraisal.[1] In one issue, Liberty contends that the trial court erred in refusing to compel appraisal of the subject property, arguing that real party in interest James Hallbeck had a contractual duty to submit to appraisal and that Liberty has not waived its appraisal rights.

We conditionally grant the petition for writ of mandamus.

# Background

Liberty issued an insurance policy, effective March 5, 2013, to Hallbeck that provided coverage for his home located in Cypress ("the Policy"). Among other provisions, the Policy included the following appraisal clause:

> E. Appraisal
>
> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
>
> Each party will:
>
> 1. Pay its own appraiser; and
>
> 2. Bear the other expenses of the appraisal and umpire equally.

The Policy also included a provision stating, "A waiver or change of a provision of this policy must be in writing by us to be valid."

On June 6, 2013, a storm hit the Cypress area. Hallbeck filed a claim with Liberty in August 2014, asserting that the storm caused wind and hail damage to his house. Later that same month, a Liberty adjuster inspected Hallbeck's property and determined that no storm-related damages had occurred. On August 26, 2014, Liberty sent notice to Hallbeck informing him that it had found no storm-related damages and that it was denying his claim. This letter included the following statement: "This letter should not be construed as a waiver or estoppel of any of the terms, conditions or defenses afforded by the policy or applicable law."

Hallbeck filed the underlying proceeding against Liberty in December 2014, asserting causes of action for breach of contract, violations of the Insurance Code, and violations of the Deceptive Trade Practices Act. In a demand letter, Hallbeck specified that he sought $62,325.88 in actual damages, $3,900 in expenses, and $30,000 in attorney's fees.

Liberty answered and asserted a general and specific denial, as well as several affirmative defenses. Liberty also expressly reserved its appraisal rights, stating: "By appearing and answering herein, Defendant does not waive, and expressly reserves[,] its right under the policy to demand an appraisal for determination of the actual cash value and the amount of loss with respect to the property damage claims of the Plaintiff asserted in this lawsuit." Liberty also responded to Hallbeck's demand letter and stated, "Nothing herein should be considered a waiver of Defendant's right to [invoke] appraisal in this matter."

After an unsuccessful attempt to mediate this dispute, Liberty sent Hallbeck a letter on April 2, 2015, invoking the appraisal clause in the Policy. This letter informed Hallbeck of the person Liberty had chosen as its appraiser and requested that he appoint his own appraiser within twenty days.

When Hallbeck did not appoint his own appraiser, Liberty moved the trial court to abate the proceedings and compel appraisal. Liberty argued that the appraisal clause in the Policy required the parties, upon written demand, to submit to the appraisal process when the parties fail to agree on the "amount of loss." Liberty contended that the appraisal clause was satisfied in this case because Hallbeck made a claim under the Policy that the damage to his house was caused by a covered event but Liberty disagreed and determined that the storm did not cause the damage to Hallbeck's house. Liberty argued that Texas courts routinely enforce appraisal clauses and require insureds to participate in the appraisal process when invoked by the insurer, and it argued that the Texas Supreme Court has held that appraisal clauses should be enforced even when the insurer has already denied the claim and a dispute over coverage exists because the insurer could be wrong about coverage. Liberty argued that it did not waive its right to enforce the appraisal clause when it denied Hallbeck's claim.

Hallbeck responded to Liberty's motion to compel appraisal and argued that Liberty waived its right to enforce the appraisal clause when it denied his claim. Hallbeck argued that the parties did not disagree over the "amount of loss" because Liberty denied that a "loss" under the Policy occurred at all.

The trial court denied Liberty's motion to compel appraisal. The trial court did not specify the reasons for its decision in the order. This mandamus proceeding followed.

# Mandamus Standard of Review

Generally, to be entitled to mandamus relief, the relator must demonstrate that the trial court abused its discretion and that it has no adequate remedy by appeal. *See In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 135-36 (Tex. 2004)* (orig. proceeding); *Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992)* (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker, 827 S.W.2d at 839.* With respect to the resolution of factual issues, the reviewing court may not substitute its judgment for that of the trial court, and the relator must establish that the trial court could reasonably have reached only one decision. *Id.* at 839-40. A trial court has no discretion in determining what the law is or in applying the law to the facts. *Id.* at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *In re Allstate Cnty. Mut. Ins. Co., 85 S.W.3d 193, 195 (Tex. 2002)* (orig. proceeding). Texas courts have held that the refusal to enforce the appraisal process may "prevent the defendants from obtaining the independent valuations that could counter at least the plaintiffs' breach of contract claim," and thus an appellate remedy for denying a demand for appraisal is not adequate. *Id.* at 196; *see also State Farm Lloyds v. Johnson, 290 S.W.3d 886, 888 (Tex. 2009)* (stating that trial courts "have no discretion to ignore a valid appraisal clause entirely").

# Entitlement to Appraisal

Appraisal clauses are commonly found in homeowners' insurance policies and "provide a means to resolve disputes about the amount of loss for a covered claim." *In re Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404, 406-07 (Tex. 2011)* (orig. proceeding); *Johnson, 290 S.W.3d at 888-89* ("Virtually every property insurance policy for both homeowners and corporations contains a provision specifying `appraisal' as a means of resolving disputes about the `amount of loss' for a covered claim."); *Franco v. Slavonic Mut. Fire Ins. Ass'n, 154 S.W.3d 777, 786 (Tex. App.-Houston [14th Dist.] 2004, no pet.)* ("The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court."). Absent illegality or waiver, these clauses are generally enforceable. *In re Universal Underwriters, 345 S.W.3d at 407; In re Slavonic Mut. Fire Ins. Ass'n, 308 S.W.3d 556, 559 (Tex. App.-Houston [14th Dist.] 2010, orig. proceeding)* ("Where an insurance contract mandates appraisal to resolve the parties' dispute regarding the value of a loss, and the appraisal provision has not been waived, a trial court abuses its discretion and misapplies the law by refusing to enforce the appraisal provision."). "Appraisals can provide a less expensive, more efficient alternative to litigation, and . . . they `should generally go forward without preemptive intervention by the courts.'" *In re Universal Underwriters, 345 S.W.3d at 407* (quoting *Johnson, 290 S.W.3d at 895*).

Although the Texas Supreme Court has rarely addressed the issue of waiver of an appraisal clause, it has held:

> [To] constitute waiver the acts relied on must be such as are reasonably calculated to induce the assured to believe that a compliance by him with the terms and requirements of the policy is not desired, or would be of no effect if performed. The acts relied on must amount to a denial of liability, or a refusal to pay the loss.

*Id.* (quoting *Scottish Union & Nat'l Ins. Co. v. Clancy, 8 S.W. 630, 632 (Tex. 1888)*). Waiver requires intent: either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Id.* (quoting *In re Gen. Elec. Capital Corp., 203 S.W.3d 314, 316 (Tex. 2006)*). Waiver is ordinarily a question of fact, but when the facts are admitted or clearly established, it becomes a question of law. *In re Slavonic Mut. Fire Ins. Ass'n, 308 S.W.3d at 561.*

Here, the facts are undisputed. Hallbeck submitted a claim for property damage to Liberty. After an adjuster inspected the property, Liberty sent Hallbeck a letter in which it stated,

> We have recently reviewed your homeowner's claim and have determined that no storm related damages were found. Your policy affords coverage when physical damage occurs to your covered property resulting from a covered event. As no storm related damages were found, we are closing our file. We regret that we are unable to assist you further in this matter.

This letter also included a statement that the letter "should not be construed as a waiver or estoppel of any of the terms, conditions or defenses afforded by the policy or applicable law." Hallbeck sent a demand letter to Liberty and filed suit against Liberty for breach of contract and DTPA violations. Liberty reserved its right to invoke the appraisal process in both its original answer and in its response to Hallbeck's demand letter. After the parties attempted mediation, Liberty invoked the appraisal clause of the Policy. Hallbeck did not select an appraiser or participate in this process, and Liberty moved the trial court to compel an appraisal.

Liberty cites the Texas Supreme Court's decision in *Johnson* for the proposition that its denial of Hallbeck's claim did not amount to waiver of its appraisal rights under the Policy. In that case, after Johnson filed a claim under her homeowners' insurance policy, an adjuster for her insurance company, State Farm, determined that covered damage occurred, but that the repair costs were lower than the policy's nearly-$1,500 deductible. <u>*Johnson*, 290 S.W.3d at 887</u>. Johnson's roofing contractor, on the other hand, determined that the entire roof needed to be replaced and that the replacement cost would be in excess of $13,000. *Id.* Johnson requested an appraisal under the terms of her policy. *Id.* State Farm refused to participate, "asserting that the parties' dispute concerned causation and not `amount of loss.'" *Id.* at 888. Johnson filed a declaratory judgment seeking to compel appraisal. *Id.* The trial court granted summary judgment in favor of State Farm, ruling that no appraisal was warranted. *Id.* The Texas Supreme Court granted review "to decide whether the dispute here fell within the scope of this appraisal clause." *Id.*

The supreme court noted that appraisers "must always consider causation, at least as an initial matter" and that "[a]ny appraisal necessarily includes some causation element, because setting the `amount of loss' requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else," such as normal wear and tear or a non-covered peril. *Id.* at 893. Thus, the court held that State Farm could not "avoid appraisal at this point merely because there might be a causation question that exceeds the scope of appraisal." *Id.* The court also noted that appraisals are intended to take place before suit is filed and that "in most cases appraisal can be structured in a way that decides the amount of loss without deciding any liability questions." *Id.* at 894. The court stated:

> As already noted, when an indivisible injury to property may have several causes, appraisers can assess the amount of damage and leave causation up to the courts. When divisible losses are involved, appraisers can decide the cost to repair each without deciding who must pay for it. *When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong.* And when the parties disagree whether there has been any loss at all, nothing prevents the appraisers from finding "$0" if that is how much damage they find.

*Id.* (emphasis added). The court concluded, "But unless the `amount of loss' will never be needed (a difficult prediction when litigation has yet to begin), appraisals should generally go forward without preemptive intervention by the courts." *Id.* at 895.

Hallbeck cites the Amarillo Court of Appeals' decision in *In re Acadia Insurance Co.* for the proposition that " [i]t is clear that denying coverage under an insurance policy does, in fact, waive the right of the insurer to

request an appraisal." 279 S.W.3d 777, 780 (Tex. App.-Amarillo 2007, orig. proceeding). However, as Liberty points out, the Amarillo Court decided *In re Acadia Insurance Co.* before the Texas Supreme Court issued *Johnson,* which recognized that appraisals may be helpful even after the insurer has denied the claim. *See* 290 S.W.3d at 894 ("When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong. And when the parties disagree whether there has been any loss at all, nothing prevents the appraisers from finding `$0' if that is how much damage they find.").

The Texas Supreme Court has emphasized that "`[w]aiver requires intent, either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.'" *In re Universal Underwriters,* 345 S.W.3d at 407 (quoting *In re Gen. Elec. Capital Corp.,* 203 S.W.3d at 316). Here, this case involves a dispute over causation, with Hallbeck claiming that the June 2013 storm damaged his property and Liberty expressing its belief that Hallbeck did not suffer any storm-related damages. Although Liberty denied Hallbeck's claim, Liberty also reserved its appraisal rights in multiple letters to Hallbeck and in filings with the trial court. *See In re Slavonic Mut. Fire Ins. Ass'n,* 308 S.W.3d at 562 ("In addition, shortly after the claim was filed in 2008, Slavonic sent the [homeowners] written notice that it did not waive its rights in a reservation of rights letter quoted above. This action clearly demonstrated Slavonic's intent *not* to waive its right to appraisal."). In the letter denying Hallbeck's claim for damages, Liberty stated, "This letter should not be construed as a waiver or estoppel of any of the terms, conditions or defenses afforded by the policy or applicable law." Similarly, in its response to Hallbeck's demand letter, Liberty stated, "Nothing herein should be considered a waiver of Defendant's right to [invoke] appraisal in this matter." Liberty also expressly reserved its right to invoke the appraisal process in its original answer: "By appearing and answering herein, Defendant does not waive, and expressly reserves[,] its right under the policy to demand an appraisal for determination of the actual cash value and the amount of loss with respect to the property damage claims of the Plaintiff asserted in this lawsuit." Liberty then participated in an unsuccessful mediation before invoking its right to appraisal.[2]

Whether an insurer denied a homeowner's claim for damages under the governing policy is relevant to the question of waiver of the appraisal clause, but it is not determinative of that question. *See Johnson,* 290 S.W.3d at 894 ("When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong."). We conclude that denial of a homeowner's claim for damages does not, by itself, constitute an "intentional relinquishment of a known right" or conduct "inconsistent with claiming" the right of appraisal. *See In re Universal Underwriters,* 345 S.W.3d at 407. Instead, in determining whether an insurer waived its right to invoke an appraisal clause, we must also consider the language of the Policy, as well as whether the insurer expressed its intent to reserve its appraisal rights. *See In re Slavonic Mut. Fire Ins. Ass'n,* 308 S.W.3d at 561-62; *cf. In re Acadia Ins. Co.,* 279 S.W.3d at 780 (denying insurer's mandamus petition when evidence in record included letter from insurer's counsel to insured indicating that insurer did not believe claims was covered and indicating "that Acadia cannot be required to submit the claim for an appraisal if there is no coverage" and holding that trial court "had before it evidence that Acadia intentionally and unequivocally relinquished the right [to require appraisal] so that it could challenge coverage and, thus, waived that right"). Although Liberty denied that Hallbeck suffered storm-related damages and denied his claim, the Policy provides that clauses may only be waived in writing, the record does not contain evidence that Liberty waived its right to appraisal in writing, and the record does include evidence that Liberty expressly reserved its right to invoke the appraisal process.

We conclude that the trial court abused its discretion by denying Liberty's motion to compel appraisal and that Liberty has no adequate appellate remedy to correct this error. *See In re Allstate Cnty. Mut. Ins. Co.,* 85 S.W.3d at 196 (holding that "[a] refusal to enforce the appraisal process here will prevent the defendants

from obtaining the independent valuations that could counter at least the plaintiffs' breach of contract claims" and that trial court's error "denies the development of proof going to the heart of a party's case and cannot be remedied by appeal").

We sustain Liberty's sole issue.

# Conclusion

We conditionally grant Liberty's petition for writ of mandamus. We order the trial court to vacate its October 16, 2015 order denying Liberty's motion to compel appraisal. The writ will only issue if the trial court fails to do so.

[1] The Honorable Erin Lunceford, Judge of the 61st District Court of Harris County, Texas, Respondent. The underlying lawsuit is *James Hallbeck v. Liberty Mutual Insurance Company,* No. 2014-71521 (61st Dist. Ct., Harris Cnty., Tex.).

[2] Furthermore, the Policy contained a clause providing that "[a] waiver or change of a provision of this policy must be in writing by us to be valid." Hallbeck has presented no evidence that Liberty waived its right to appraisal in writing. "The Texas Supreme Court has given weight to such an anti-waiver clause in insurance cases." *In re Slavonic Mut. Fire Ins. Ass'n,* 308 S.W.3d 556, 561 (Tex. App.-Houston [14th Dist.] 2010, orig. proceeding).

Save trees - read court opinions online on Google Scholar.



**EXHIBIT**

**D**

## IN RE QBE SPECIALTY INSURANCE COMPANY, Relator.

### No. 01-19-00164-CV.

### Court of Appeals of Texas, First District, Houston.

Opinion issued October 20, 2020.

Original Proceeding on Petition for Writ of Mandamus.

Panel consists of Justices Keyes, Lloyd, and Kelly.

# MEMORANDUM OPINION

RUSSELL LLOYD, Justice.

Relator, QBE Specialty Insurance Company ("QBE"), has filed a petition for a writ of mandamus contending that respondent, the Honorable Steven Kirkland, abused his discretion in granting a motion to reconsider, vacating an order that granted QBE's motion to compel an insurance appraisal, and denying QBE's motion to compel appraisal.[1] QBE requests issuance of a writ of mandamus directing respondent to grant QBE's motion to compel the appraisal.[2]

We conditionally grant the petition.

# Background

QBE issued a homeowners' insurance policy, effective January 8, 2017, to real party in interest Luca Cicalese for his residence in El Lago, Texas ("the Policy"). Among other provisions, the Policy included the following appraisal clause:

> E. Appraisal
>
> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

> 1. Pay its own appraiser; and
>
> 2. Bear the other expenses of the appraisal and umpire equally.

The Policy also included a provision stating, "A waiver or change of a provision of this policy must be in writing by us to be valid."[3]

On August 31, 2017, Cicalese made a claim to QBE for water damage to his property caused by Hurricane Harvey. An independent adjuster twice inspected the property and concluded that it would cost $21,144.28 to replace damaged roof tiles and repair interior damage. A contractor whom Cicalese hired inspected the property and asserted that the entire roof needed to be replaced, and that the total cost to replace the roof and repair the interior would be $180,357.10. An engineer hired by QBE then inspected the property and estimated the replacement and repair cost would be $19,421.94.

On January 25, 2018, QBE sent a letter advising Cicalese it was closing the claim without payment because the $19,421.94 estimate was less than his $38,758 deductible. The letter did not deny the claim. The letter advised Cicalese when limitations would run, should he opt to file a lawsuit in connection with the claim and included the following statement: "Please contact the undersigned if there are any questions *or additional information you wish for us to consider.*" (Emphasis added).

On February 5, 2018, Cicalese's counsel sent a letter of representation to QBE, and on March 5, 2018, Cicalese's counsel sent a demand letter to QBE. The demand letter quantified Cicalese's actual damages as at least $146,599.10, which included $5,000 in attorney fees. QBE sent a request for additional information about the claim to Cicalese's counsel on April 18, 2018, but the record does not reflect any response before suit was filed.

On May 18, 2018, Cicalese sued QBE for breach of contract, breach of the duty of good faith and fair dealing, and violations of the chapters 541 (unfair settlement practices) and 542 (prompt payment of claims) of the Texas Insurance Code.[4] On September 17, 2018, QBE removed the case to federal court. QBE filed an agreed motion to remand on October 16, 2018.[5]

On October 17, 2018, QBE sent Cicalese's counsel a letter invoking the Policy's appraisal provision. In an email dated November 8, 2018, Cicalese's counsel said QBE had waived the right to invoke the appraisal policy by (1) failing to respond to Cicalese's pre-suit demand letter for "over 61 days," and (2) because Cicalese had incurred significant costs "with being forced to file the lawsuit because we couldn't get any response" from QBE.

Three days later, on November 21, 2018, QBE filed a motion to compel Cicalese to participate in the appraisal process. Cicalese filed a response in opposition to the motion to compel. The Honorable Sylvia Matthews signed an order granting the motion to compel appraisal on January 18, 2019, as a visiting judge. [6] Cicalese filed a motion to reconsider the order and QBE filed a response.[7] On February 20, 1019, Judge Kirkland, the presiding judge of the 334th District Court, signed an order that granted Cicalese's motion to reconsider, vacated the January 18, 2019 order, and denied QBE's motion to compel appraisal. QBE asserts Judge Kirkland abused his discretion by denying the motion to compel appraisal.

# Discussion

# A. Standard of review

Mandamus will issue to correct a clear abuse of discretion for which there is no adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *Walker*

*v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding); *see also Patton Boggs LLP v. Moseley*, 394 S.W.3d 565, 569 (Tex. App.-Dallas 2011, orig. proceeding). "A trial court abuses its discretion if `it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law' or if it clearly fails to correctly analyze or apply the law." *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (citations omitted). A trial court lacks discretion in determining what the law is and in applying the law to the facts. *Prudential Ins.*, 148 S.W.3d at 135. Therefore, a "clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *In re Liberty Ins. Corp.*, 496 S.W.3d 229, 232 (Tex. App.-Houston [1st Dist.] 2016, orig. proceeding) (citing *In re Allstate Cnty. Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002) (orig. proceeding)).

Texas courts have held an order denying a motion to enforce an appraisal clause may be set aside by mandamus. A court's refusal to enforce an appraisal clause

> may "prevent the defendants from obtaining the independent valuations that could counter at least the plaintiffs' breach of contract claim" and thus an appellate remedy for denying a demand for appraisal is not adequate.

*Liberty Ins.*, 496 S.W.3d at 232 (quoting *Allstate Cnty.*, 85 S.W.3d at 196). *See also In re Universal Underwriters of Texas Ins. Co.*, 345 S.W.3d 404, 412 (Tex. 2011) ("[M]andamus relief is appropriate to enforce an appraisal clause because denying the appraisal would vitiate the insurer's right to defend its breach of contract claim.") (citing *Allstate Cnty.*, 85 S.W.3d at 196).

## B. Right to Appraisal

Appraisal clauses provide a means for homeowners and their insurers "to resolve disputes about the amount of loss for a covered claim." *Liberty Ins.*, 496 S.W.3d at 232 (quoting *Universal Underwriters*, 345 S.W.3d at 406-07). Virtually all property insurance policies contain a provision that identifies "appraisal" as the mechanism for resolving disputes about "the amount of loss" in a covered claim. *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888-89 (Tex. 2009). *See Franco v. Slavonic Mut. Fire Ins. Ass*'n, 154 S.W.3d 777, 786 (Tex. App.-Houston [14th Dist.] 2004, no pet.) ("The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court.") (citing *Wells v. American States Preferred Ins. Co.*, 919 S.W.2d 679, 683-85 (Tex. App.-Dallas 1996, writ denied)).

Appraisal clauses are generally enforceable absent illegality or waiver. *Liberty Ins.*, 496 S.W.3d at 232 (citing *Universal Underwriters*, 345 S.W.3d at 407); *see also In re Slavonic Mut. Fire Ins. Ass*'n, 308 S.W.3d 556, 559 (Tex. App.-Houston [14th Dist.] 2010, orig. proceeding) ("Where an insurance contract mandates appraisal to resolve the parties' dispute regarding the value of a loss, and the appraisal provision has not been waived, a trial court abuses its discretion and misapplies the law by refusing to enforce the appraisal provision."); *Universal Underwriters*, 345 S.W.3d at 407 ("Appraisals can provide a less expensive, more efficient alternative to litigation, and . . . they `should generally go forward without preemptive intervention by the courts.'") (quoting *Johnson*, 290 S.W.3d at 895).

QBE asserts Judge Kirkland abused his discretion in denying the motion to compel appraisal because (1) QBE did not waive its right to invoke the appraisal process, and, in any event, (2) Cicalese has not established he would be prejudiced by the appraisal process.

## C. Waiver and impasse[8]

The Texas Supreme Court, addressing the potential waiver of the right to invoke appraisal, has held:

> [To] constitute waiver the acts relied on must be such as are reasonably calculated to induce the assured to believe that a compliance by him with the terms and requirements of the policy is not desired, or would be of no effect if performed. The acts relied on must amount to a denial of liability, or a refusal to pay the loss.

*Liberty Ins.,* 496 S.W.3d at 232 (quoting *Universal Underwriters,* 345 S.W.3d at 407). "Waiver requires intent: either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Liberty Ins.,* 496 S.W.3d at 232-33 (citing *Universal Underwriters,* 345 S.W.3d at 407). The mere denial of a claim does not constitute a waiver of the right to invoke the appraisal process. *Pounds v. Liberty Lloyds of Texas Ins. Co.,* 528 S.W.3d 222, 226 (Tex. App.-Houston [14th Dist.] 2017, no pet.); *Liberty Ins.,* 496 S.W.3d at 235 ("[D]enial of a homeowner's claim for damages does not, by itself, constitute an `intentional relinquishment of a known right' or conduct `inconsistent with claiming' the right of appraisal.") (citing *Universal Underwriters,* 345 S.W.3d at 407).

The party that challenges the appraisal based on the doctrine of waiver "must show the parties reached an impasse, that is, `a mutual understanding that neither will negotiate further.'" *In re Acceptance Indem. Ins. Co.,* 562 S.W.3d 655, 660 (Tex. App.-San Antonio 2018) (orig. proceeding) (quoting *Universal Underwriters,* 345 S.W.3d at 410.)Impasse "is that point at which the parties have exhausted any prospect of reaching an agreement and further discussion would be fruitless." *Id.* at 660. Impasse arises only if *both* parties "believe additional negotiations would be futile." *Id.* at 660. Knowledge that the insured disagrees with the insurer's position as to the claim is not sufficient to establish impasse:

> An impasse is not the same as a disagreement about the amount of loss. Ongoing negotiations, even when the parties disagree, do not trigger a party's obligation to demand appraisal. Nor does an insurer's offer of money to cover damages necessarily indicate a refusal to negotiate further, or to recognize additional damages upon re-inspection.

*Universal Underwriters,* 345 S.W.3d at 408. Nor does a demand letter establish an impasse, "because sending such a letter is intended to encourage settlement, which implies further negotiation." *Acceptance Indem.,* 562 S.W.3d at 651.

QBE asserts the parties never reached an impasse because it did not affirmatively indicate in its January 25, 2018 letter that it would not consider additional requests for resolution and because Cicalese was invited to provide additional information for QBE to consider. QBE's April 18, 2018 correspondence to Cicalese's counsel after receipt of the demand letter also requested additional information about his property damage claim:

> We have received the list of personal property the insured is claiming was damaged. We will need a more detailed description of each item, model numbers if applicable, age of each item, where purchased, proof of purchase, and documentation of the damages. This is not an all-inclusive list, additional information may be requested in our review of this part of the claim.

QBE's repeated statements that it would consider additional information is determinative insofar as the issue of impasse is concerned. *See Pounds,* 528 S.W.3d at 226-27 (insurer's invitation to insured to contact

claims representative with "questions or concerns" about a claim" "indicate[d] an impasse had not been reached, as [the insurer] was not foreclosing further negotiation on [the] claim."); *see also Universal Underwriters*, 345 S.W.3d at 410-11 (insurer's statement that it "would leave the file open" in case insured wanted to pursue "further discussions" weighed against finding of waiver). Significantly, as QBE observes in its petition, Cicalese conceded in his response to QBE's motion to compel appraisal that he did not believe the parties had been at an impasse, stating, "How could Mr. Cicalese or his attorney have `sensed that impasse had been reached . . .?'"

Yet Cicalese contends in his response to the petition for writ of mandamus that impasse occurred because of lengthy delays caused by insurer conduct either when QBE received but did not pay the estimate from Cicalese's contractor, who believed the entire roof needed replacement, or when QBE purportedly ignored the demand letter. The Texas Supreme Court has held the time between the claim and the insurer's invocation of the appraisal process is not, by itself, determinative with regard to waiver:

> The fact that thirty-nine or seventy-two days had passed during their negotiations was not determinative of the waiver issue. Instead, the expression of the parties' unwillingness to negotiate further indicated that the clause should have been invoked. In other words, while the time period may be instructive in interpreting the parties' intentions, it alone is not the standard by which courts determine the reasonableness of a delay.

*Universal Underwriters*, 345 S.W.3d at 408.[9] In the alternative, Cicalese contends waiver resulted from QBE's (1) failure to invoke appraisal after receipt of Cicalese's counsel's representation letter, which was "obviously evidence of a dispute;"[10] (2) removal of the case to federal court; and (3) "ignoring its policyholder and then its policyholder's attorney."[11]

Cicalese does not cite any authority that identifies any of these specific acts as a waiver of the appraisal process, and we have not found any. Moreover, QBE responded on April 18, 2018, to the March 5, 2018 demand letter with a request for additional information about Cicalese's property damage claim. Further, even if QBE did not respond as quickly as Cicalese would have liked throughout the litigation, the record does not support the allegation that QBE ignored its policyholder or his counsel. "We will not infer waiver where neither explicit language nor conduct indicates that such was the party's intent." *Universal Underwriters*, 345 S.W.3d at 410.

The authorities relied on by Cicalese do not support his contention that the parties reached an impasse. Cicalese's citation of cases regarding the denial of claims are inapposite, as his claim has not been denied. *See Sanchez v. Prop. & Cas., Ins. Co. of Hartford*, No. H-09-1736, 2010 WL 413687, at *5 (S.D. Tex. Jan. 27, 2010) (dispute that arose from insurer's refusal to pay claim for amount less than the policy's deductible was dispute over amount of damages, not dispute regarding the denial of claim) (applying Texas law). In *Sanchez*, the record showed the insurer did not deny liability:

> Hartford accepted coverage for repairs to the back door costing $150. Hartford declined any payment to Sanchez because the amount of damage it found to have been caused by hurricane winds, a covered occurrence, was below Sanchez's deductible of $5,850. *Thus the authorities cited by Sanchez for the proposition that an insurer's unconditional denial of liability waives the right to invoke appraisal are inapplicable here.* This is a dispute over the amount of damages.

2010 WL 413687 at *5 (emphasis added).[12] Further, given QBE's multiple requests for additional information from Cicalese and his counsel before suit was filed, we hold an impasse was not reached because at no point did both parties manifest the belief that further negotiations would be futile.

## D. Proof of prejudice

Even if an unreasonable time passes between impasse and the invocation of appraisal, waiver requires the insured to establish he was prejudiced by the delay. _In re Century Sur. Co._, No. 07-15-00386-CV, 2015 WL 6689532, *4 (Tex. App.-Amarillo 2015) (orig. proceeding). "[M]ere delay is not enough to find waiver; a party must show that it has been prejudiced." _Universal Underwriters_, 345 S.W.3d at 411. "If the insured has suffered no prejudice due to delay, it makes little sense to prohibit appraisal when it can provide a more efficient and cost-effective alternative to litigation." _Id._[13] _SeeAcceptance Indem._, 562 S.W.3d at 650 (" [E]ven after an impasse and the passage of an unreasonable amount of time, the appraisal challenger must also show any failure to demand the appraisal within a reasonable time after the impasse prejudiced it.") (citing _Universal Underwriters_, 345 S.W.3d at 411). When, as here, the policy entitles either party to invoke the appraisal process, demonstrating prejudice can be especially arduous:

> [I]t is difficult to see how prejudice could ever be shown when the policy, like the one here, gives both sides the same opportunity to demand appraisal. If a party senses that impasse has been reached, it can avoid prejudice by demanding an appraisal itself. This could short-circuit potential litigation and should be pursued before resorting to the courts.

_Universal Underwriters_, 345 S.W.3d at 411-12.

Cicalese says in his response to the petition for writ of mandamus that he was "forced to hire counsel," "forced to file a lawsuit" and that he "had no reason to suspect that QBE would agree to appraisal pre-suit." However, Cicalese had the right to invoke the appraisal process and never did so. His contention that the benefits of appraisal evaporated as soon as he filed suit is without merit, given that an appraisal can provide a means to curtail the discovery process once suit has been filed. _See In re Cypress Tex. Lloyds_, 419 S.W.3d 443, 445 (Tex. App.-Beaumont 2012, orig. proceeding) (per curiam) ("When a party knows of its right to request an appraisal and does not make that request, it is difficult to attribute the costs incurred to the opponent."); _Century Sur._, 2015 WL 6689532 at *4 (holding no showing of prejudice when insured initiated litigation rather than pursuing appraisal, participated in discovery, and prepared for trial).

Cicalese's argument that he would be prejudiced by an appraisal because QBE, "if it does not like the award, can simply deny paying it, standing on its coverage decision," also lacks merit. QBE did not deny coverage and did not "wholly fail[] to make a coverage decision," as Cicalese asserts. On the contrary, QBE concluded Cicalese's claim was covered, but it did not issue payment because the payment that would be owed was less than Cicalese's deductible. The January 25, 2018 letter stated, "Based on our re-inspection, the total amount of storm damage was $19,421.94. This amount is below your $38,758 deductible. Therefore, your claim will be closed without payment." QBE's disagreement as to the amount to which Cicalese was entitled for the damage was neither a denial of the claim nor a failure to make a coverage decision.

## E. The trial court's analysis

In denying the motion to compel appraisal, the trial court premised its ruling on *In re Allstate Vehicle & Prop. Ins. Co.*, 549 S.W.3d 881 (Tex. App.-Fort Worth 2018, orig. proceeding), in which the Fort Worth Court of Appeals held the trial court did not abuse its discretion in refusing to compel appraisal. In so doing, the court of appeals held Allstate's right to appraisal had been waived by its conduct during litigation, and that the insured would have been prejudiced by appraisal. *Id.* at 889-94. We find that case to be distinguishable for a number of reasons.

First, the court specifically cited the policy's lack of nonwaiver clause in denying the petition for writ of mandamus. 549 S.W.3d at 894-95 (Allstate policy "[did] not require waivers to be in writing and signed by the waiving party."). Second, the court found Allstate's statements and actions evinced its intent to go to trial. *Id.* at 889. For example, after Allstate conducted six inspections, it filed a motion to compel a seventh inspection "for the express purpose of having the new expert witness . . . testify at the upcoming jury trial," so its testifying witnesses would have jury credibility. *Id.* In addition, Allstate "directly verbally expressed to the trial court Allstate's intent to go to trial despite lack of satisfaction of the appraisal clause condition precedent." *Id.* at 890. The record does not reflect any similar manifestations of intent by QBE to go to trial.

Further, the *Allstate Vehicle* court found impasse was reached when Allstate offered a $4,000 settlement and the insured rejected it and made a demand for $19,350.42 for the third time. *Id.* at 890. There were no such negotiations in the present case. The *Allstate Vehicle* court also found the insured would have been prejudiced because by the time Allstate invoked the appraisal process, the roof damage was more than two and a half years old and storms since then had exacerbated the roof damage, making it impossible for an appraiser to determine which damage was caused by which storm. *Id.* at 893. In contrast, there is no indication that events since Hurricane Harvey contributed to Cicalese's roof damage.

Finally, the *Allstate Vehicle* court said the insured would be prejudiced if appraisal was invoked because she had already incurred trial expenses and attorney's fees preparing for trial. *Id.* at 893. For example, Allstate had already deposed the homeowner, successfully moved to compel its seventh inspection and obtained an expert designation extension until after the seventh inspection. *Id.* at 884. In contrast, here, although the parties have exchanged written discovery, the record lacks any indication the parties have engaged in expert discovery, depositions or any other pre-trial activities that reflect they are actively getting ready for trial.

We believe this case is more like *Pounds.* The policy in that case had an appraisal clause identical to that in Cicalese's QBE policy. As here, there was no written waiver of the right to appraisal in *Pounds.* The court in *Pounds* concluded that the insurer's invitation for the insured to contact it with questions or concerns indicated an impasse had not been reached. 528 S.W.3d at 226-27. Finally, the *Pounds* court found the insured had not been prejudiced, given that it had the same right as the insurer to demand an appraisal. *Id.* at 227.

We conclude that the trial court abused its discretion by denying QBE's motion to compel appraisal and that QBE has no adequate appellate remedy to correct this error. *See Liberty Ins.*, 496 S.W.3d at 232 (holding "an appellate remedy for denying a demand for appraisal is not adequate").

We sustain QBE's issue.

# Conclusion

Accordingly, we direct the trial court to vacate its ruling denying QBE's motion to compel appraisal. Our writ of mandamus will issue only if the trial court does not comply.

[1] The underlying lawsuit is *Luca Cicalese v. QBE Specialty Insurance Company,* Cause No. 2018-33648, pending in the 334th District Court of Harris County, Texas.

[2] QBE asserts that it is seeking a writ of mandamus "ordering the trial court to grant [QBE's] Motion to Compel Appraisal." The February 20, 2019 order of which QBE complains "grants Plaintiff's Motion to Reconsider, vacates the Order of January 18[, 2019] and denies [QBE's] Motion to Compel [Appraisal]." The January 18, 2019, order, which granted QBE's motion to compel appraisal, was signed by a visiting judge, the Honorable Sylvia Matthews.

[3] Neither party contends there was a written waiver of the policy's appraisal provision. Cicalese contends QBE waived the provision by its conduct. For the reasons stated herein, we disagree.

[4] Cicalese also sued QBE and adjuster David Nguyen Dao for civil conspiracy and sued Dao individually for violations of chapters 541 and 542 of the Texas Insurance Code. QBE filed an election of legal responsibility pursuant to section 542A.006 of the Texas Insurance Code, which states: "If a claimant files an action to which this chapter applies against an agent and the insurer thereafter makes an election . . . with respect to the agent, the court *shall dismiss* the action against the agent with prejudice." TEX. INS. CODE § 542A.006(c). (Emphasis added). Accordingly, Dao was dismissed from this proceeding.

[5] QBE removed the case after the dismissal of Dao, the only non-diverse defendant. QBE concedes it agreed to the remand after Cicalese's counsel provided caselaw that showed a dismissal through an election of responsibility cannot create federal diversity jurisdiction.

[6] Although the clerk's record includes a notice of hearing on QBE's motion to compel, no reporter's record has been filed.

[7] The clerk's record includes a notice of submission on Cicalese's motion to reconsider.

[8] Because we find that QBE has not waived its right to appraisal by its conduct, we do not address the efficacy of the policy's non-waiver provision. *See generally* Shields Ltd. P'ship v. Bradberry, 526 S.W.3d 471, 484 (Tex. 2017) ("[A] nonwaiver provision absolutely barring waiver in the most general of terms might be wholly ineffective.").

[9] *See* In re Acceptance Indem. Ins. Co., 562 S.W.3d 655, 660 (Tex. App.-San Antonio 2018) (orig. proceeding) ("[E]ven if the appraisal is invoked after suit is filed, this might not constitute an unreasonable amount of time between the impasse and the invocation."). *See also* In re GuideOne Mut. Ins. Co., No. 09-12-00581-CV, 2013 WL 257371, at *1 (Tex. App.-Beaumont Jan. 24, 2013, orig. proceeding) (insurer did not waive right to appraisal even though it invoked right more than four years after suit was filed and after mediation occurred).

[10] "The existence of a dispute and the development of an impasse are two different things.") *Id.* (citing Universal Underwriters, 345 S.W.3d at 408).

[11] Cicalese cites a 1981 Amarillo Court of Appeals case for the proposition that "silence or inaction for so long a period as to show an intention to yield the known right, is enough to prove waiver." *See* Alford, Meroney & Co. v. Rowe, 619 S.W.2d 210 (Tex. Civ. App.-Amarillo 1981, writ ref'd n.r.e.). That case involved the waiver of a partnership's right to enforce a penalty provision against a former partner who became a competitor and took clients from the partnership when he left. *Alford* is distinguishable: the waiver issue did not apply to an appraisal clause; there was no contractual non-waiver provision; the same provision had not been previously enforced against leaving partners; and the leaving partner specifically said in his resignation letter that his leaving was contingent upon the firm's decision not to enforce the provision against him. *Id.* at 212, 214. The court found the partnership waived its right to enforce the provision by failing to reject or counter the leaving partner's resignation letter. *Id* at 215.

[12] Cicalese's reliance on cases involving waivers of arbitration clauses after adverse trial court decisions is unavailing. *See* Hogg v. Lynch, Chappell & Alsup, P.C., 480 S.W.3d 767, 790, 796 (Tex. App.-El Paso 2015, no pet.) (arbitration waived when party participated in litigation "only up until the point that she received an adverse ruling from the district court and was faced with the possibility of having the court impose case-crippling sanctions."); Tuscan Builders, LP v. 1437 SH6 L.L.C., 438 S.W.3d 717, 722-23 (Tex. App.-Houston [1st Dist.] 2014, pet. denied) (arbitration waived when builder did not reveal arbitration agreement to plaintiff until after builder joined third parties and the parties conducted a property inspection and completed written discovery and expert designations). *Hogg* and *Tuscan* are distinguishable given, *inter alia,* the nature of the trial court proceedings in those cases before any party sought to compel arbitration.

[13] *See* In re Ooida Risk Retention Grp., Inc., 475 S.W.3d 905, 912 (Tex. App.-Fort Worth 2015, orig. proceeding) ("The prejudice required [] is prejudice *following* impasse and prior to invocation of the appraisal process, *i.e.,* prejudice caused by the insurer's unreasonable delay in invoking the process.") (emphasis in original).

7/8/2021

Case 4:24-cv-00638 Document 5 Filed on 03/17/24 in TXSD Page 40 of 71

SPHERE DRAKE INSURANCE CO. v. MERCED... 20 Cal. 4th 1... (Cal. App. 2029)



EXHIBIT
E

**85 S.W.3d 193 (2002)**

# In re ALLSTATE COUNTY MUTUAL INSURANCE COMPANY, Allstate Indemnity Company, Allstate Insurance Company, Allstate Property and Casualty Insurance Company, Allstate Texas Lloyd's, Farmers Insurance Exchange, Farmers Texas County Mutual Insurance Company, Mid-Century Insurance Company, Mid-Century Insurance Company of Texas, Progressive Casualty Insurance Company, Progressive County Mutual Insurance Company, Progressive Northwestern Insurance Company, Progressive Preferred Insurance Company, Progressive Southeastern Insurance Company, and Progressive Specialty Insurance Company, Relators.

No. 00-1301.

**Supreme Court of Texas.**

Argued November 7, 2001.
Decided August 29, 2002.

194   *194 Howard L. Close, Leanne Johnson, Hollis Horton, Orgain, Bell & Tucker, Beaumont, Thomas T. Rogers, Jackson & Walker, Sean Daniel Jordan, Bell & Murphy, Austin, Reagan M. Brown, Fulbright & Jaworski, Rachel Sue Giesber, Edward B. Adams, Fulbright & Jaworski, LLP, Houston, Lawrence L. Germer, Germer & Gertz, Beaumont, for Relators.

E. Hart Green, Mitchell A. Toups, Weller Green Toups & Terrell, Beaumont, H. Lee Godfrey, Susman Godfrey, Houston, for Respondent.

Justice ENOCH delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice OWEN, Justice O'NEILL and Justice JEFFERSON joined.

The trial court in this case determined that an appraisal provision in a personal automobile insurance policy promulgated by the Texas Department of Insurance is an agreement to arbitrate, and as such, the agreement is unenforceable because it is against public policy. Thus, the trial court refused to enforce the clause. But this provision concerns an appraisal, not arbitration, and is not unenforceable for the reason the trial court gave. Because the trial court abused its discretion and relators have no adequate remedy on appeal, we conditionally grant the writ of mandamus.

## I

Plaintiff Terri Shields's car was stolen, and plaintiffs Renita Washington's and Lucilia Hernandez's vehicles were involved in accidents. Their insurance companies, Allstate, Farmers, and Progressive, respectively, determined that the vehicles were total losses and engaged CCC Information Services, Inc., to determine the values of the totaled cars. Plaintiffs allege that the insurance companies directed CCC to fraudulently generate low values for the totaled vehicles, that CCC intentionally undervalued *195 their vehicles, and that

195   the insurance companies thereby offered plaintiffs less than the full values for their vehicles. Washington and Hernandez accepted the insurance companies' offers. Shields has not yet received any compensation under her policy.

The plaintiffs allege that the insurance companies misrepresented their coverage by representing that actual cash value would be paid under the policies, when in fact CCC's and the insurance companies' conduct resulted in inaccurate, unreliable, and biased valuations, and payment of less than full value. Under the plaintiffs' theory, the insurance companies systematically undervalue vehicles, knowing that because of the costly appraisal process the insureds are unlikely to challenge the valuations. Based on these allegations, they pleaded fraud and fraudulent concealment, Texas Deceptive Trade Practices Act and Texas Insurance Code violations, breach of the duty of good faith and fair dealing, breach of contract, and civil conspiracy.

The plaintiffs' insurance policies contain an appraisal clause, which may be invoked by either party, for determining a vehicle's value if the insurer and the insured disagree. Each party hires its own appraiser. If the two appraisers cannot agree on the value, they select an additional appraiser as an umpire, or a district judge will appoint one if the appraisers cannot agree on an umpire. A decision signed by two of the appraisers is binding as to the vehicle's value.

After plaintiffs filed suit, the insurance companies answered and then filed a plea in abatement and motion to invoke appraisal. The trial court denied the motion, finding that the appraisal provision, when considered as an arbitration agreement, was unenforceable. The defendants unsuccessfully sought mandamus relief from the court of appeals. They then petitioned this Court for mandamus relief.

## II

The trial court's conclusion that the appraisal provision was an arbitration agreement and unenforceable was error. This Court distinguished between appraisal and arbitration clauses over a hundred years ago. In _Scottish Union & National Insurance Co. v. Clancy_, we concluded that while arbitration determines the rights and liabilities of the parties, appraisal merely "binds the parties to have the extent or amount of the loss determined in a particular way."[1] We held that appraisal clauses are enforceable.[2] Texas courts have continued to recognize this distinction,[3] as has the United States Court of Appeals for the Fifth Circuit.[4] And Texas courts have enforced appraisal clauses since that decision.[5]

## III

"[A] clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion" subject *196 to correction by writ of mandamus when the relator has no adequate remedy by appeal.[6] We hold that the trial court abused its discretion by determining that the appraisal clause in the plaintiffs' policies was an arbitration clause and unenforceable. But before issuing mandamus, we must determine whether relator has an adequate appellate remedy.

In an analogous situation, we have held that denial of discovery "going to the heart of a party's case may render the appellate remedy inadequate."[7] As to the plaintiffs' breach of contract claim, the parties have agreed in the contracts' appraisal clause to the method by which to determine whether a breach has occurred. That is, if the appraisal determines that the vehicle's full value is what the insurance company offered, there would be no breach of contract. Accordingly, at a minimum, denying the appraisals will vitiate the defendants' ability to defend the breach of contract claim. Because the appraisals go to the heart of the plaintiffs' breach of contract claim, we need not decide here the significance of the appraisals to each of the remaining claims.

In _Walker v. Packer,_ this Court reaffirmed the principle that "an appeal will not be an adequate remedy where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error."[8] A refusal to enforce the appraisal process here will prevent the defendants from obtaining the independent valuations that could counter at least the plaintiffs' breach of contract claim. We conclude that the failure to order the appraisals will vitiate or severely compromise the defendants' defenses to those claims.[9]

# IV

The parties in this case contracted for an appraisal if they disagreed about the damaged property's value. Texas courts have distinguished between appraisal and arbitration for over a hundred years. And they have enforced appraisal provisions over that same length of time. Under Texas law, the trial court's conclusion that the appraisal clause was one for arbitration and unenforceable was an error of law, constituting an abuse of discretion. That abuse of discretion denies the development of proof going to the heart of a party's case and cannot be remedied by appeal. Accordingly, we conditionally grant mandamus relief.

While the trial court's denial of the motion to invoke appraisal was error, the failure to grant the motion to abate is not subject to mandamus.[10] In any event, the proceedings need not be abated while the appraisal goes forward. While the trial court has no discretion to deny the appraisal, the court does have some discretion as to the timing of the appraisal.[11] We trust that the trial court will comply with this opinion; the writ will issue only if it fails to do so.

Justice BAKER filed a dissenting opinion, in which Justice HANKINSON joined.

Justice RODRIGUEZ did not participate in the decision.

197    *197 Justice BAKER filed a dissenting opinion, in which Justice HANKINSON joined.

Once again, the Court ignores established mandamus precedent and rolls back the clock to a time before our decision in _Walker v. Packer,_ 827 S.W.2d 833 (Tex. 1992). Here, I agree with the Court that the trial court abused its discretion when it determined that the appraisal clause is an unenforceable arbitration agreement. But, once again, I cannot agree that an appeal is inadequate and that mandamus relief is warranted. Because the Court ignores _Walker's_ express requirement that the insurance companies ("Allstate") establish an inadequate appellate remedy to obtain mandamus relief, I dissent.

# I. ADEQUATE REMEDY AT LAW—APPEAL

A writ of mandamus will issue "only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law." _Johnson v. Fourth Court of Appeals,_ 700 S.W.2d 916, 917 (Tex.1985). This Court has long recognized that we may not issue mandamus relief when the law provides another plain, adequate, and complete remedy. _See Iley v. Hughes,_ 158 Tex. 362, 311 S.W.2d 648, 652 (Tex.1958). The requirement that a person seeking mandamus relief establish the lack of an adequate appellate remedy is a "fundamental tenet" of mandamus practice. _Walker,_ 827 S.W.2d at 840. As the Court has repeatedly stated, mandamus is intended to be an extraordinary remedy, available only in limited circumstances. _Walker,_ 827 S.W.2d at 840. An appellate remedy is not inadequate merely because it may involve more expense or delay than obtaining mandamus relief. _See CSR Ltd. v. Link,_ 925 S.W.2d 591, 596

(Tex.1996); _Walker_, 827 S.W.2d at 842. Because mandamus is an extraordinary remedy, this Court may not issue mandamus to supervise or correct a trial court's incidental rulings when there is an adequate remedy at law, such as a normal appeal. _See Canadian Helicopters, Ltd. v. Wittig_, 876 S.W.2d 304, 306 (Tex.1994); _Walker_, 827 S.W.2d at 839-40.

# II. ANALYSIS

Missing from the Court's opinion is an accurate description of the plaintiffs' claims in this case. The plaintiffs have sued Allstate for fraud, fraudulent concealment, violations of the Texas Deceptive Trade Practices Act and the Texas Insurance Code, breach of the duty of good faith and fair dealing, civil conspiracy, and breach of contract. The plaintiffs' allegations underlying all these claims—including the breach of contract claim that the Court solely relies upon for granting mandamus—relate to how Allstate and the appraisal company it employs, CCC Information Services, value cars before Allstate initially offers a cash settlement for a covered loss. The plaintiffs' pleadings contend that Allstate, in concert with CCC Information Services, systematically undervalues cars at the initial valuation stage and offers this low amount knowing that the initial valuations "are inaccurate, unreliable, and biased toward generating valuation reports well below the actual cash value or replacement cost" and anticipating that claimants will not bother disputing the offer. The plaintiffs argue that Allstate's conduct is fraudulent and constitutes a breach of its agreement to pay cash value for covered losses at the initial valuation stage.

Refusing to acknowledge the nature of the plaintiffs' claims, in a remarkably terse discussion, the Court holds that Allstate does not have an adequate appellate remedy from the trial court's erroneous decision *198 that the appraisal clause is an unenforceable arbitration provision. The Court concludes that the trial court's order is analogous to an order denying discovery "'going to the heart of a party's case.'" 85 S.W.3d at 196 (quoting _Walker_, 827 S.W.2d at 843). The Court explains that this is because "the parties have agreed in the contracts' appraisal clause to the method by which to determine whether a breach has occurred." 85 S.W.3d at 196. According to the Court, the trial court's refusal to enforce the appraisal provision will vitiate Allstate's defenses, because it prevents Allstate from "obtaining the independent valuations that could counter at least the plaintiffs' breach of contract claim." 85 S.W.3d at 196.

In determining that the trial court's order denying the appraisals would vitiate or severely compromise Allstate's defenses, the Court relies on _Walker._ 85 S.W.3d at 196. In _Walker,_ we held that, in the discovery context, "an appeal will not be an adequate remedy where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error." _Walker_, 827 S.W.2d at 843. Thus, whether the excluded discovery goes to the heart of the party's case so that appellate relief is inadequate is pertinent. _See Walker_, 827 S.W.2d at 843; _Jampole v. Touchy_, 673 S.W.2d 569, 576 (Tex.1984). But, still, the relator must "establish the effective denial of a reasonable opportunity to develop the merits of his or her case, so that the trial would be a waste of judicial resources." _Walker_, 827 S.W.2d at 843. Otherwise, the relator has not shown that the trial court's error vitiated a viable claim or defense so that no adequate appellate remedy exists. _Walker_, 827 S.W.2d at 843.

Here, the Court's position is that no adequate appellate remedy exists, because Allstate's defenses to the plaintiffs' breach of contract allegations turn on whether Allstate did in fact undervalue the plaintiffs' cars at the initial valuation stage. According to the Court, "if the appraisal determines that the vehicle's full value is what the insurance company [initially] offered, there would be no breach of contract." 85 S.W.3d at 196. But the Court's analysis entirely ignores that the plaintiffs do not simply seek to recover the value for their particular losses, which is all that the appraisal process will produce. Rather, the plaintiffs seek damages

arising from Allstate's alleged fraud, statutory violations, and breach of contract. And, as discussed above, all these claims relate to how Allstate values car losses or damages at the initial valuation and offer stage. In other words, the plaintiffs challenge the initial valuation process—that is, how Allstate values cars at that stage and whether Allstate breaches its obligation to pay cash value at that stage.

Moreover, the Court's unfounded belief that the appraisal valuations will finally resolve whether Allstate breached its contractual obligation to pay cash value for losses or damage at the initial valuation stage demonstrates a fundamental misunderstanding not only about our case law involving insurance contract appraisal provisions, but also about when the Court has authority to issue mandamus relief. First, long ago, this Court rejected the position that an appraisal's outcome establishes liability when we held that, unlike an arbitration provision, an appraisal provision "only binds the parties to have the extent or amount of the loss determined in a particular way, leaving the question of liability for such loss to be determined, if necessary, by the courts." _Scottish Union & Nat'l Ins. Co. v. Clancy_, 71 Tex. 5, 8 S.W. 630, 631 (Tex.1888); _see also_ _Hennessey v. Vanguard Ins. Co._, 895 S.W.2d 794, 797-98 (Tex.App.-Amarillo 1995, writ denied). Thus, the

199 Court's writing impermissibly *199 and incorrectly advises Allstate about how it may successfully defend against the breach of contract claim.

Second, the Court's cursory conclusion that the appraisal valuations are dispositive of the plaintiffs' breach of contract claim disregards that Allstate can otherwise develop defenses to the plaintiffs' breach of contract allegations. The Court simply assumes, without analysis or explanation, that the trial court's order refusing to enforce the appraisal provision vitiates or severely compromises Allstate's ability to defend itself against the plaintiffs' breach of contract claim. However, other than the Court's wholly advisory writing, there is absolutely no indication that the appraisal process' outcome is the only means by which Allstate can develop its contractual defenses. Allstate has not demonstrated that it lacks other reasonable opportunities to develop evidence about the cars' values to counter the plaintiffs' allegations about Allstate's breach of its obligation to pay cash value at the initial valuation process. _See_ _Walker_, 827 S.W.2d at 843. Indeed, even if appraisals would provide evidence to refute the plaintiffs' claim that Allstate breached its obligation to pay cash value or replacement cost, as the Court asserts, the Court wholly ignores that Allstate can obtain information about the initial valuation process and the cars' values through other means.

For example, Allstate can obtain expert testimony about the valuation process and about the actual losses to counter the plaintiffs' allegations. Thus, the trial court's order is nothing more than an incidental ruling that does not deny Allstate a reasonable opportunity to develop its defenses against the plaintiffs' claims. Moreover, because the cars' values can be established through other means, the appraisal process is certainly not dispositive on whether Allstate breached its agreement to pay actual value for covered losses or whether Allstate systematically acted fraudulently during the initial valuation process.

Furthermore, in granting mandamus relief because the appraisal valuations will counter at least one of the plaintiffs' claims, the Court parses the breach of contract claim from the plaintiffs' other claims. In doing so, the Court recognizes that the erroneous order does not compromise Allstate's defenses to the fraud-based claims. However, even assuming the Court has authority to grant mandamus relief based on an order's purported effect on one of the several underlying claims, the Court's decision to do so here is based on its faulty assumption that the breach of contract claim necessitates the appraisal process. Instead, the plaintiffs' pleadings demonstrate that the plaintiffs' breach of contract claim is that Allstate breached its agreement to pay cash value for covered losses during the initial valuation stage; no allegations underlying the breach of contract claim refer to Allstate's duty under the appraisal provision. The Court cites no authority—and I find none that exists—for its conclusion that the appraisal process' outcome is entirely dispositive of the breach of contract claim here. Further, there is no authority for the Court's assumption that

Allstate cannot defend itself against the breach of contract claim through other means. Because Allstate has not established that the trial court's order vitiates its defenses so that trial would be a waste of judicial resources, an adequate appellate remedy exists. *See* *Walker*, 827 S.W.2d at 843. Therefore, the Court must deny mandamus relief.

200     Ultimately, the trial court's order refusing to enforce the appraisal provisions is, in light of the plaintiffs' claims against Allstate, an incidental ruling. As the Court acknowledges, it is well settled in *200 Texas that insurance contract appraisal provisions are typically enforceable. *Clancy*, 8 S.W. at 631. Since 1888, when we decided *Clancy,* our courts of appeals have consistently and correctly applied Texas law on appraisal clauses on ordinary appeal.[1] Consequently, well-established Texas authority demonstrates that the trial court's refusal to enforce the appraisal clause can be readily corrected, if necessary, on appeal.

# III. THE ROAD OF NO RETURN... ONCE AGAIN

"Yesterday ... I believe in yesterday."

# Lennon/McCartney

The Court obviously believes in yesterday, because its opinion revives a concept we expressly disapproved in *Walker v. Packer*. The law clearly establishes that appraisal clauses are not analogous to unenforceable arbitration provisions. Thus, this case involves a trial court's erroneous decision about a settled legal question for which an appeal is readily available. In order to justify mandamus here, the Court, while skillfully avoiding saying so, revives the more lenient mandamus standard first articulated in *Cleveland v. Ward*, 116 Tex. 1, 285 S.W. 1063, 1068 (1926), that the remedy by appeal must be "equally convenient, beneficial, and effective as mandamus." Therefore, the Court's real purpose is to avoid making the parties go through the time and expense of a trial on its merits and then appeal the trial court's decision. In *Walker,* we expressly held that this is no longer a valid reason for concluding appellate relief is inadequate. *Walker*, 827 S.W.2d at 842 (disapproving *Cleveland, Jampole,* and any other authority to the extent they implied that a remedy by appeal is inadequate merely because it might involve more delay or cost than mandamus).

Today, the Court's opinion returns us to this disfavored doctrine and will cause appellate courts to "embroil themselves unnecessarily in incidental pre-trial rulings of the trial courts." *Walker*, 827 S.W.2d at 842 (quoting *Braden v. Downey*, 811 S.W.2d 922, 928 (Tex.1991)). Because the Court continues to lead us down this Road of No Return, I dissent.

[1] 71 Tex. 5, 8 S.W. 630, 631 (1888).

[2] *See id.* at 631-32.

[3] *See, e.g., Standard Fire Ins. Co. v. Fraiman*, 514 S.W.2d 343, 344 (Tex.Civ.App.-Houston [14th Dist.] 1974, no writ); *Huntington Corp. v. Inwood Constr. Co.*, 348 S.W.2d 442, 444 (Tex.Civ.App.-Dallas 1961, writ ref'd n.r.e.).

[4] *Hartford Lloyd's Ins. Co. v. Teachworth*, 898 F.2d 1058, 1061-62 (5th Cir.1990).

[5] *See, e.g., Glens Falls Ins. Co. v. Peters*, 386 S.W.2d 529, 532 (Tex.1965); *Vanguard Underwriters Ins. Co. v. Smith*, 999 S.W.2d 448, 451 (Tex.App.-Amarillo 1999, no pet.); *In re Terra Nova Ins. Co.*, 992 S.W.2d 741, 742 (Tex.App.-Texarkana 1999, no pet.); *Standard Fire*, 514 S.W.2d at 345; *see also Hartford Lloyd's*, 898 F.2d at 1063.

[6] *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

[7] *Id.* at 843.

[8] *Id.*

[9] *See, e.g., id.; Able Supply Co. v. Moye,* 898 S.W.2d 766, 772 (Tex.1995).

[10] *See Abor v. Black,* 695 S.W.2d 564, 567 (Tex.1985).

[11] *See, e.g., In re Terra Nova,* 992 S.W.2d at 742.

[1] *See, e.g., Glens Falls Ins. Co. v. Peters,* 386 S.W.2d 529, 532 (Tex.1965); *Export Ins. Co. v. Axe,* 58 S.W.2d 39, 40 (Tex. Com.App.1933, holding approved); *Pennsylvania Fire Ins. Co. v. W.T. Waggoner Estate,* 39 S.W.2d 593, 595 (Tex.Com.App.1931); *American Cent. Ins. Co. v. Terry,* 26 S.W.2d 162, 166 (Tex. Com.App. 1930, holding approved); *In re Terra Nova Ins. Co.,* 992 S.W.2d 741, 742 (Tex.App.-Texarkana 1999) (orig.proceeding); *Hennessey v. Vanguard Ins. Co.,* 895 S.W.2d 794, 799 (Tex. App.-Amarillo 1995, writ denied); *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.,* 877 S.W.2d 872, 878-79 (Tex.App.-San Antonio 1994, no writ); *Barnes v. Western Alliance Ins. Co.,* 844 S.W.2d 264, 268-69 (Tex.App.-Fort Worth 1992, writ dism'd by agr.); *American Cent. Ins. Co. v. Terry,* 298 S.W. 658, 659-660 (Tex.Civ.App.-Texarkana 1927, no writ); *Boston Ins. Co. v. Kirby,* 281 S.W. 275, 276 (Tex.Civ.App.1926, no writ); *Aetna Ins. Co. v. Shacklett,* 57 S.W. 583, 583 (Tex.Civ.App.1900, no writ); *American Fire Ins. Co. v. Stuart,* 38 S.W. 395, 395 (Tex.Civ. App.1896, no writ); *Manchester Fire Ins. Co. v. Simmons,* 12 Tex.Civ.App. 607, 35 S.W. 722, 724 (1896, writ ref'd); *see also Hartford Lloyd's Ins. Co. v. Teachworth,* 898 F.2d 1058, 1062 (5th Cir.1990).

Save trees - read court opinions online on Google Scholar.



**IN RE GUIDEONE MUTUAL INSURANCE COMPANY.**

No. 10-16-00404-CV.

**Court of Appeals of Texas, Tenth District, Waco.**

Opinion delivered and filed May 3, 2017.

Douglas Clemons, William N. Allan, IV, for D. S. Patel, Real party in interest.

Malissa Wilson, Ryan G. Cole, John G. Browning, for Guideone Mutual Insurance Company, Relator.

Douglas Clemons, William N. Allan, IV, for Western Motel, Real party in interest.

Original Proceeding.

Pet. conditionally granted.

Before Chief Justice Gray, Justice Davis, and Justice Scoggins.

# MEMORANDUM OPINION

TOM GRAY, Chief Justice.

GuideOne Mutual Insurance Company brings this petition for writ of mandamus to compel the trial court to vacate its order denying GuideOne's Motion to Compel Appraisal and to direct the trial court to order the appraisal to proceed under the procedure authorized by contract. Because the trial court abused its discretion in denying the motion to compel, GuideOne's petition for writ of mandamus is conditionally granted.

# BACKGROUND

This proceeding arises from a dispute between an insurance company, GuideOne, and its insured, D.S. Patel d/b/a Western Motel, regarding payment for claimed property damage to the motel from a storm. GuideOne made two payments to Patel for the damages, but Patel contends the payments are inadequate. After Patel filed suit against GuideOne and mediation was unsuccessful, GuideOne invoked its right to appraisal pursuant to the insurance contract. GuideOne filed a motion to compel appraisal after Patel refused to voluntarily proceed with the appraisal process. After a hearing, the trial court denied the motion to compel appraisal.

# APPRAISAL CLAUSE

In its sole issue, GuideOne argues the trial court abused its discretion by failing to enforce a contractual appraisal clause in the parties' insurance contract. Appraisal clauses, commonly found in homeowners, automobile, and property policies in Texas, provide a means to resolve disputes about the amount of loss for a covered claim. *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 406-07 (Tex. 2011); *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888 (Tex. 2009). These clauses are generally enforceable, absent illegality or waiver. *In re Universal Underwriters*, 345 S.W.3d at 407.

Trial courts have no discretion to ignore a valid appraisal clause. *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888 (Tex. 2009). A trial court abuses its discretion in failing to enforce a valid appraisal clause and such abuse of discretion cannot be remedied by appeal. *See In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 412 (Tex. 2011); *In re Allstate Cnty. Mut. Ins. Co.*, 85 S.W.3d 193, 195-96 (Tex. 2002).

Patel did not argue at the trial court, nor does he argue here, that the appraisal clause is illegal. Instead, Patel argued that GuideOne waived the ability to assert the use of the clause. GuideOne's argument before us is two-fold: first, GuideOne contends it did not waive the appraisal clause by delaying the invocation of it; and second, GuideOne argues it could not

waive the appraisal clause because the insurance contract included a "non-waiver clause." Because it is dispositive of this case, we review GuideOne's second argument first.

## *Non-Waiver Clause*

The insurance contract between the parties contains the following non-waiver clause:

> 12. Waiver or Change of Provisions.
>
> This policy contains all of the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.
>
> This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

Non-waiver clauses are generally considered valid and enforceable. *See American Cent. Ins. Co. v. Bass,* 38 S.W. 1119, 1119-20, 90 Tex. 380 (1897); *Breof BNK Tex., L.P. v. D.H. Hill Advisors, Inc.,* 370 S.W.3d 58, 66 (Tex. App.-Houston [14th Dist.] 2012, no pet.); *accord A.G.E., Inc. v. Buford,* 105 S.W.3d 667, 676 (Tex. App.-Austin 2003, pet. denied). *See also In re GuideOne Nat'l Ins. Co.,* No. 07-15-00281-CV, 2015 Tex. App. LEXIS 10138, at *7 (App.-Amarillo Sep. 29, 2015, orig. proceeding) (mem. op.). There is nothing in the record before us, and Patel does not argue otherwise, that indicates GuideOne issued an endorsement waiving the appraisal clause.

In response to GuideOne's argument regarding the non-waiver clause, Patel does not argue that the non-waiver clause is not part of the contract or that the clause is not valid. Rather, Patel argues that because the appraisal clause was unilateral, *i.e.,* that only GuideOne could invoke the appraisal process, the appraisal clause was more like an option that would not change the policy if GuideOne chose not to exercise it.

In support of this argument, Patel relies on a footnote by the Dallas Court of Appeals in *In re GuideOne Nat'l Ins. Co.,* No. 05-15-00981-CV, 2015 Tex. App. LEXIS 9079, at *2-3 n.2 (App.-Dallas Aug. 27, 2015, orig. proceeding) (mem. op.). In that footnote, the Dallas Court refused to consider GuideOne's non-waiver clause argument solely because GuideOne relied on this Court's decision in *In re Certain Underwriters at Lloyds,* 10-11-00263-CV, 2011 Tex. App. LEXIS 8151 (Tex. App.-Waco Oct. 12, 2011, orig. proceeding) (mem. op.). In *In re Certain Underwriters,* after finding the insurer did not unreasonably delay in invoking the appraisal clause,[1] we held that the issue of waiver of the appraisal clause was "immaterial" because the insurance policy contained a non-waiver provision and thus, did not allow for the waiver of the appraisal clause. *Id.* *30. The Dallas Court found this Court's decision to be distinguishable because under the policy being construed, appraisal was a condition precedent to filing suit and allowing the case to proceed without an appraisal would modify the terms of the policy. *See In re GuideOne Nat'l Ins. Co.,* No. 05-15-00981-CV, 2015 Tex. App. LEXIS 9079, at *2-3 n.2 (App.-Dallas Aug. 27, 2015, orig. proceeding) (mem. op.). Without citing authority, the Dallas Court determined that, in its case, the appraisal clause was merely an option available only to the insurer and an intention by the insurer not to exercise the option would not alter the terms of the policy. *Id.*

However, since the Dallas Court of Appeals issued its opinion, the Amarillo Court of Appeals squarely addressed a non-waiver clause argument in a case where the insurer was the only party to the contract with the ability to demand an appraisal.[2] *In re GuideOne Nat'l Ins. Co.,* No. 07-15-00281-CV, 2015 Tex. App. LEXIS 10138 (App.-Amarillo Sep. 29, 2015, orig. proceeding) (mem. op.). Rather than rewriting the contract to convert the appraisal clause into an option as the Dallas Court did, the Amarillo Court noted that insurance contracts are construed to ascertain the parties' intent, and the language in the policy is presumed to reflect the intentions of the parties. *Id.* at *6. It further noted that when reviewing a contract, the reviewing court must strive to honor the parties' agreement and not remake their contract. *Id.* Keeping these principles in mind, the court determined that it could not "ignore language in the contract simply because we or one of the parties comes to dislike the provision or thinks that some other action is intended." *Id.* at *7-8. The court decided that the parties chose the language when the decision to enter into the insurance contract was made, and the court would not "change that language at this late date." *Id.* at *8. Based on these determinations, the court held that the trial court "clearly abused its discretion by refusing to enforce the contract according to its terms[,]" and by failing to compel compliance with the appraisal process provided for in the contract. *Id.*

## APPLICATION

We agree with the reasoning of the Amarillo Court. We cannot ignore the language of the insurance contract between the parties in this case. The policy provides that its terms can only be waived by endorsement issued by GuideOne and made a part of the policy. There is no indication in this record that an endorsement waiving the appraisal clause was issued and made a part of the policy. Also, Patel does not argue the non-waiver clause is invalid. Patel essentially argues that we should modify the language in the contract. We decline the invitation to rewrite the agreement of the parties. We hold the non-waiver clause is valid. Further, because the non-waiver clause is valid, and based on the undisputed facts in this case, any issue of waiver of the appraisal clause argued by Patel in the trial court is immaterial. *See In re Certain Underwriters at Lloyds,* 10-11-00263-CV, 2011 Tex. App. LEXIS 8151, *29 (Tex. App.-Waco Oct. 12, 2011, orig. proceeding) (mem. op.). Thus, the trial court abused its discretion in refusing to grant GuideOne's motion to compel appraisal, and GuideOne's sole issue is sustained.

## CONCLUSION

Accordingly, GuideOne's petition for writ of mandamus is conditionally granted. We are confident the trial court will vacate its order denying appraisal and promptly enter an order consistent with this opinion. The writ will issue only if the trial court does not take the appropriate action within 14 days from the date of this opinion.

[1] Unreasonable delay is one of the two prongs needed to establish a waiver of an appraisal clause.

[2] Also since the Dallas Court of Appeals issued its opinion, the Courts of Appeals in Houston favorably addressed non-waiver clause arguments by the insurer where both parties could invoke the appraisal process. *See In re Liberty Ins. Corp.,* 496 S.W.3d 229 (Tex. App.-Houston [1st Dist.] 2016, orig. proceeding); *In re State Farm Lloyds,* No. 14-16-00696-CV, 2017 Tex. App. LEXIS 173 (App.-Houston [14th Dist.] Jan. 10, 2017, orig. proceeding) (mem. op.).

Save trees - read court opinions online on Google Scholar.



EXHIBIT
G
tabbies

**542 S.W.3d 815 (2018)**

# IN RE ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY.

No. 09-18-00024-CV.

**Court of Appeals of Texas, Beaumont.**

Submitted on January 26, 2018.
Opinion Delivered February 22, 2018.

Appeal from the County Court at Law No. 2 of Montgomery County, Texas, Trial Cause No. 17-08-10039-CV.

Original Proceeding.

Sarah J. Allen, Ronald J. Restrepo, Doyle, Restrepo, Harvin & Robbins, Houston, for Relator.

Jack D. Kitchen, Robert C. Lane, The Lane Law Firm, PC, Houston, for Real Party In Interest.

Before McKeithen, C.J., Kreger and Horton, JJ.

817    *817 **OPINION**

PER CURIAM.

Allstate Vehicle and Property Insurance Company (Allstate) seeks mandamus relief from the trial court's decision denying its motion to compel an appraisal pursuant to the appraisal clause in Pamela Bailey's homeowners policy. We conditionally grant Allstate's petition, and direct the trial court to vacate its order denying Allstate's motion and enforce the appraisal clause in Bailey's policy.

# Background

Shortly after Bailey insured her home for property damages with Allstate in April 2015, Bailey's home was damaged in a storm. Although Allstate was given an estimate showing that the home needed $13,776[1] in repairs, Allstate determined
818    *818 that the home suffered only $2,766 in damages. After applying Bailey's deductible, Allstate advised Bailey that it would pay her $766 for the "storm related damages identified by Allstate in connection with the reported loss[.]"

In July 2017, Bailey's attorney wrote Allstate a demand letter. Based on an estimate included with the letter,[2] Bailey's attorney demanded that Allstate pay Bailey $11,776, an amount Bailey's attorney based upon an estimate that accompanied his demand letter, less Allstate's prior payment and Bailey's deductible. Bailey's attorney also demanded that Allstate pay penalties in the amount of $3,405 on Bailey's claim together with attorney's fees and expenses associated with his work on Bailey's case of $3,533. With respect to appraisal, the demand letter states:

> If you wish to appraise this loss under the policy's appraisal condition, please notify us of the identity of your appraiser within twenty (20) days of your receipt of this letter. Otherwise we intend to move forward, in reliance on your decision, with [litigation] as outlined below.

Approximately forty days later, Allstate responded to the letter, advising Bailey's attorney that it was "not in agreement on the amount of loss claimed by your client as set out in your letter, and respectfully declines to pay your [$18,713] demand." Allstate also pointed out that Bailey's policy included a no action clause and that the clause did not allow Bailey to file suit unless Bailey had fully "[complied] with all policy terms[.]" Allstate's letter was silent regarding whether it intended to invoke its right to an appraisal regarding Bailey's property damage claim.

In August 2017, Bailey sued Allstate, alleging claims based on theories of breach of contract, misrepresentation, failing to pay Bailey's claim promptly, and bad faith. Allstate answered Bailey's suit in September 2017. In November 2017, Allstate invoked the appraisal clause and notified Bailey's attorney of the name of the individual that it had chosen as its appraiser.

7/8/2021　　Allstate Vehicle & Property Ins. Co. v. Bailey, 542 SW 3d 816 - Tex: Court of Appeals, 3rd Dist. 2018 - Google Scholar

Case 4:24-cv-00639 Document 5 Filed on 03/17/24 in TXSD Page 52 of 71

When Bailey did not respond to Allstate's demand for an appraisal, Allstate filed a motion asking that the trial court compel an appraisal. The appraisal provision in Bailey's homeowners policy provides:

> Appraisal
>
> If you and we fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire.

Bailey filed a written response to Allstate's motion to compel in December 2017. In her response, Bailey argued that by waiting until after she filed suit to invoke its right to appraisal, Allstate had waived its appraisal rights. Additionally, Bailey argued that Allstate's request for appraisal was "an impermissible request to compel specific performance under the policy." In late December 2017, the trial court signed an order denying Allstate's motion to compel.

819

\*819 **The Parties' Arguments**

In its petition for mandamus relief, Allstate argues the trial court abused its discretion by denying its motion to require that Bailey go through the appraisal process. Allstate further claims that Bailey was not prejudiced by any of its delays because she could have avoided any alleged prejudice by demanding an appraisal before filing suit. Because the trial court denied Allstate's motion to compel, Allstate also claims the trial court interfered with its right to defend against Bailey's allegation that it breached the obligations it owed Bailey under her insurance policy. Finally, Allstate argues that by allowing a trial to occur before requiring Bailey's property damage claim to go through the appraisal process, it has no adequate remedy by appeal.

In response to Allstate's petition, Bailey argues that proceeding to mediation and trial in the event mediation is unsuccessful is a more efficient and cost-effective alternative than appraisal. She notes the case is on the docket for trial in February 2018. Second, Bailey argues the trial court might have denied Allstate's motion based on her argument that she had incurred attorney's fees and expenses after filing suit. Bailey claims that requiring her to incur expenses for both an appraisal and trial will "cut[] into Bailey's bottom line and significantly hinder[] her ability to pay for the repairs to the property that need to be made." Third, Bailey claims that Allstate waived its right to appraisal because it did not invoke its right to an appraisal before engaging in the litigation process for approximately two months after she filed suit. Finally, Bailey argues that Allstate waived its right to appraisal because Allstate failed to allege in either an answer, a counterclaim, or a motion for summary judgment that Bailey had not submitted her property damages claim to the appraisal process.

## Analysis

### *The Right to Appraisal*

First, we note that we have jurisdiction to consider Allstate's petition for mandamus, as the petition challenges a ruling from a statutory county court. Tex. Gov't Code Ann. § 22.221(b)(1) (West Supp. 2017). Second, we note that the law in Texas is settled concerning the judicial enforcement of appraisal clauses that are contained within insurance policies. An appraisal clause in a policy "binds the parties to have the extent or amount of the loss determined in a particular way[.]" *Scottish Union & Nat'l Ins. Co. v. Clancy*, 71 Tex. 5, 8 S.W. 630, 631 (1888). The purpose of an appraisal clause is to "provide a means to resolve disputes about the amount of loss for a covered claim." *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 407 (Tex. 2011). Such provisions are "generally enforceable, absent illegality or waiver." *Id.*

Bailey did not argue the appraisal clause in her policy is illegal, but she did claim that Allstate waived its right to require her to submit her property damage claim to the appraisal process. Under Texas law, "'[w]aiver requires intent, either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.'" *Id.* (quoting *In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006)). Additionally, a party relying on a claim of waiver cannot rely on delay alone, but must also establish prejudice. *Id.* at 411.

Given the language in the demand letter from Bailey's attorney, Bailey argues the trial court could have found that, by waiting until November 2017 to seek an appraisal, Allstate unreasonably delayed its *820 decision to invoke the appraisal process. However, Bailey's policy places no time limit on the parties regarding when the appraisal clause must be invoked. Moreover, both the insured and the insurer have the right to invoke appraisal. Thus, although Bailey could have invoked the appraisal clause even before she elected to file suit, she did not. Allstate's decision to invoke the appraisal process after Bailey filed suit is not conduct inconsistent with its claim that it was entitled to rely on the terms that are in the policy that it issued to Bailey.

The language in Bailey's policy is also relevant to our determination that Bailey's attorney could not unilaterally change Allstate's rights to an appraisal through a letter informing Allstate that Bailey intended to file suit. The construction of an unambiguous contract is a question of law — it is not a fact issue. _Tex. Farm Bureau Mut. Ins. Co. v. Sturrock_, 146 S.W.3d 123, 126 (Tex. 2004). Bailey's policy provides that it "can be changed only by endorsement."[3] The record before the trial court includes no evidence showing that Allstate issued an endorsement that changed any rights the parties had under the policy to invoke the appraisal clause. Moreover, "[c]ourts cannot make new contracts between the parties, but must enforce the contracts as written. Because the terms of an insurance policy are plain, definite and unambiguous, the courts cannot vary these terms." _Royal Indem. Co. v. Marshall_, 388 S.W.2d 176, 181 (Tex. 1965). We conclude that the trial court did not have the discretion to re-write the policy in a way that required Allstate to invoke its right to appraisal before Bailey filed suit.

We further conclude that the record does not support findings that Allstate unreasonably delayed seeking appraisal or that Bailey was prejudiced by Allstate's alleged delays. While delay can be a factor in finding waiver, "reasonableness must be measured from the point of impasse" after considering the circumstances and the parties' conduct. _Universal_, 345 S.W.3d at 408. The Texas Supreme Court has explained:

> An impasse is not the same as a disagreement about the amount of loss. Ongoing negotiations, even when the parties disagree, do not trigger a party's obligation to demand appraisal. Nor does an insurer's offer of money to cover damages necessarily indicate a refusal to negotiate further, or to recognize additional damages upon reinspection.

_Id._ Impasse occurs when the parties reach "a mutual understanding that neither will negotiate further[.]" _Id._ at 410.

The record before us in this case shows that after Allstate invoked the appraisal process, Bailey filed a "Motion to Compel Mediation In Lieu Of Appraisal." Nothing in the record shows that Allstate was unwilling to negotiate further or reconsider its position rejecting Bailey's settlement offer upon conducting another inspection of Bailey's home. Viewing the record as a whole, and given that Bailey's demand for mediation indicates the parties were not at an impasse, we conclude that no reasonable construction of the record supports a finding of impasse before the date that Allstate invoked its contract right to an appraisal. "Like any other contractual provision, appraisal clauses should be enforced." _State Farm Lloyds v. Johnson_, 290 S.W.3d 886, 895 (Tex. 2009).

*821 We also reject Bailey's argument that she established she was prejudiced by any alleged delays attributable to the timing surrounding Allstate's decision to invoke the appraisal clause. For example, Bailey argues that she was prejudiced because she incurred expenses when she filed suit and expenses by participating in discovery. However, these expenses were avoidable, as Bailey could have invoked the appraisal clause before filing suit. _See In re Cypress Tex. Lloyds_, 419 S.W.3d 443, 445 (Tex. App. — Beaumont Apr. 26, 2012, orig. proceeding [mand. denied]) ("When a party knows of its right to request an appraisal and does not make that request, it is difficult to attribute the costs incurred to the opponent.").

Finally, we reject Bailey's arguments that Allstate failed to file the proper pleadings needed to allow the trial court to resolve Allstate's demand for appraisal. According to Bailey, a jury should resolve whether her failure to participate in the appraisal process constitutes either a material breach of the policy or a condition she must satisfy before she can recover. Based on this argument, she concludes that Allstate was required to present its demand for appraisal by filing a counterclaim followed by a motion for summary judgment. According to Bailey, Allstate's motion to compel appraisal is analogous to the process involved in the enforcement of an appraisal award. In support of the arguments, Bailey relies on _Security National Insurance Company v. Waloon Investment, Inc._, 384 S.W.3d 901, 907-08 (Tex. App. — Houston [14th Dist.] 2012, no pet.).

However, _Waloon_ is distinguishable from the facts that are presented here. In _Waloon_, the Fourteenth Court of Appeals reasoned that the trial court erred by rendering a judgment requiring the insurer to pay a loss that had been established through the appraisal process without first determining whether the insured could recover against its insurer. _Id._ at 905. Thus, the Fourteenth Court of Appeals' holding in _Waloon_ addresses a different stage of the process than the stage of the

process at issue here, which in Bailey's case concerns whether a trial court is required to order the parties to go through the appraisal process. *See id.* In Bailey's case, there is no appraisal award, and the ruling Allstate challenges does not concern enforcing an award. *Id.*

Bailey also argues that Allstate failed to plead that it had a right to appraisal in its answer, in a counterclaim, or in a motion for summary judgment. However, the procedure to enforce the right to appraisal is well-established. A party's right to appraisal may be accomplished by the filing of motion to compel appraisal, which is the procedure that Allstate followed here. *See Universal*, 345 S.W.3d at 412; *In re Allstate Cty. Mut. Ins. Co.*, 85 S.W.3d 193, 196 (Tex. 2002). Bailey fails to cite any cases holding that a party to a contract containing an appraisal clause must file a counterclaim for specific performance or motion for summary judgment before the trial court is authorized to compel the parties to participate in the appraisal process.

In summary, Bailey's insurance policy with Allstate places no time limit on the parties concerning when a party must demand an appraisal. While a dispute exists over the value of Bailey's property damage claim, her decision to file suit does not establish that Allstate waived its right to appraisal. *See In re GuideOne Mut. Ins. Co.*, No. 09-12-00581-CV, 2013 WL 257371, at *2 (Tex. App. — Beaumont Jan. 24, 2013, orig. proceeding [mand. denied]) (mem. op.) (distinguishing appraisal as a means of determining amount of loss from arbitration as a choice of an alternate forum). We *822 hold the trial court abused its discretion by denying Allstate's motion.

822

## Remedy

We are required to determine whether Allstate has an adequate appellate remedy by balancing the benefits of mandamus review against its detriments. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008). The Texas Supreme Court has held that "mandamus relief is appropriate to enforce an appraisal clause because denying the appraisal would vitiate the insurer's right to defend its breach of contract claim." *Universal*, 345 S.W.3d at 412; *see also Allstate*, 85 S.W.3d at 196. For this same reason, we hold that Allstate has no adequate remedy by appeal. *See id.*

We conditionally grant Allstate's petition for a writ of mandamus. We are confident the trial court will vacate its order denying Allstate's motion to compel and enforce the appraisal clause in Bailey's policy. The writ of mandamus will issue only if the trial court fails to act in accordance with this opinion.

PETITION CONDITIONALLY GRANTED.

[1] For convenience, the dollar amounts referenced in the opinion have been rounded to the nearest dollar.

[2] The estimate the attorney relied on is not included in the record in this proceeding.

[3] The policy does allow Allstate to unilaterally change the policy's terms if the change broadens the coverage without charge.

Save trees - read court opinions online on Google Scholar.



EXHIBIT
**H**

## IN RE SECURITY NATIONAL INSURANCE COMPANY, Relator.

No. 14-10-00009-CV.

**Court of Appeals of Texas, Fourteenth District, Houston.**

Memorandum Opinion filed April 22, 2010.

Panel consists of Justices YATES, SEYMORE, and BROWN.

# MEMORANDUM OPINION

JEFFREY V. BROWN, Justice.

On January 6, 2010, relator, Security National Insurance Company, filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. §22.221 (Vernon 2004); *see also* Tex. R. App. P. 52. In the petition, Security asks us to compel the Honorable Dion Ramos, presiding judge of the 55th District Court of Harris County, to set aside his order of November 12, 2009, denying Security's motion to compel appraisal pursuant to the insurance policy, and instead grant the motion. Security further requests that we compel the trial court to abate the underlying case. We conditionally grant the petition in part and deny it in part.

## I

Security issued a commercial-insurance policy to Waloon Investment d/b/a Ramada Limited. The policy was in effect on September 13, 2008, when Hurricane Ike struck Houston. The property the policy covered—a Ramada Inn—sustained damage from the hurricane. Under the policy, Security insured Waloon against direct physical loss or damage to covered property, as well as loss of business income caused directly by a covered cause or loss. On January 19, 2009, Waloon submitted a proof of loss to Security. On January 22, 2009, Waloon invoked the policy's appraisal provisions by making written demand on Security.[1] The policy contains two separate appraisal provisions, one for building contents and one for business income. The business income appraisal clause provides:

> If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that such selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expenses and the amount of loss.

> If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each party will:

> a. Pay its chosen appraiser; and

> b. Bear the other expenses of the appraiser and umpire equally.

If there is an appraisal:

> a. You will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Commercial Property Condition; and

> b. We will retain our right to deny the claim.

The property coverage appraisal clause provides:

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:

a. You will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Commercial Property Condition; and

b. We will still retain our right to deny the claim.

On February 16, 2009, Security notified Waloon of the appraiser it had selected.[2] But on February 23, 2009, Waloon informed Security that it was no longer pursuing appraisal:

[T]he appraisal procedure invoked by Mr. Lindley has been tabled for the time being until an investigation surrounding this claim has been completed by my office. This law firm is currently investigating the damages caused by Hurricane Ike to the above property. Once the investigation is complete a formal response will be made to your previous letters, including the one in which you point out my client bears some proportional responsibility in this matter.

On March 10, 2009, Belfor USA Group, the restoration contractor, filed suit against Waloon Properties, Inc., for non-payment of contractor's fees and failure to endorse insurance drafts Security issued for services relating to the restoration of the Ramada Inn. According to Belfor's original petition, on September 17, 2008, Belfor and Waloon Properties entered into a written contract in which Waloon agreed to assign to Belfor its right, title, and interest in and to all insurance policies and proceeds covering restoration and repair damage to the property that occurred as a result of Hurricane Ike. According to Security, Waloon rejected and returned the checks Security issued for repair work that included Belfor as payee, requesting Security to reissue the claim-payment drafts to Waloon as the sole payee.

On March 13, 2009, Security filed an interpleader and declaratory-judgment action, depositing $178,480.91—the amount of the returned checks made in partial payment of Waloon's claim—into the registry of the court. Security asserted it that may be subject to multiple liability with regard to the insurance-policy proceeds because of actual or potential rival claims, and it is unable to determine which defendant, individually or collectively, is entitled to the proceeds. Security also sought "a judgment declaring the rights of the parties related to: (1) [the policy at issue] as respects the damage to the structure and contents at issue, as well as the loss of business income, caused solely by Hurricane Ike; and (2) the parties' interest in the payment of the amounts. . . ." Security further sought a judgment declaring and determining that it has no direct or vicarious liability in contract or tort to Waloon arising out of or related to any claim by Waloon to Belfor concerning any of the negligent repairs or defective workmanship by Belfor. On May 20, 2009, Security's interpleader action was consolidated with Belfor's lawsuit.

On June 4, 2009, Waloon filed a counterclaim against Security for breach of contract, violations of the Texas Deceptive Trade Practices Act, violations of the Texas Insurance Code, breach of the duty of good faith and fair dealing, breach of fiduciary duty, misrepresentations, and common-law fraud by misrepresentation.

On July 2, 2009, Security and Waloon participated in mediation. On July 13, 2009, Security's counsel wrote to Waloon, asserting its right to an appraisal:

Please recall that by letter January 27, 2009, Waloon Investments, Inc. exercised its right to an appraisal to resolve questions of the disputed value and extent of loss and damage to the Ramada Inn. After both Waloon Investment and Security National designated their appraisers to begin the appraisal procedure, Waloon "tabled [the procedure] for the time being" in a letter from Bill Voss dated February 23, 2009.

Over the last few months, Security National has received three separate estimates of the extent of loss and damage alleged by Waloon Investment, and was presented with yet another set of loss and damage amounts on July 2, 2009.

Agreement has yet to be reached regarding the extent of damage to the Ramada from Hurricane Ike. Accordingly, Security National reiterates that an appraisal of all disputed value and loss amounts will move forward. We designate Russ White . . . as the appraiser for Security National.

Because Security National and Waloon Investment currently disagree on

• the value of the property (to both the building and contents),

• the amount of loss (to both the building and contents),

• the amount of Net Income and operating expense, and

• the amount of business income loss and extra expenses incurred,

Security National makes this written demand that Waloon Investment resume the appraisal process.

In response to this designation of Mr. White, Waloon Investment will need to designate, in writing, its appraiser, within 20 days of the date of this letter, that is, by August 3, 2009. Both appraisers will then need to agree on the selection of an umpire.

Please note that as stated in the policy, and specifically reiterated here, Security National reserves its rights under the policy and Texas law to contend that part of the loss or damage, either was due to the property's pre-existing condition, or did not result from Hurricane Ike, or resulted from a failure of Waloon Investment to mitigate its damages.

On August 6, 2009, Security wrote to Waloon Investment, in relevant part, regarding its desire to proceed with appraisal:

Having paid over $625,000 on this claim, Security National recognizes that this is an important and significant claim. It is chiefly for that reason we remain very willing to abide a quick resolution for a finalized claim total, whether in mediation or at appraisal. However, we continue to seek agreement that appraisal will promptly follow mediation if mediation proves unsuccessful.

To reiterate where the parties stand, our first day of mediation took place on July 2, 2009. On July 13, 2009, Security National exercised its rights to have an impartial appraisal panel determine the values and extent of loss (at both RCV and ACV) to the Ramada building, business contents, and business income. On July 23, 2009, you and I both proposed moving forward with appraisal if a second day of mediation did not allow us to reach settlement.

Under the contract between the parties, Waloon was to name its appraiser by Monday, August 3, 2009. Waloon did not do so. You have now indicated that Waloon's lawyers will resist efforts to appraise the loss, even though Waloon initially requested appraisal, and the parties began the process in January 2009.

My purpose in writing now is to request that Waloon rethink its opposition to appraisal. For you and your clients to agree to this proposal—mediation first, and if unsuccessful, proceed 11 [sic] agreement for your consideration. We sincerely desire to reach this agreement, but if that is not possible, Security National will pursue its motion to compel appraisal. In the meantime, we remain committed to resuming mediation.

On August 7, 2009, Waloon wrote Security that because it has a number of defenses to appraisal, it "cannot agree to voluntarily enter the appraisal process." On August 18, 2009, the parties attended a second day of mediation. On September 21, 2009, Security filed its verified motion to compel appraisal, which the trial court denied on November 12, 2009.

## II

To be entitled to the extraordinary relief of a writ of mandamus, the relator must show that the trial court abused its discretion and there is no adequate remedy by appeal. *In re Gulf Exploration, LLC*, 289 S.W.3d 836, 842 (Tex. 2009) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear

and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law. _In re Cerberus Capital Mgmt., L.P._, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam); _Walker v. Packer_, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). In determining whether appeal is an adequate remedy, we consider whether the benefits outweigh the detriments of mandamus review. _In re BP Prods. N. Am., Inc._, 244 S.W.3d 840, 845 (Tex. 2008) (orig. proceeding).

# III

# Abuse of Discretion

Appraisal clauses are uniformly included in most forms of property-insurance policies. _State Farm Lloyds v. Johnson_, 290 S.W.3d 886, 888 (Tex. 2009). Virtually every insurance policy contains provisions specifying appraisal as a means of resolving disputes regarding the "amount of loss" for a covered claim. _Id._ An appraisal "'binds the parties to have the extent or amount of the loss determined in a particular way.'" _In re Allstate County Mut. Ins. Co._, 85 S.W.3d 193, 195 (Tex. 2002) (orig. proceeding) (quoting _Scottish Union & Nat'l Ins. Co. v. Clancy_, 71 Tex. 5, 8 S.W. 630, 631 (1888)). Because appraisals do not require attorneys, lawsuits, pleadings, subpoenas, or hearings, appraisals can generally be completed with less time and expense than motions contesting it. _State Farm Lloyds_, 290 S.W.3d at 894.

The Texas Supreme Court recently observed that "appraisal is intended to take place before suit is filed." _Id._ Indeed, both the Texas Supreme Court and others "have held it is a condition precedent to suit." _Id._ "Like any other contractual provision, appraisal clauses should be enforced." _Id._ Because the amount of loss must be determined in every property damage case, "appraisals should generally go forward without preemptive intervention by the courts." _Id._

Waloon asserts, from February 23, 2009, when it withdrew from the appraisal process, through July 13, 2009, Security neither objected to such withdrawal nor independently invoked appraisal and, therefore, waived its right to demand appraisal. Waloon further contends Security waived appraisal by initiating the underlying litigation. The affirmative defense of waiver can be asserted against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. _Tenneco, Inc. v. Enter. Prods. Co._, 925 S.W.2d 640, 643 (Tex. 1996). Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding circumstances. _Jernigan v. Langley_, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam). There can be no waiver of a right if the party sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right. _Id._ Silence or inaction, for so long a period as to show an intention to yield the known right is sufficient to establish waiver. _Tenneco_, 925 S.W.2d at 643. Waiver is ordinarily a question of fact. _Id._ However, where the facts and circumstances are admitted or clearly established, the question becomes one of law. _Id._

Security argues, even if it had not asserted its intent to participate in appraisal before filing its interpleader action and participating in the first day of mediation, it did not engage in conduct that would establish waiver because an "impasse" had not been reached until after the conclusion of the second day of mediation in August 2009. The date of disagreement or impasse is the point of reference to determine whether a demand for an appraisal is made within a reasonable time. _In re Slavonic Mut. Fire Ins. Ass'n_, No. 14-09-01057-CV, 2010 WL 1236333, at *5 (Tex. App.-Houston [14th Dist.] Apr. 1, 2010, orig. proceeding); _see also Sanchez v. Prop. & Cas. Ins. Co. of Hartford_, No. H-09-1736, 2010 WL 413687, at *5 (S.D. Tex. Jan. 27, 2010) (determining proper point of reference for determining whether insurer waived right to invoke appraisal by delay is point at which insurer knew appraisal clause could be invoked because of disagreement over amount of damages, i.e., point of impasse with insured).[3] In light of Waloon having invoked the appraisal clause on January 22, 2009, "due to an inability to reach an agreement on the amount of loss," we conclude the date of disagreement is January 22, 2009. As explained below, under the facts and circumstances of this case, even though the date of disagreement was January 22, 2009, Security independently asserted its right to appraisal within a reasonable time and did not waive its right to appraisal.

The Texas Supreme Court set forth the following test for waiver of the right to appraisal:

> "To constitute waiver, the acts relied on must be such as are reasonably calculated to induce the assured to believe that a compliance by him with the terms and requirements of the policy is not desired, or would be of no effect if performed. The acts relied on must amount to a denial of liability, or a refusal to pay the loss."

_In re Slavonic Mut. Fire Ins. Ass'n_, 2010 WL 1236333, at *6 (quoting _Scottish Union & Nat'l Ins. Co._, 8 S.W. at 632).

Waloon claims, to the extent that Security has denied any portion of coverage, Security has waived the right to appraisal. Denying coverage under an insurance policy waives the right of the insurer to request an appraisal. *See In re Acadia Ins. Co., 279 S.W.3d 777, 780 (Tex. App.-Amarillo 2007, orig. proceeding)* (citing *Am. Cent. Ins. Co. v. Terry, 26 S.W.2d 162, 166 (Tex. Comm. App. 1930, holding approved)*).[4] But Waloon has not identified or specified any portion of coverage Security has denied.[5] Moreover, we reject Waloon's contention that Security waived its right to appraisal by filing the interpleader, in which Security tendered the undisputed portion of the loss. In the same pleading as its petition for interpleader, Security sought:

> a judgment declaring the rights of the parties related to: (1) *[the policy at issue] as respects the damage to the structure and contents at issue, as well as the loss of business income, caused solely by Hurricane Ike;* and (2) the parties' interest in the payment of the amounts.[6]

However, Security's request for a declaratory judgment as to the coverage does not constitute waiver of its right to appraisal. Appraisal is limited to determining amounts of loss, and not determining whether the insurer should pay. *See State Farm Lloyds, 290 S.W.3d at 890 n.22* (quoting 15 Couch on Insurance § 210:42) ("'As a general rule, the sole purpose of an appraisal is to determine the amount of damage.'").[7]

Here, Security showed its willingness to participate in the appraisal after Waloon initially invoked the appraisal clause of the policy. Also, Waloon submitted its proof of loss on January 19, 2009, and March 12, 2009, and further submitted an estimate of damages on June 9, 2009. Moreover, Security did not waive appraisal by attending mediation. *See Scottish Union & Nat'l Ins. Co. v. Clancey, 83 Tex. 113, 18 S.W. 439, 441 (1892)* ("The facts of this case show that there was no waiver of the stipulations in the policy relating to proof of loss and appraisement of the property. They show, on the other hand, that appellants, through their agents and adjuster, were endeavoring to ascertain the amount of damage. . . ."); *see also Sanchez, 2010 WL 413687, at *8* (stating insurer's attempts to adjust and settle claim do not waive insurer's right to appraisal).

Waloon also claims Security breached its contractual obligations by failing to pay timely and complete policy benefits for the costs to properly repair the damage to the commercial property. We do not believe that any alleged breach of the policy by Security amounts to a waiver of its right to appraisal. *See, e.g., In re State Farms Lloyds, Inc., 170 S.W.3d 629, 634-35 (Tex. App.-El Paso 2005, orig. proceeding)* (holding insurer's alleged failure to comply with other policy provisions did not show intent to dispense with policy's requirements which would allow insurer to arrive at amount of loss).[8]

We conclude the record in this case does not demonstrate Security engaged in conduct that establishes a denial of liability or refusal to pay the loss, or would otherwise lead Waloon to believe that compliance with the terms of the policy was not desired. *See Scottish Union & Nat'l Ins. Co., 8 S.W. at 632.* Therefore, the trial court abused its discretion by denying Security's motion to compel appraisal.[9]

## No Adequate Remedy by Appeal

The denial of an appraisal vitiates or severely compromises the defendant's ability to defend a breach-of-contract claim. *In re Allstate County Mut. Ins. Co., 85 S.W.3d at 196.* Here, Waloon has asserted a claim for breach of contract. By not compelling appraisal, the trial court has denied Security's ability to defend against Waloon's breach-of-contract claim. *See In re Slavonic Mut. Fire Ins. Ass'n, 2010 WL 1236333, at *7* (holding that "the trial court's action denies Slavonic the development of proof going to the heart of its case"). We conclude Security does not have an adequate remedy by appeal. *See id.* (holding appeal was not adequate remedy for denial of appraisal).

## Abatement

Security also requests that we compel the trial court to abate the underlying litigation pending completion of appraisal. A review of the mandamus record, however, does not reflect that Security moved for or otherwise requested that the trial court abate the case. A party's right to mandamus relief generally requires a predicate request for some action and a refusal of that request. *In re Perritt, 992 S.W.2d 444, 446 (Tex. 1999)* (orig. proceeding). Because Security made no such request to the trial court, we cannot grant Security's petition for writ of mandamus on the issue of abatement.

* * *

We hold the trial court abused its discretion by denying Security's motion to compel appraisal, and Security does not have an adequate remedy by appeal. Accordingly, we conditionally grant Security's petition for writ of mandamus with respect to its motion to compel appraisal and direct the trial court to set aside its order of November 12, 2009, and instead grant Security's motion. We deny Security's petition with respect to its request that we compel the trial court to abate the underlying case. The writ will issue only if the trial court fails to act in accordance with this opinion.

[1] The January 22, 2009 letter from Waloon's counsel states, in relevant part:

Pursuant to the appraisal provisions of the Policy and due to an inability to reach agreement on the amount of loss, Waloon hereby makes written demand for an appraisal of the loss being handled under the Claim. Waloon names Jansen International, L.L.C. as its appraiser for the appraisal process. Waloon hereby requests that Unitrin notify it within 20 days of the appraiser selected by Unitrin, as required by the Policy.

[2] The February 16, 2009 letter from the adjuster, J.W. Bonanno, further stated:

Security National can neither accept nor deny the Sworn Statement in Proof of Los at this time. Rather, Security National is continuing to investigate the cause and scope of the loss and the claims made by Waloon Investment. In terms of Security National's additional investigation, please find enclosed a February 16, 2009 letter from our attorneys. In that letter, Shannon, Gracey requests various documents to assist Security National in its investigation of the claim, and also requests scheduling of examinations under oath. Shannon, Gracey will be in contact with your attorney to further discuss the documents requested for review and to schedule your examinations under oath.

* * *

Additionally I would remind you that pursuant to the terms of the policy, "If there is an appraisal, we still retain our right to deny the claim." Thus in the event the appraisers or umpires attempt to decide any issues of coverage, Security National is not bound by those findings. . . .

[3] Here, the policy does not contain a time period of time in which to demand appraisal. An insurer does not waive demand-for-appraisal provision by failing to assert it within some contractually specified time period when the contract does not contain a deadline for demanding appraisal. *In re Clarendon Ins. Co.,* No. 2-04-305-CV, 2004 WL 2984916 (Tex. App.-Fort Worth Dec. 23, 2004, orig. proceeding [mand. denied]) (mem. op.).

[4] In *Acadia,* a letter from the adjuster stated the inspection revealed no apparent damage to two roofs from wind/hail within the policy period of the policy. 279 S.W.3d at 780. Another letter from the insurer's counsel showed that the insurer did not think the claim in question was a covered event and it could not be required to submit a claim for an appraisal if there was no coverage. *Id.* The court of appeals held the trial court had evidence that the insurer had intentionally and unequivocally relinquished the right to appraisal so that it could challenge coverage. *Id.*

[5] To date, Security has paid approximately $650,000 on the undisputed portion of the claim; Waloon maintains this is an underpayment of the claim.

[6] Emphasis added.

[7] The Texas Supreme Court has stated that "limiting appraisal to damages and not liability is surely still correct." *State Farm Lloyds,* 290 S.W.3d at 889-90. The court further explained that "in most cases appraisal can be structured in a way that decides the amount of loss without deciding any liability questions." *Id.* at 894. When a divisible injury to property may have several causes, appraisers can assess the amount of damage and leave causation up to the courts. *Id.* When divisible losses are involved, appraisers can decide the cost to repair each without deciding who must pay for it. *Id.*

[8] In dicta, the *Sanchez* court explained: "Indeed, if insureds could escape appraisal by merely alleging an anticipatory breach (or repudiation) whenever there is a dispute over coverage or claims handling, appraisal clauses would be virtually a nullity. Such a result is in direct contravention of the strong public policy in favor of enforcing such clauses." 2010 WL 413687, at *8 n.10.

[9] We reject Waloon assertion that compelling appraisal in this case would violate its right to have this dispute resolved by a jury. The Texas Supreme Court has held that appraisal "is a condition precedent to suit," and "is intended to take place before suit is filed." *State Farm Lloyds,* 290 S.W.3d at 894. We also reject Waloon's contention that to force completion of appraisal would militate against judicial efficiency because "[i]t would be a rare case in which appraisal could not be completed with less time and expense than it would take to file motions contesting it." *Id.*

Save trees - read court opinions online on Google Scholar.

Case 4:24-cv-00639   Document 5   Filed on 03/17/24 in TXSD   Page 62 of 71



**419 S.W.3d 443 (2012)**

# In re CYPRESS TEXAS LLOYDS.

<u>No. 09-12-00077-CV.</u>

**Court of Appeals of Texas, Beaumont.**

Submitted March 22, 2012.
Decided April 26, 2012.

444    *444 M.C. Carrington, Maryalyce W. Cox, Mehaffy Weber, P.C., Beaumont, Warren W. Harris, J. Mark Little, Bracewell & Giuliani LLP, Houston, for relator.

J. Steve Mostyn, Amber Anderson Mostyn, Michael R. Ramsey, The Mostyn Law Firm, Houston, Richard P. Hogan, Jr., Jennifer Bruch Hogan, Matthew E. Coveler, Hogan & Hogan, Houston, for Real Party in Interest.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

# OPINION

PER CURIAM.

Cypress Texas Lloyds seeks mandamus relief from an order that denies a motion to compel appraisal. Kevin Newman and Chantel Newman sued Cypress. Their homeowner's insurance policy issued by Cypress includes an appraisal clause. Cypress pleaded the failure to submit to the appraisal process and requested abatement in its original answer and in a series of amended answers. Cypress subsequently moved to compel appraisal. At the time of the hearing on the motion to compel, the parties had agreed to remove the case from the trial docket so that the appraisal issue could be addressed. Finding waiver, the trial court denied the motion to compel. This original proceeding followed.

To establish waiver of appraisal, a party must show that the failure to invoke the policy's appraisal provision within a reasonable time after an impasse was reached caused prejudice. *See* <u>In re Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404, 408, 410 (Tex.2011)</u>. Cypress argues that its first notice of impasse occurred when the Newmans filed suit, and that Cypress invoked the appraisal provision in its pleadings by specifically pleading the failure to submit to the appraisal process by requesting an abatement until that condition was satisfied. Notwithstanding the notice provided by Cypress's pleadings, the Newmans proceeded with discovery without seeking appraisal under the policy. Cypress argues it did not

445    unreasonably delay before invoking appraisal and any harm suffered by the Newmans stems from their failure to *445 comply with the policy and undergo appraisal before filing suit. *Id.* at 408-09.

The Newmans argue that Cypress waited too long to file the motion to compel. The Newmans contend that Cypress employed a deliberate strategy to not compel an appraisal while discovery proceeded. During the hearing on the motion to compel, counsel for the Newmans informed the court that they had hired an engineer and an estimator for the purpose of litigation.

The trial court considered "the lapse of time, the significant procedural and substantive matters developed for litigation" and concluded "it is clear that the parties have incurred significant legal expenses which would, undoubtedly, damage their financial position." In its order the trial court mentioned discovery hearings, a discovery-related mandamus proceeding, docket control orders, status conferences, retention and designation of experts, trial settings, and an agreed motion for continuance. The record supports a conclusion that Cypress employed a deliberate strategy to not obtain an appraisal and that the Newmans incurred some costs before Cypress filed a motion to compel.

Where the insurance policy provides for an appraisal process, compliance is excused only if the party resisting the appraisal can show prejudice. *Id.* at 411-12. When either party may demand an appraisal, a party "can avoid prejudice by demanding an appraisal itself." *Id.* at 412. The Newmans argue that this statement in *Universal Underwriters* is dicta. Even if the statement was not pivotal to the opinion, this Court is not free to ignore the statement. *See* <u>R.R. Comm'n of Tex. v. Aluminum Co. of Am., 380 S.W.2d 599, 601 (Tex.1964)</u>; *see also* In re Southern Ins. Co., No. 09-11-00022-CV, 2011 WL

846205, *2 (Tex.App.-Beaumont Mar. 10, 2011, orig. proceeding) (mem. op.) (Even if some statements in an opinion may not have been pivotal to the Supreme Court's opinion, "a lower court is not free to ignore statements of law `said deliberately' by the Supreme Court.").

The Newmans also argue that the Supreme Court did not intend to set an impossible test for demonstrating waiver. While not setting an impossible standard for demonstrating prejudice, the Court did explain that "it is difficult to see how prejudice could ever be shown when the policy, like the one here, gives both sides the same opportunity to demand appraisal." *Universal Underwriters*, 345 S.W.3d at 412. There is no evidence in this case that a request by the Newmans for an appraisal would have been resisted by Cypress. When a party knows of its right to request an appraisal and does not make that request, it is difficult to attribute the costs incurred to the opponent.

The Newmans could have avoided the costs by requesting the appraisal themselves. Cypress notified the Newmans that the performance of the appraisal as a condition precedent would be an issue in the case when Cypress originally answered the suit. Waiver of the appraisal required by the policy has not been established under the facts of this case.

We conditionally grant the petition for a writ of mandamus. We are confident that the trial court will vacate its order denying the motion to compel an appraisal and will enforce the appraisal provision of the policy. The writ of mandamus will issue only if the trial court fails to act in accordance with this opinion.

PETITION CONDITIONALLY GRANTED.

Save trees - read court opinions online on Google Scholar.

**In re Public Service Mutual Insurance Company, Reed Insurance Adjusters, and Steven L. Matthews.**



EXHIBIT

J

<u>No. 03-13-00003-CV.</u>

**Court of Appeals of Texas, Third District, Austin.**

Filed: February 21, 2013.

Before Justices Puryear, Pemberton and Rose.

## MEMORANDUM OPINION

JEFF ROSE, Justice.

Relators Public Service Mutual Insurance Company (PSMIC), Reed Insurance Adjusters, and Steven L. Matthews filed a petition for writ of mandamus and motion for temporary relief from the district court's order directing the parties to complete mediation and denying Relators' motion to abate the underlying cause and to compel an appraisal required by the commercial property insurance policy that PSMIC issued to real parties in interest, Shree Deep LLC and Asha Ram Ltd. d/b/a Best Value Inn and Suites (Shree Deep). We conditionally grant the petition for writ of mandamus to compel the appraisal, deny the petition for mandamus as to the motion to abate, and dismiss the motion for temporary relief.

## BACKGROUND

The challenged order stems from Relators' motion to compel appraisal and abate litigation in a suit that Shree Deep filed against them, alleging breach of contract and violations of the insurance code and Texas Deceptive Trade Practices Act based on PSMIC's nonpayment of policy benefits for motel roof damage attributed to a February 1, 2011 windstorm. The policy insured the property from January 1, 2011 to January 1, 2012 and had a $5,000 deductible.

Shree Deep made a claim for roof damage but withdrew it before a scheduled inspection, initially acknowledging to PSMIC that the damage was less than the policy's deductible. Steven L. Matthews of Reed Insurance Adjusters proceeded to inspect the roof damage for PSMIC, finding the roof damage was minimal and estimating the value of the loss at $1,000.23. Months after withdrawing the claim, Shree Deep retained public insurance adjuster Gary Pennington, and Pennington hired engineer Jim Linehan, who concluded that there was extensive damage requiring new roofs. PSMIC's adjuster Matthews subsequently hired engineer Eric D. Moody, who conducted an investigation and determined that the shingle-loosening damage to the roof did not result from the February 1 windstorm. PSMIC sent a letter to Shree Deep's adjuster on September 23, 2011, providing copies of Moody's report and Reed's $1,000.23 estimate and explaining that because the amount was "substantially less than the insured policy deductible of $5,000, PSM w[ould] be unable to issue payment to the insured under the claim for the damage repairs." The letter also invited further information to evaluate the claim:

> Should you not agree with PSM's evaluation of the claim as reported, A Proof of Loss form is enclosed with this letter. Your completion of it in accord with your evaluation of the insured damage is invited, along with a copy of estimate or contractor's bid in support. PSM will consider any such further submission and advise you if there are any changes on the claim evaluation, in light of the new information.

After receiving the March 23 letter, Shree Deep's adjuster referred the claim to counsel for litigation. Shree Deep sent a DTPA notice letter to PSMIC on January 31, 2012. PSMIC responded on March 7, 2012, reasserting its position that "the covered damages in this claim do not exceed the policy's deductible."

Shree Deep filed the underlying suit against Relators on March 30, 2012, contending that the parties disputed both policy coverage for the claim and the amount of the loss. Relators argued that the latter was the crux of their dispute. The case progressed, Shree Deep obtained an October 22, 2012 trial setting,[1] and on September 19, 2012, Relators filed a motion to compel appraisal and abate litigation, invoking the following provision from Shree Deep's policy:

APPRAISAL

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:

a. You will retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Property Loss Condition; and

b. We will still retain our right to deny the claim.

The relevant part of the policy's "Legal Action Against Us" provision made "full compliance with all the terms of this insurance" a condition precedent to filing suit against PSMIC under the policy.

After a hearing, the trial court denied the motion, ordered the parties to complete mediation, and required the parties to agree to a mediator.[2] Relators then filed this petition for mandamus and motion for temporary relief.

## ANALYSIS

To obtain mandamus relief, a relator must show that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Southwestern Bell Tel. Co., 226 S.W.3d 400, 403 (Tex. 2007)* (citing *In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 135-36 (Tex. 2004)*). Mandamus relief is appropriate when the trial court denies a motion to compel an appraisal, vitiating the insurer's right to defend a breach of contract claim. *In re Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404, 412 (Tex. 2011)* (citing *In re Allstate Co. Mut. Ins. Co., 85 S.W.3d 193, 196 (Tex. 2002)* (orig. proceeding)).

## Appraisal

Appraisal clauses in insurance contracts set forth a process for resolving disputes about a property's value or the amount of a covered loss. *Id.* at 405. These clauses are usually enforceable, absent illegality or waiver. *Id.* at 407. Further, "[w]hile trial courts have some discretion as to the timing of an appraisal, they do not have discretion to ignore a valid appraisal clause entirely." *State Farm Lloyds v. Johnson, 290 S.W.3d 886, 893 (Tex. 2009)*.

Relators argue that the trial court erred in denying its motion to compel compliance with a valid appraisal provision in the insurance contract because it vitiates their ability to defend Shree Deep's breach of contract claim. Shree Deep responds that mandamus relief is improper because: (1) compliance with the appraisal provision was excused by PSMIC's failure to pay policy benefits, which was a prior material breach of the contract; (2) the parties' dispute includes a coverage issue that is inappropriate for appraisal; (3) even if appraisal were appropriate, PSMIC waived any such appraisal right, and (4) the appraisal provision is unenforceable under general contract principles. We consider each of these arguments in turn.

## Excuse from compliance for failure to pay

In response to the Relators' arguments about the general enforceability of the appraisal provision, Shree Deep contends, without citation to authority, that it was excused from complying with the appraisal provision because PSMIC materially breached the policy by failing to pay policy benefits for the covered peril of windstorm damage. As Relators observed, courts have disfavored similar arguments that nonpayment of a claim excused an insured's participation in appraisal. *See, e.g.,*

*Sanchez v. Property & Cas. Ins. Co. of Hartford*, No. H-09-1736, 2010 U.S. Dist. LEXIS 6295, at *25 n.10 (S.D. Tex. Jan. 27, 2010) (noting that claimant cited no authority for proposition that mere allegation of insurer's breach of insurance contract relieves insured of obligation to participate in appraisal, and if insureds could escape appraisal with anticipatory breach or repudiation allegations whenever coverage or claims-handling disputes arose, "appraisal clauses would be virtually a nullity"); *In re Security Nat'l Ins. Co.*, No. 14-10-00009-CV, 2010 Tex. App. LEXIS 2911, at *19 (Tex. App.-Houston [14th Dist.] Apr. 22, 2010, orig. proceeding) (mem. op.) (rejecting argument that insurer was not entitled to enforce right to appraisal because it had breached its contractual obligations by failing to pay timely and complete policy benefits for the costs to properly repair the damage to the commercial property); *see In re State Farm Lloyds, Inc.*, 170 S.W.3d 629, 634-35 (Tex. App.-El Paso 2005, orig. proceeding) (holding that insurer's alleged failure to comply with other policy provisions did not show intent to dispense with policy's requirements that would allow insurer to arrive at amount of loss).

Acceptance of Shree Deep's prior-breach argument would compel payment of a disputed-value claim before the appraisal, curtailing the utility of its inclusion in the contract. The Texas Supreme Court disapproves of such construction of an appraisal clause. *See Johnson*, 290 S.W.3d at 893 (noting that courts must avoid construing appraisal clauses in manner that would render such clauses largely inoperative). We are not persuaded by Shree Deep's argument against enforcement of the appraisal provision in this policy.

## Propriety of appraisal with coverage issue

Shree Deep further contends that appraisal is improper where coverage issues remain. In support of its contention that valuation of the loss is not the only disputed issue, Shree Deep points to correspondence from PSMIC's counsel stating that the roofing materials were aged and that prior repairs indicated the damage predated the commencement of coverage on January 1, 2011.[3] Shree Deep contends that the primary issue in this case involves a battle of the engineering experts about whether a February 1, 2011 windstorm (covered) or a storm before January 1, 2011 (predating coverage) caused the motel roof damage. Relying on an excerpt from *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 892 (Tex. 2009), a case with an analogous dispute about hail damage to a homeowner's roof, Shree Deep argues that when there are different causes for a single injury to property, causation is a liability question for courts, not appraisers. *See id.* (citing *Wells v. American States Preferred Ins. Co.*, 919 S.W.2d 679, 685-86 (Tex. App.-Dallas 1996, writ denied)).

However, in *Johnson*, the Texas Supreme Court expressed strong favor for enforcement of appraisal clauses in insurance contracts, even when concerns arise about the scope of the appraisal. *Id.* at 893 ("Even if the appraisal here turns out to involve not just damage but liability questions, that does not mean that appraisal should be prohibited as an initial matter."); *see Sanchez*, 2010 U.S. Dist. LEXIS 6295, at *9 (noting Texas Supreme Court's policy favoring enforcement of appraisal clauses in contracts regardless of concerns that might exist about scope of appraisal). The Court observed that appraisal clauses are a common feature in most property insurance policies for resolving disputes about the value of a covered claim and concluded that appraisals should generally proceed without preemptive intervention by the courts "unless the amount of loss will never be needed." *Johnson*, 290 S.W.3d at 888-89, 895.

Relators point out that *Johnson* also recognized appraisers' responsibility for separating loss due to a covered event from a property's pre-existing condition. *See id.* at 892. The court reasoned that if appraisers could never allocate damages between covered and excluded perils, then appraisals could never assess hail damage unless a roof were brand new. *Id.* The court advised against such a construction because it would "render appraisal clauses largely inoperative." *Id.* at 893. The court further stated that causation must always be a consideration for appraisers, at least initially, because an appraisal is for damages caused by a particular occurrence, not every repair that a property might require. *Id.* "Any appraisal necessarily includes some causation element because setting the `amount of loss' requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else." *Id.* The court concluded that parties could not avoid appraisal merely because there might be a causation question that exceeded the scope of appraisal. *Id.*

Based on this controlling law, we similarly conclude that the appraisal provision in this policy may not be disregarded simply because coverage or causation issues about which storm caused the roof damage may overlap with issues about of the amount of the loss and repair costs.

## Waiver of appraisal

Shree Deep argues alternatively that even if appraisal were appropriate here, Relators waived any such right. "[W]aiver requires intent, either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *In re Universal Underwriters*, 345 S.W.3d at 407 (quoting *In re General Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006)). Because waiver is an affirmative defense, the burden of showing waiver is on the party challenging the right to appraisal. *In re State Farm Lloyds*, 170 S.W.3d at 634. To establish waiver, the party challenging appraisal must show that (1) the parties reached an impasse—"a mutual understanding that neither will negotiate further," and (2) any failure to demand appraisal within a reasonable time prejudiced the opposing party. *In re Universal Underwriters*, 345 S.W.3d at 410, 412. The Texas Supreme Court has cautioned that prejudice is difficult to prove when, as in this case, the policy gives both sides the same opportunity to demand appraisal. *See id.* at 412. Courts "will not infer waiver where neither explicit language nor conduct indicates that such was the party's intent." *Id.* at 410.

## 1. Waiver by delay

Shree Deep contends that appraisal is intended to take place before suit is filed, *see Johnson*, 290 S.W.3d at 894, and Relators waived any such right through their unreasonable delay in requesting it. Shree Deep argues that the point of impasse was reached and Relators should have invoked appraisal either after PSMIC's September 23 letter denying Shree Deep's claim, or when Shree Deep sent its January 31 DTPA demand letter. Relators argue that their counsel continued efforts to work with Shree Deep to resolve the amount of the disputed loss even after suit was filed on March 30, 2012, and that in their view, an impasse was not reached until August 1, 2012, when PSMIC first learned about Shree Deep's estimated repair costs for the claimed damage. The Texas Supreme Court has held that the reasonableness of any delay in asserting an appraisal demand must be measured from the point of impasse, when there is "a mutual understanding that neither will negotiate further." *In re Universal Underwriters*, 345 S.W.3d at 408, 410.

The record reflects that Shree Deep's counsel had discussions with Relator counsel near the end of June, after suit had been filed, about attending mediation while Shree Deep's "actual damages were only $30,000" and "instead of discovery." Based on this evidence, it appears that the parties were still exploring resolution of this claim as late as June 2012— meaning that three months before Relators filed their motion to compel appraisal, there was still not a mutual understanding that neither of these parties would negotiate further—and the measurement of time for purposes of establishing an unreasonable delay had not yet begun. *See id.* at 410; *see also In re GuideOne Mut. Ins. Co.,* No. 09-12-00581-CV, 2013 Tex. App. LEXIS 599, at *3 (Tex. App.-Beaumont Jan. 24, 2013) (orig. proceeding) (mem. op.) (distinguishing between existence of dispute and development of impasse and noting that parties were still negotiating by engaging in mediation years after filing suit). Even if the point of impasse is measured from the filing of Shree Deep's suit, as done in some cases, *see e.g., In re Universal Underwriters*, 345 S.W.3d at 410, the policy at issue here placed no time limit on making the demand for appraisal and stated that the insured retained the right to sue after appraisal. In a similar context, the court in *GuideOne* conditionally granted mandamus and rejected an argument that the insurer had unreasonably delayed invoking the appraisal clause by waiting to do so until four years after filing its answer and just two months before trial. *Id.* at *2-3. We are not persuaded that Shree Deep has met its burden of showing that Relators waived their contractual right to appraisal by unreasonably delaying to invoke it.

Nor has Shree Deep made the "difficult" showing that it has been prejudiced by a delay in asserting the contractual right to appraisal. *See In re Universal Underwriters*, 345 S.W.3d at 412. Shree Deep argues that Relators' filing of the motion to compel caused the loss of the first trial setting on October 22, 2012, and will impose increased litigation time and expense, but the trial court heard nothing in support of that argument. Without some evidence of the extra expense that Shree Deep would not have incurred but for the delay in demanding appraisal, there is no showing of prejudice. *See In re GuideOne,* 2013 Tex. App. LEXIS 599, at *6 (concluding that there was no showing of prejudice where record failed to establish that insured's litigation expenses would not have been incurred if insurer moved for appraisal earlier). Further, as the Texas Supreme Court has noted, a party sensing that an impasse has been reached could avoid prejudice by demanding an appraisal itself. *In re Universal Underwriters*, 345 S.W.3d at 412 ("[I]t is difficult to see how prejudice could ever be shown when the policy, like the one here, gives both sides the same opportunity to demand appraisal."). Because a showing of prejudice is essential to establishing waiver, this record does not support Shree Deep's argument that Relators waived their contractual right to appraisal.

## 2. Waiver by denial of claim

In a footnote, Shree Deep also contends that PSMIC's September 23 letter denied Shree Deep's claim for roof damage from the covered peril of a windstorm, and such denial was an independent ground for the trial court to deny the motion to compel appraisal. *See, e.g., In re Acadia Ins. Co., 279 S.W.3d 777, 780 (Tex. App.-Amarillo 2007, orig. proceeding)* (holding that once an insurer denies a claim, it waives any right to appraisal). However, the record reflects that Shree Deep's claim was not denied altogether, PSMIC stated that it was unable to issue payment because the cost to repair the roof damage was less than Shree Deep's $5,000 deductible. In the same letter, PSMIC invited further information to evaluate the claim in the event of Shree Deep's disagreement with PSMIC's estimate of the loss. In a similar context, the court in *Sanchez* held that there was no unconditional denial of liability by an insurer, and no waiver of its right to invoke appraisal, based on the insurer's acceptance of coverage for repairs to a back door damaged by hurricane winds and nonpayment because the damage amount was below the insured's deductible. *Sanchez, 2010 U.S. Dist. LEXIS 6295, at \*12*. We disagree that Relators waived appraisal based on the nonpayment for an amount of roof damage that was initially determined by both parties to be less than Shree Deep's deductible.

## Unenforceability under contract law

Shree Deep also contends that the appraisal clause is unenforceable under general contract law principles because (1) the appraisal clause is illusory, lacks mutuality, requires it to relinquish a jury trial on valuation, and is unconscionable because the contract states that PSMIC retains the right to deny the claim even after appraisal, and (2) any appraisal would be a waste of time because PSMIC denied Shree Deep's roof damage claim for lack of coverage. We disagree.

The theory behind unconscionability in contract law is that courts should not enforce a transaction so one-sided, with so gross a disparity in the values exchanged, that no rational contracting party would have entered the contract. *In re Olshan Found. Repair Co., 328 S.W.3d 883, 892 (Tex. 2010)*. Shree Deep cites no authority supporting its contention that an appraisal provision like the one in this policy is unconscionable, and the Texas Supreme Court recognizes the general validity of such appraisal provisions absent illegality or waiver. *See In re Universal Underwriters, 345 S.W.3d at 407*. Further, the plain language of this appraisal provision states that the parties are bound by the resulting valuation: a decision on the "appraisal of the loss" "will be binding as to the amount of loss," but Shree Deep retains its right to sue under the policy and PSMIC may still deny a claim on other grounds. Finally, as discussed above, PSMIC has not "denied" having any liability for Shree Deep's roof damage claim, and appraisal is not a "waste of time" insofar as it would use the contractually agreed mechanism for establishing the amount of a covered loss—initially acknowledged by both parties to this policy as falling below the $5,000 deductible.

After considering this record, the parties' arguments and controlling case law, we cannot conclude that "the amount of loss would never be needed," *see Johnson, 290 S.W.3d at 895*, rather, appraisal may establish Relators' defense that the amount of the roof damage attributable to the February 1 windstorm did not exceed Shree Deep's policy deductible. Relators—and Shree Deep—had an enforceable right to seek appraisal under the terms of this policy, and compliance with the appraisal provision was not excused, improper, or waived. As such, we conclude that the order denying Relators' motion to compel appraisal was an abuse of the district court's discretion for which Relators lack an adequate remedy by appeal.

## Abatement

The Texas Supreme Court has ruled that a trial court's failure to grant a motion to abate is not subject to mandamus. *In re Universal Underwriters, 345 S.W.3d at 413 n.5* (citing *In re Allstate, 85 S.W.3d at 196*) (concluding that denial of motion to abate is not subject to mandamus because trial court retains some discretion as to appraisal's timing); *In re GuideOne,* 2013 Tex. App. LEXIS 599, at \*6 (expressing no opinion on insurer's motion for abatement); *In re Cypress Tex. Lloyds,* No. 01-11-00714-CV, 2011 Tex. App. LEXIS 9884, at \*10-11 (Tex. App.-Houston [1st Dist.] 2011) (orig. proceeding). Given this controlling precedent, we deny Relators' petition for mandamus as to the motion to abate litigation.

## CONCLUSION

Having concluded that the trial court's denial of Relators' motion to compel appraisal was an abuse of its discretion and that Relators lack an adequate remedy by appeal, we conditionally grant the petition for writ of mandamus as to the appraisal. *See* Tex. R. App. P. 52.8(c). The writ will issue only if the trial court fails to vacate or modify the appraisal portion of the

underlying order in accordance with this opinion. Relators' petition for mandamus as to the motion to abate litigation is denied, and Relators' motion for temporary relief is dismissed.

[1] Relators allege that Shree Deep obtained the trial setting without conferring with opposing counsel.

[2] Initially, the trial court granted the motion to compel appraisal and to abate litigation after a hearing at which Shree Deep did not appear. The trial court granted Shree Deep's motion to set aside that order after the parties disputed whether additional notice of the hearing should have been sent to Shree Deep's counsel by e-mail, which he had requested after a fire in his office building.

[3] Shree Deep's adjuster acknowledged that Shree Deep had made some roof repairs due to damage from a January 15, 2010 windstorm.

Save trees - read court opinions online on Google Scholar.



**EXHIBIT**
**K**

**IN RE RANCHERS & FARMERS MUTUAL INSURANCE COMPANY.**

<u>No. 09-11-00054-CV.</u>

**Court of Appeals of Texas, Ninth District, Beaumont.**

Submitted on March 24, 2011.
Opinion Delivered April 28, 2011.

Before McKeithen, C.J., Kreger and Horton, JJ.

# MEMORANDUM OPINION

PER CURIAM.

Relator, Ranchers & Farmers Mutual Insurance Company, insured property owned by David Colman and Marie Colman. Under the homeowners' policy, either party may demand an appraisal of the loss. In litigation between Relator and the Colmans, the trial court denied Relator's motion to compel an appraisal. Relator seeks to enforce its contractual right to an appraisal through this mandamus proceeding. We conditionally grant relief.

The Colmans contend this proceeding is moot because they have filed a motion to vacate the order with the trial court. Citing *General Motors Corporation v. Gayle,* the Colmans contend this Court should defer to the trial court because there is a pending motion to vacate the order that is subject to this mandamus proceeding. 940 S.W.2d 598, 599 (Tex. 1997). When the Colmans notified this Court that they had filed a motion to vacate in the trial court, we provided additional time for the parties to resolve the dispute in the trial court. We have not been notified that the trial court vacated its order and enforced the appraisal provision of the insurance policy. Because the underlying dispute has not been fully resolved in the trial court, this mandamus proceeding is not moot.

In the trial court, the Colmans opposed Relator's motion on the ground that Relator waived its right to invoke the appraisal process by failing to invoke its right in a timely fashion. In their response to this Court, the Colmans concede that *In re Southern Insurance Company* provides the guiding principle here. *See* No. 09-11-00022-CV, 2011 WL 846205, *2 (Tex. App.-Beaumont Mar. 10, 2011, orig. proceeding) (mem. op.). The trial court did not have the benefit of our opinion in *Southern Insurance,* but the trial court denied Relators' motion after two cases by the Supreme Court held that a contractual appraisal provision is enforceable. *See* <u>State Farm Lloyds v. Johnson, 290 S.W.3d 886, 895 (Tex. 2009)</u>; *In re Allstate Cnty. Mut. Ins. Co., 85 S.W.3d 193, 194-95 (Tex. 2002)*. As was the case in *Southern Insurance,* here the party resisting the appraisal process failed to establish a waiver of the right to an appraisal by the party seeking to enforce the insurance policy's appraisal clause. 2011 WL 846205 at **1-2. In the absence of a valid waiver, the appraisal clause is enforceable. *See* <u>Johnson, 290 S.W.3d at 888</u>. A trial court abuses its discretion if it denies enforcement of a valid appraisal clause. *See* <u>Allstate Cnty. Mut. Ins. Co., 85 S.W.3d at 196</u>. We hold that the trial court abused its discretion by denying the motion to compel an appraisal.

Relator argues that this Court should also order the trial court to abate the suit pending the outcome of the appraisal process. "While the trial court's denial of the motion to invoke appraisal was error, the failure to grant the motion to abate is not subject to mandamus." *Id.* "While the trial court has no discretion to deny the appraisal, the court does have some discretion as to the timing of the appraisal." *Id.*

We conditionally grant the petition for a writ of mandamus. We are confident that the trial court will vacate its order denying the motion to compel an appraisal and will enforce the appraisal provision of the policy. The writ of mandamus will issue only if the trial court fails to act in accordance with this opinion. Our order granting temporary relief is lifted and Relator's motion to clarify the stay order is denied as moot.

Save trees - read court opinions online on Google Scholar.