UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MATTHEW AND MONICA DAWKINS,** § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | Civil Action No. 4:24-cv-639 |
| § | | |
| **ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY,** § | | |
| Defendant, § | | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S
RESPONSE TO COURT'S SHOW CAUSE ORDER**

TO THE HONORABLE JUDGE HANEN:

Plaintiffs Matthew and Monica Dawkins respectfully submit this Supplemental Brief in Support of Plaintiff's Response to Court's Show Order and would respectfully show as follows:

**Introduction**

Plaintiffs have satisfied the Court's Show Cause Order (Dkt.23) with direct, dispositive evidence confirming the legitimacy of the disputed affidavit. This evidence includes Richard Brandon Gadrow's sworn declaration plainly stating he executed the document, documentary proof of his continued business operations after his father's passing, and a notary's sworn confirmation of proper verification procedures. These submissions directly address the Court's central inquiry about the authenticity of the April 25, 2024 Affidavit.

Defendant's Reply (Dkt.25) conspicuously fails to engage with this decisive evidence. Instead, Allstate attempts to divert the Court's attention through several calculated strategies.

First, Allstate boldly claimed in its earlier filing that "Brandon Gadrow testified that he never goes by Richard Gadrow" (Dkt.15, p.4), yet when confronted with Brandon's sworn declaration explicitly contradicting this claim, Allstate produces no direct testimony supporting its assertion. Despite submitting numerous deposition excerpts, not one contains Brandon stating he "only" uses his middle name.

Second, Allstate deliberately ignores the notary's sworn declaration that directly contradicts their central allegation of document fraud. This declaration, which confirms proper identification and signature verification procedures, receives zero substantive response in Allstate's Reply.

Third, Defendant attempts to distract the Court by claiming the October 2023 estimate "relates to an entirely different claim," causing unnecessary confusion. As Footnote 1 on page 2 of Plaintiffs' Response to Show Cause Order makes clear, Plaintiffs provided this estimate specifically as an example to illustrate Defendant's ongoing acceptance of Brandon's role as an estimator on various claims even after his father's passing. Rather than addressing this documented pattern of acceptance, Allstate dismisses this compelling evidence as irrelevant while simultaneously building its entire fraud theory on the premise that such signatures must represent fraudulent attribution to a deceased person.

The Court should recognize that Plaintiff has directly answered the Court's inquiry with straightforward evidence, while Defendant has responded with evasion, mischaracterization, and procedural maneuvering designed to manufacture controversy where none exists. The facts remain uncomplicated: Brandon Gadrow legitimately executed the affidavit in question,

continues to operate the family business using the same software login, and Allstate has regularly processed his "Rick.QCC" estimates without objection since his father's passing.

## Brief in Support of Plaintiff's Response

### A. The Declaration of Richard Brandon Gadrow is relevant.

Defendant's contention that Richard Brandon Gadrow's sworn Declaration is "irrelevant" or "improper" represents a brazen display of evidentiary double standards that this Court should flatly reject. This argument collapses under even minimal scrutiny.

The Declaration's relevance does not hinge on whether it references the exact same claim number, but rather on its direct rebuttal of Defendant's central fraud allegations. Defendant cannot reasonably argue otherwise while simultaneously leaning heavily on exhibits from entirely unrelated proceedings like *Barbara v. AmGuard* and *Ebony Mitchell v. Praetorian,* to advance its own narrative.[1] Such transparent inconsistency exposes Defendant's selective approach to relevance: relying extensively on "external examples" when attacking Plaintiffs while simultaneously seeking to deprive Plaintiffs of even a single comparable illustration of post-June 2023 "Rick.QCC" usage.

The Declaration of Richard B. Gadrow decisively addresses the precise issue at hand, providing the straightforward explanation that father and son shared the Xactimate login for years, with Brandon legitimately continuing its use after his father's passing.[2] Nothing in Defendant's voluminous exhibits contradicts this core fact. Defendant instead relies on innuendo

---

[1] Defendant's Reply to Plaintiffs' Response to Defendant's Motion to Dismiss and Sanctions, Dkt. 15, Pg. 3; Defendant's Reply in Support of Show Cause Order, Dkt. 25, Para.17, Pg. 6

[2] Plaintiff's Response to the Court's Show Cause Order, Dkt. 24, Exhibit 1, Para. 1–9

from unrelated matters to insinuate impropriety, while deliberately ignoring Plaintiffs' October 26, 2023 estimate that directly demonstrates the continued legitimate use of "Rick.QCC."[3]

Defendant's materials attempt to portray any post-death "Rick.QCC" estimate as intrinsically suspicious, a premise definitively refuted by the Declaration and accompanying example.[4] These documents establish that Brandon has been the user behind "Rick.QCC" since his father's death, a fact further validated by Allstate itself processing multiple claims with Brandon's "Rick.QCC" signature. This evidence is unmistakably relevant as it substantially increases the probability that the May 31, 2023 Dawkins estimate (DICKLAW-23170HOU) represents legitimate business continuity rather than fabrication.[5]

Defendant's assertion that the Declaration should be stricken because it supposedly "came from a dead man" deliberately mischaracterizes the record.[6] The Declaration explicitly states that Brandon, not his deceased father, authored both the affidavit and subsequent estimates. Defendant's exhibits fail to challenge this fundamental fact, instead merely confirming that "Rick.QCC" has consistently appeared on QCC estimates, precisely because Brandon continued using it after his father's passing.

The October 26, 2023 estimate further validates this practice. Defendant's objection that it constitutes "an entirely different claim" fails to diminish its significance as compelling evidence of standard, ongoing business practice. If Defendant is permitted to make broad cross-case comparisons to advance its position, then Plaintiffs' demonstration of "Rick.QCC"

---

[3] Plaintiff's Response to the Court's Show Cause Order, Dkt. 24, Exhibit-3

[4] Defendant's Reply to Plaintiffs' Response to Defendant's Motion to Dismiss and Sanctions, Dkt. 15, Pg. 2–3; Defendant's Reply in Support of Show Cause Order, Dkt. 25, Pg. 2–4

[5] Federal Rule of Evidence , Rule 401

[6] Defendant's Reply to Plaintiffs' Response to Defendant's Motion to Dismiss and Sanctions, Dkt. 15, Pg. 3–4

continuity is necessarily relevant to establish how and why the May 31, 2023 estimate was properly attributed to Brandon.

The Declaration and accompanying example strike at the heart of Defendant's fraud allegations regarding QCC estimates' authorship and legitimacy. No credible basis exists to strike or disregard this crucial evidence. This Court should deny Defendant's request, accept the Declaration as probative evidence of QCC's routine "Rick.QCC" usage, and refuse to tolerate Defendant's self-serving evidentiary double standard, which embraces extrapolation from unrelated cases while rejecting Plaintiffs' directly responsive illustrative example.

**B. Defendant's Alleged "Contradictions" are manufactured from Ordinary Circumstances**

Plaintiffs dispute Defendant's contention that prior deposition excerpts "negate" the statements in Mr. Richard Brandon Gadrow's (hereinafter "Brandon's") Declaration. These cited passages merely confirm the father–son relationship and the ordinary manner in which both men used and eventually transitioned "Rick.QCC." They do not establish contradictory testimony or reveal any misrepresentation.

First, Defendant seizes upon the fact that Brandon sometimes goes by "Brandon" and other times by "Richard." But, as Brandon has testified, the two men share a legal name, "Richard" and both disliked being called by it, so Brandon adopted his middle name to distinguish himself from his father.[7] That is not fraud or inconsistency; it is a practical step commonly taken by a small family business.

Second, Defendant notes that "Rick.QCC" was originally tied to the late Mr. Gadrow, and cites testimony where Brandon acknowledged his father would complete many estimates while

---

[7] Defendant's Reply in Support of Show Cause Order, Dkt. 25, Ex. A, 6:8–19;53:5–10

he "just took notes."[8] This only confirms Plaintiffs' explanation: the elder Mr. Gadrow spearheaded the business for years, with Brandon gradually taking on more responsibility, especially after his father's passing. Nothing in this dynamic contradicts Brandon's Declaration that he has been involved since 2014, or that both father and son consistently used "Rick.QCC." A son being "hands off" at one point, as Brandon candidly stated he was, does not negate his later taking over the login or the estimates.[9]

Third, the depositions do not show that Brandon somehow concealed who was behind "Rick.QCC." To the contrary, Brandon explains that if an estimate bears "Rick.QCC," the only way to know which family member authored it is to ask, reflecting a shared Xactimate account.[10] Brandon's Declaration aligns perfectly with this standard practice: father and son sharing credentials and passing along the same login, rather than any attempt to mislead.

Finally, Defendant's suggestion that these references "negate" Plaintiffs' allegations of Allstate's misrepresentation or place the April 25, 2024 Affidavit in question is baseless. The depositions simply illustrate an evolving family-run business, where father and son used the same user ID and father eventually handed off responsibilities to Brandon. Far from "creating doubts" about Brandon's veracity, these snippets reinforce a straightforward reality: Brandon initially deferred to his father, later inherited the account, and now lawfully continues to use "Rick.QCC."

In short, no portion of the testimony or alumni page listing undermines Brandon's Declaration; it only confirms the unremarkable fact that father and son coexisted in the same

---

[8] Defendant's Reply in Support of Show Cause Order, Dkt. 25, Ex. B, 15:1–21

[9] Defendant's Reply in Support of Show Cause Order, Dkt. 25, Ex. A, 66:20–67:5

[10] Defendant's Reply in Support of Show Cause Order, Dkt. 25, Ex. C, 71:4–13

small enterprise, shared a name, and shared a login. Plaintiffs therefore respectfully request that the Court reject Defendant's attempt to manufacture "inconsistency" from these ordinary circumstances.

### C. Defendant's Assertions about the April 25, 2024 Affidavit and May 31, 2023 Estimates are neither Supported by Creditable Evidence Nor Offered in Good Faith

Plaintiffs categorically reject Defendant's desperate characterization of the April 25, 2024 Affidavit and May 31, 2023 estimate as "inconsistent" or "misleading." These allegations are not merely wrong, they represent a transparent attempt to manufacture impropriety from routine business transitions and ordinary documentation practices. Despite Defendant's strenuous efforts to suggest otherwise, two fundamental realities remain unassailable: (1) the estimate at issue was legitimately prepared by the Gadrows' firm using standard "Rick.QCC" methodology, and (2) incidental references to "licensed public adjuster" or variations in name usage reflect routine documentation imperfections, not deception.

Defendant's fixation on certain line items in the May 31, 2023 estimate ("Residential Supervision/Project Management" and "General Laborer") as supposedly incriminating betrays a fundamental misunderstanding, or deliberate mischaracterization, of business transitions. Far from suggesting impropriety, the presence of these items perfectly demonstrates the natural evolution of business practices during succession. A May 31, 2023 estimate containing elements Brandon was "phasing out" during "mid-2023" reflects precisely what one would expect during transition: the gradual adaptation of inherited templates and practices. The continued inclusion of COVID-19 health-and-safety items during this period is equally unsurprising, templates and default settings naturally carry forward until deliberately altered. Defendant's attempt to

transform these unremarkable transitional artifacts into evidence of deception is both logically flawed and factually baseless.

Defendant's reliance on business records affidavits from unrelated cases (Mitchell, Barbara, et al.) as supposedly fatal to the April 25, 2024 Affidavit's legitimacy similarly collapses under scrutiny. These documents merely demonstrate the predictable documentation variations that occur when a father and son share the same legal name while performing overlapping roles in a family business. Occasional confusion between "Richard" and "Brandon" in formal filings reflects an ordinary administrative challenge faced by countless family businesses, not evidence of deception. Nothing in these prior filings undermines the April 25, 2024 Affidavit's authenticity or supports Defendant's manufactured "concerns."

The reference to a "licensed public adjuster" in filings is, at absolute worst, an imprecise descriptor that bears no relevance to estimate authorship. Both Gadrows have consistently acknowledged they are not licensed adjusters, and the record contains no evidence they ever misrepresented their credentials in direct communications. This minor terminological imprecision in a legal filing, likely reflecting counsel's shorthand rather than any attempt at misrepresentation, cannot reasonably be elevated to evidence of fraud. The Gadrows' long-established roles as estimators render this reference a simple error, not the "smoking gun" Defendant desperately seeks to manufacture.

Defendant's assorted concerns about line items, name variations in affidavits, or imprecise role descriptions fall dramatically short of establishing any material inconsistency or deception. The father-son business transition, combined with their shared legal name, naturally produced documentation that might appear inconsistent when deliberately stripped of context.

Under proper scrutiny, however, these variations reveal themselves as normal, readily explainable consequences of family business succession—sometimes reflecting the father's legacy templates, sometimes counsel's terminological imprecision—that in no way undermine the fundamental legitimacy of the estimates or affidavits.

Defendant's attempt to portray these routine business practices as "substantial evidence" of impropriety is not merely unpersuasive, it borders on frivolous. The Court should recognize these manufactured inconsistencies for what they are and credit Plaintiffs' straightforward, consistent explanation of QCC's operational transition from father to son.

## D. The Purported Inaccuracies in the April 25, 2024 Affidavit Do Not Support Striking the Estimate

The Court must reject Defendant's attempt to strike the April 25, 2024 Affidavit based on an inconsequential clerical error. Defendant's Reply fundamentally mischaracterizes a minor page count discrepancy as grounds for the extreme remedy of striking critical evidence.[11] This position lacks both legal and logical merit.

First, the affidavit contains all material estimate pages necessary for adjudicating this dispute.[12] The reference to "103 pages" rather than "29 pages" represents nothing more than a templated error in the business records certification that has no substantive impact on the validity of Brandon Gadrow's sworn testimony or the completeness of the attached documentation.

Second, Defendant's selective outrage over this discrepancy reeks of hypocrisy, as evidenced by their own routine reliance on business record affidavits containing similar technical imperfections. Defendant's exhibits demonstrate their willingness to utilize and defend affidavits

---

[11] Defendant's Reply in Support of Show Cause Order, Dkt. 25, Pg. 9

[12] Plaintiff's Response to Defendant's Motion to Dismiss and for Sanctions, Dkt. 14, Ex. 1

with comparable discrepancies when it serves their interests.[13] This inconsistent approach exposes their motion as a tactical maneuver rather than a principled objection.

Third, no controlling authority supports the proposition that a numerical mismatch in stated page count, absent any showing of actual prejudice, warrants striking an entire affidavit. The Federal Rules of Evidence and Civil Procedure strongly favor substance over form, particularly where, as here, the alleged defect has no impact on the reliability or admissibility of the underlying evidence.[14] The Court should therefore deny Defendant's motion and consider the April 25, 2024 Affidavit in its entirety, as the alleged discrepancy constitutes, at most, a harmless error that does not undermine the substantive integrity of Mr. Gadrow's sworn statements regarding the estimate.

Plaintiffs respectfully disagree that an inadvertent reference to "103 pages" instead of "29 pages" justifies striking the entire April 25, 2024 Affidavit. In its Reply and related exhibits, Defendant presents this omission as a fatal flaw, yet it is more properly viewed as a harmless clerical discrepancy in the business records affidavit.[15] As illustrated by affidavit, the substance of the records, namely the estimate pages, remains both complete and accurately attached.[16] There is no suggestion that any pages material to the dispute were omitted or that Defendant has been prejudiced by receiving fewer pages than the affidavit's boilerplate reference indicated.

Further, Defendant has previously relied on business record affidavits in other suits containing similarly routine numbering or labeling issues, without insisting on striking them in

---

[13] Defendant's Reply in Support of Show Cause Order, Dkt. 25, Ex. F-I, M

[14] Federal Rules of Civil Procedure, Rule 61

[15] Defendant's Reply in Support of Show Cause Order, Dkt. 25, Pg. 9

[16] Plaintiff's Response to Defendant's Motion to Dismiss and for Sanctions, Dkt. 14, Ex. 1

their entirety.[17] If a minor mismatch in page counts were truly an irredeemable flaw, then many affidavits from both sides' prior cases would have been subject to the same fate. Rather than a substantive misstatement of fact, the mismatch here simply reflects a templated or typographical error that does not undermine the legitimacy of Brandon Gadrow's sworn statements regarding the estimate.

Moreover, the Federal Rules of Evidence and Civil Procedure favor addressing such minor clerical issues without imposing the draconian remedy of striking an affidavit. No controlling authority suggests that a numerical discrepancy in the stated page count, absent actual prejudice, disqualifies the entire affidavit from consideration. Thus, Plaintiffs respectfully request that the Court reject Defendant's invitation to strike the April 25, 2024 Affidavit on this basis, especially when the remainder of the affidavit's content stands unchallenged on its merits.

E.  **Defendant's Acceptance of Richard B. Gadrow's Post-Death Estimates is Relevant to the Legitimacy of "Rick.QCC" Usage**

Plaintiffs respectfully disagree that Allstate's acceptance of Brandon Gadrow's post–June 2023 estimates is "irrelevant" merely because those estimates were not accompanied by the specific Affidavit at issue here. In its Reply, Defendant suggests it was impossible for Allstate to "knowingly accept" Brandon's estimates since the "Rick.QCC" signature alone would not reveal who actually prepared them.[18] However, the testimony does not negate the fact that Allstate indeed processed and paid on similarly labeled estimates, recognizing in practice that Brandon had continued his father's work.

---

[17] Defendant's Reply in Support of Show Cause Order, Dkt. 25, Ex. F–I, M

[18] Defendant's Reply in Support of Show Cause Order, Dkt. 25, Pgs. 8-9; Ex. C, 71:4–13

Further, Defendant's stance that "acceptance" of estimates by Allstate is wholly "irrelevant" contradicts the very arguments it raises, namely, that any estimate bearing "Rick.QCC" postdating the father's death must be suspect. If Allstate was truly in the dark about Brandon's authorship, it would not have repeatedly handled claims under "Rick.QCC" after the father's passing. Even if, as Brandon testified, "the only way to determine who prepared it" was by asking him, nothing prevented Allstate from doing so, just as they did in other matters. The fact that Allstate chose to process or accept subsequent "Rick.QCC" estimates indicates it was well aware Brandon was still operating Quantum Claims Consulting, postdating his father's death.

Allstate's alleged unawareness of Brandon's continuing role is refuted by Allstate's own conduct in other claims, where it effectively recognized Brandon's authorship despite the shared login signature. That is directly relevant to the notion that these estimates are "throwdown" or "fraudulent," because it shows Allstate's general familiarity with and acceptance of the same "Rick.QCC" user ID. Hence, Plaintiffs respectfully submit that the acceptance of Brandon's post–June 2023 estimates underscores the consistency of QCC's practices and undermines Defendant's contention that the use of "Rick.QCC" was misleading or unknowable.

**F. Plaintiffs' Reference to Motion to Rule 11 Sanctions is Justified and Properly Characterizes Defendant's Conduct**

Plaintiffs categorically reject Defendant's self-serving assertion that reference to potential Rule 11 sanctions lacks merit. This objection represents yet another attempt to evade accountability for serious allegations made without sufficient evidentiary basis.

Defendant's repeated characterization of the April 25, 2024 Affidavit as a "throwdown" from a deceased individual, an explosive accusation of fraud made without substantive

supporting evidence, precisely exemplifies the type of conduct Rule 11 was designed to deter. Such grave accusations, when advanced without meaningful proof, inherently invite scrutiny under Rule 11's requirements for reasonable inquiry and evidentiary support. Plaintiffs' reference to this possibility does not mischaracterize or invalidate Defendant's claims; it appropriately flags their potential procedural impropriety.

Defendant's protestations that it never "formally" sought Rule 11 sanctions but instead pursued relief under Tex. Ins. Code §541.153 represent a distinction without difference.[19] This technical distinction neither immunizes Defendant from scrutiny of its own pleading practices nor precludes Plaintiffs from highlighting how Defendant's conduct might warrant reciprocal relief.

The context of this dispute further validates Plaintiffs' reference to Rule 11. The Court's sua sponte show cause order (Doc. 23) originated not from standard motion practice but from apparent concerns about potentially contradictory filings, concerns largely manufactured by Defendant's selective presentation of evidence.[20] When confronted with accusations as serious as submitting fraudulent post-death affidavits, Plaintiffs' reference to Rule 11 as a potential check on reckless allegations constitutes an entirely appropriate and measured response.

Plaintiffs have not filed the formal notice required to actively pursue Rule 11 sanctions, nor have they requested them as a matter of record. Rather, they have properly noted that Defendant's approach, making grave accusations of fraud with minimal supporting evidence, potentially transgresses Rule 11's standards for reasonable factual investigation. This observation

---

[19] Defendant's Reply in Support of Show Cause Order, Dkt. 25, Pg. 10,

[20] Order to Show Cause, Dkt. 23

does not misconstrue Defendant's request but legitimately questions whether its accusations satisfy basic requirements for factual and legal adequacy under federal pleading standards.[21]

The Court should recognize Plaintiffs' reference to Rule 11 for what it is: a well-founded reminder that serious accusations demand serious evidentiary support, a standard Defendant's submissions have conspicuously failed to meet. Defendant's dismissal of this reference as "wholly without merit" only further demonstrates its reluctance to have its own pleading practices subjected to appropriate scrutiny.

## Conclusion and Prayer

Plaintiff respectfully submits that this Court should recognize Defendant's tactics for what they truly represent: a deliberate strategy to evade legitimate contractual obligations by manufacturing a controversy where none exists. The evidence before this Court conclusively establishes that Richard Brandon Gadrow properly executed the affidavit at issue, legitimately continues to use the "Rick.QCC" signature in his professional capacity, and Allstate routinely accepted this practice until it became expedient to claim otherwise in this litigation.

The Court's Show Cause Order has been fully satisfied by Plaintiffs' comprehensive response and supporting declarations. In contrast, Defendant has offered only selective quotations, irrelevant comparisons, and procedural objections while conspicuously failing to address the sworn testimony that directly contradicts their central allegations. Their attempt to strike critical evidence based on an inconsequential page count discrepancy—while themselves relying on affidavits with similar technical imperfections—further demonstrates the tactical rather than substantive nature of their objections.

---

[21] Defendant's Motion to Dismiss and for Sanctions, Dkt. 7

If the Court were to accept Defendant's position, it would not only prejudice Plaintiffs by excluding valid evidence based on trivial clerical matters, but would also reward Defendant's deliberate efforts to obscure the straightforward business succession that occurred when a son continued his father's established professional practice. Such an outcome would elevate form over substance in a manner contrary to both the spirit and letter of the Federal Rules.

Dated: March 26, 2025

                                      Respectfully submitted,

                                      */s/ Eric Dick*_____

Eric B. Dick
TBN: 24064316
FIN: 1082959
**DICK LAW FIRM, PLLC**
3701 Brookwoods Drive
Houston, Texas 77092
(844) 447-3234 - Office & Facsimile
eric@dicklawfirm.com
www.dicklawfirm.com
**ATTORNEY FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/Eric Dick*
Eric Dick