UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **MATTHEW AND MONICA DAWKINS,** §<br>     *Plaintiff,* §<br>  §<br>**v.** §<br>  §<br>**ALLSTATE VEHICLE & PROPERTY** §<br>**INSURANCE COMPANY** §<br>     *Defendants.* § | **Civil Action No. 4:24-cv-639**<br><br>**JURY TRIAL REQUESTED** |

**DEFENDANT ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY'S MOTION TO STRIKE PLAINTIFFS' EXPERT RICHARD BRANDON GADROW**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE HANEN:

COMES NOW Defendant Allstate Vehicle and Property Insurance Company ("Allstate"), and requests that this Court strike the testimony and Plaintiffs' expert designation of Richard Brandon Gadrow ("Gadrow") for failure to comply with Federal Rule of Civil Procedure 26 because Plaintiffs have presented only an unsigned estimate without any report or other documentation required by both Rule 26 and the Court's Scheduling Order. In addition, the "opinions" expressed by Gadrow therein are unreliable, as there is no reliable link between the "facts" observed by Gadrow and his conclusions, some being based on erroneous information. There is simply too great an analytical gap between Gadrow's data and opinions to be considered reliable and as such, his testimony should be barred pursuant to Federal Rule of Evidence 702.

## I. BACKGROUND

**A.   Nature and Stage of Proceeding**

This litigation involves a first-party insurance dispute arising out of Plaintiffs' claim for alleged water damage to their property located at 4430 Kulkarni Street, Houston, Texas 77045.

1

Plaintiffs filed their Original Petition in the 333rd District Court of Harris County, Texas on January 18, 2024 and served Defendant Allstate on January 24, 2024. Allstate then timely removed the case to this Court on February 23, 2024 [Doc. 1]. Discovery closed on July 31, 2025, dispositive motions must be filed by August 29, 2025, and non-dispositive motions must be filed by September 26, 2025 [Doc. 20]. The case is set for trial on April 13, 2026 [Doc. 20].

**B.     The Insurance Claim**

On October 23, 2022, Plaintiffs reported a claim for alleged water damage to ceramic tile, floors, and walls in the master bathroom, carpet flooring in master bedroom, laminate wood flooring, ceilings and walls in the downstairs dining room, and the kitchen ceiling. Plaintiff Monica Dawkins told Allstate she located the source of the leak as the shower faucet handle and had a plumber repair the leak. During its initial investigation of the claim, Allstate discovered multiple prior water damage claims filed by Plaintiffs with other insurance carriers for the same and/or similar damages to those claimed in the instant case and requested that Plaintiffs provide proof that the prior repairs were completed, as well as other information Defendant required to complete the claims process. The information received from Plaintiffs, if any, was insufficient to enable Defendant to proceed with the claim. For example, when asked to provide proof that prior repairs to the claimed areas were completed, Plaintiffs submitted a handwritten invoice from a "contractor" whose phone number appears to be registered to Plaintiff Monica Dawkins. On another occasion, another "contractor" called Allstate from a number appearing to be registered to Plaintiff Monica Dawkins. The caller appeared to attempt to disguise Ms. Dawkins' voice, claiming to have completed prior repairs. On multiple occasions, Allstate notified Plaintiffs that it could not complete their investigation without the information requested and further, reminded them of their duties after loss under the Policy. [Doc. 7-B – D].

After months of failing to submit the requested information, Allstate conducted an engineering inspection of the property with HAAG Engineering ("HAAG") on February 20, 2023. HAAG found no evidence that any prior repairs had been completed in the claimed areas, including the master bathroom faucet. HAAG also determined that the master bathroom surfaces and walls revealed no evidence of water damage resulting from the claimed plumbing leak. HAAG did note a minor deformity in the dining room ceiling, but concluded that the volume of water indicated normal use/splashing in the bathtub, not a plumbing leak as claimed. In sum, HAAG determined that there was no evidence of a plumbing leak in the master bathroom to support Plaintiffs' claim that the other damages claimed by Plaintiffs resulted from such a leak. As such, Allstate issued a Denial Letter to Plaintiffs on March 20, 2023, stating that Allstate could not cover Plaintiffs' claimed loss because "[t]here was no evidence/support of a loss caused by a peril that we cover, and more specifically, no damages were the result of a leak from the bathtub faucet." [Doc. 7-E].

Months later, on September 10, 2023, Allstate received a Demand and Invocation of Appraisal Letter from The Eric Dick Law Firm, alleging that Defendant owed $73,771.06 for damage to or loss of covered property. Defendant rejected Plaintiffs' invocation of appraisal in writing on October 20, 2023 reasoning that "there is no coverage for this loss under the policy." [Doc. 7-G].

**C.     Litigation**

Defendant received no response from Plaintiffs or the Dick Law Firm until January 18, 2024 when it filed suit in the 333rd Judicial District Court of Harris County, Texas. Allstate timely removed the case to this Court on February 23, 2024. [Doc 1.]. Per the Court's Scheduling Order, Plaintiffs were required to designate experts and provide the reports required by Federal Rule of Civil Procedure 26(a)(2) on or before March 14, 2025. [Doc. 20]. On March 14, 2025, Plaintiffs

3

filed their Designation of Expert Witnesses, but Plaintiffs have never produced expert reports that are signed by the experts that contain their opinions, the facts relied upon and the basis for them, or other materials required by Rule 26. [Doc. 26].

### III.   STANDARD OF REVIEW

**A.   Effect of Failure to Comply with Federal Rule of Civil Procedure 26**

The Federal Rules of Civil Procedure require parties to timely disclose testifying experts and provide written reports prepared and signed by the expert. Fed. R. Civ. P. 26(a)(2)(A-B). Parties must make these disclosures at the times and in the sequence that the court orders. Fed. R. Civ. P. 26(a)(2)(D). A court has broad discretion to strike experts and reports if a party does not comply with Rule 26. *Link v. Wabash R.R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *Geiserman v. McDonald*, 893 F.2d 787, 790-92 (5th Cir. 1990). Additionally, Rule 37(b)(2)(A)(ii) authorizes courts to prohibit a disobedient party from introducing matters into evidence. *Doe v. Catholic Soc. of Religious & Literary Educ.*, 2020 WL 3967661, at *10 (S.D. Tex. July 14, 2020). Under Rule 37(c)(1), courts must exclude evidence not disclosed by a court-ordered deadline unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1).

**B.   Relevance & Reliability of Expert Testimony**

The trial court is tasked with a "gatekeeping" role to ensure the relevance and reliability of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Federal Rule of Evidence 702 allows a qualified expert to give opinion testimony if the expert's knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue", and the expert's testimony is based on sufficient facts or data, is the product of reliable principles and methods, and reflects a reliable application of those principles and methods to the facts of the case.

The burden is on the party offering the expert testimony to establish that it is admissible, specifically, that an expert is qualified, the evidence is relevant to the litigation, and the evidence is reliable. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). All aspects of an expert's testimony must be reliable, including the methodology, the facts underlying the expert's opinion, and the link between the facts and conclusion. *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 335 (5th Cir. 2007). The Court must ensure "that the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case." *Kumho Tire*, 526 U.S. at 152. An expert opinion based upon "insufficient, erroneous information" fails the reliability standard. *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009). The Federal Rules of Evidence do not require a district court to admit opinion evidence that is connected to existing data only by an unproven statement or ipse dixit of the expert. "A Court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Kumho Tire*, 526 U.S. at 151 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). When an expert's opinion about causation is not grounded in fact, the opinion should be excluded as unreliable. *Matosky v. Manning*, 428 Fed. App'x. 293, 298 (5th Cir. 2011).

## IV. ARGUMENTS AND AUTHORITIES

Defendant respectfully urges this Court to strike Richard Brandon Gadrow's ("Gadrow's") expert opinions and testimony due to noncompliance with Federal Rule of Civil Procedure 26 and the Court's Scheduling Order. Plaintiffs have failed to provide the required expert reports, opinions, qualifications, and other necessary disclosures, warranting exclusion under Rule 37(c)(1).

A. **Gadrow should be stricken because Plaintiffs failed to produce the report and other information required by Rule 26.**

An expert report is a fundamental pre-trial requirement as it provides the opposing party

5

with notice. *See Godo Kaisha IP Bridge 1 v. Broadcom Limited*, No. 2:16-CV-134-JRG- RSP, 2017 WL 2869331, at *1 (E.D. Tex. Apr. 27, 2017) (Payne, J.) With this guiding principle, the Federal Rules explicitly require that an expert "disclosure ***must*** be accompanied by a written report—***prepared*** and ***signed*** by the witness—if the witness is one retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). Rule 26 further specifies, in relevant part, that the expert report:

> must contain a complete statement of all opinions to be expressed and the basis and reasons for them; the facts or data considered by the witness in forming them; any exhibits to be used to summarize or support them; [and] the witness's qualifications, including a list of all publications authored in the previous 10 years . . . .

Fed. R. Civ. P. 26(a)(2)(B). The Fifth Circuit says expert reports must be "detailed and complete" when submitted to "avoid the disclosure of sketchy and vague expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996); *accord Brumley v. Pfizer, Inc.*, 200 F.R.D. 596, 603 (S.D. Tex. 2001). An expert designation must provide "the main opinions of the expert, and the opinions must state a view or judgment regarding a matter that affects the outcome of the case. A mere statement of the topics or their opinions is insufficient." *Tolan v. Cotton*, No. H-09-1324, 2015 WL 5332171, at *5 (S.D. Tex. Sept. 14, 2015).

In this case, the Court specifically ordered that written expert reports be produced at the time of expert designation [Doc. 20]. Plaintiffs provided one document with its Designation – an unsigned estimate from Quantum Claims Consulting ("QCC Estimate") [Doc. 26-1]. The QCC Estimate is unsigned and provides no facts, data, or basis for its opinions. [Doc. 26-1]. There were no additional documents provided prior to the discovery or expert deadlines, including any CV or resume, bibliography, prior testimony list, and statement of compensation. Rule 26 specifically requires this information because they advance the efficient and orderly administration of justice by avoiding issues that may prolong discovery or create unnecessary issues for the court. Fed. R.

6

Civ. Proc. Rule 26, Adv. Comm. Notes 33-44. Therefore, the Rule 26 failures justify the exclusion.

**B.      There is no basis to avoid exclusion because the failure to comply with Rule 26 was not harmless or substantially justified.**

According to Federal Rule of Civil Procedure 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial unless the failure was substantially justified or harmless." The "sanction of exclusion is **automatic and mandatory** unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Torres v. City of San Antonio*, No. SA:14-CV-555-DAE, 2014 WL 7339122, at *1 (W.D. Tex. Dec. 23, 2014) (emphasis added); *accord JMC Construction LP v. Modular Space Corp.*, Civ. No. 3:07-CV-01925-B, 2008 WL 11425650, at *3 (N.D. Tex. Oct. 28, 2008) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

In determining whether a violation of Rule 26 is harmless or substantially justified, the district court's decision is to be guided by the consideration of four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose. *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883-84 (5th Cir. 2004). But if "the party required to make the disclosure would need the material to support its own contentions, the more effective enforcement of the disclosure requirement will be to exclude the evidence not disclosed." *Sierra Club*, 73 F.3d at 571.

    1.      <u>Importance of the Evidence</u>

The first factor weighs in favor of exclusion because "the importance of the testimony underscores how critical it was for [Plaintiffs] to have timely designated" *Hamburger*, 361 F.3d at 883 ("the importance of proposed testimony cannot 'singularly override the enforcement of local

7

rules and scheduling orders'"). As plaintiffs, the Dawkins bear the burden to prove damages and causation and therefore would "need the material to support its own contentions" in this suit. *Sierra Club*, 73 F.3d at 571. Therefore, the necessity of expert testimony increases the importance that Plaintiffs ensure that Gadrow was timely and thoroughly noticed through its designation and service of a report. *Geiserman*, 893 F.2d at 791.

    2.    <u>Continuance Would Further Prejudice Allstate</u>

The second and third factors also weigh for exclusion—any delay in noticing its specific factual contentions in this suit undermines Allstate's preparation of its defenses and disrupts this Court's Scheduling Order. *Bradley v. U.S.*, 866 F.2d 120, 125-26 (5th Cir. 1989). More importantly, the improper actions in this case prejudice Allstate because they have hampered its ability to investigate Plaintiffs' assertions and to understand the nature of the testimony that may be produced against it in support of those claims. Throughout this period, none of the allegations have changed and Plaintiffs have not given up any claim under Chapter 542 of the Texas Insurance Code, which means that penalty interest may still be running if the claim is ultimately determined to be owed.

Plaintiffs will argue that a continuance would provide a cure, but that argument fails because any additional delay further prejudices Allstate. Allstate has fully complied with the Federal Rules and has had to incur litigation costs, as well as properly designating its own experts. Forcing Allstate to incur more costs to cover Plaintiffs' errors only continues the prejudice by forcing it to incur more fees while penalty interest may still be running. Another Southern District Court rejected such tactics because the delay caused by its actions prejudiced the insurer. *Wright v. Lloyds*, No. 3:22-cv-00357, 2023 U.S. Dist. LEXIS 195825, at *7 (S.D. Tex. 2023), citing *In re Universal Underwriters of Texas Ins. Co.*, 345 S.W.3d 404, 405 (Tex. 2011) ("[P]rejudice to a

8

party may arise in any number of ways that demonstrate harm to a party's legal rights or financial position."). Importantly, granting a continuance would also serve essentially as a "get out of jail free" card. [1] *See also Bradley*, 866 F.2d at 126 ("a continuance would neither punish the government for its conduct nor deter similar behavior in the future."). Therefore, this factor favors striking.

3. There is No Explanation for the Failure

The final factor weighs heavily in favor of Allstate. *See Geiserman*, 893 F.2d at 791. Plaintiffs have offered no explanation for this conduct through either a motion for leave or a request for a Rule 29 agreement. Allowing Plaintiffs' behavior would defeat the purpose of a scheduling order. *S&W Enters., LLC v. SouthTrust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003). Therefore, this factor weighs in Allstate's favor.

**C. Further, Federal Rule of Evidence 702 should bar Gadrow's opinions because they lack sufficient reliability.**

Apart from the disclosure requirements, in order for Gadrow's testimony to be admissible, Plaintiffs must establish that (1) he is qualified, (2) the proffered testimony is relevant to the suit, and (3) the testimony is reliable. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). In assessing reliability, the Fifth Circuit has held that expert testimony must "be grounded in the methods and procedures of science" and may not consist of "unsupported speculation or subjective belief." *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999). All aspects of an expert's testimony must be reliable, including the methodology, the facts underlying the expert's opinion, and the link between the facts and conclusion. *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 335 (5th Cir. 2007). An expert opinion based upon "insufficient,

---

[1] Even assuming, *arguendo*, that the second and third factors militate against exclusion, the Court should still exclude the expert testimony because, in that instance, "the failure to satisfy the rules would never result in exclusion, but only in a continuance." *Hamburger*, 361 F.3d at 884.

erroneous information" fails the reliability standard. *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009). *Daubert* set forth the following four factors that courts should consider when determining whether an expert's methodology is reliable:

> (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community. *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 593-94 (1993).

In short, the QCC Estimate gives the Court no basis to understand what factual basis supports Gadrow's line items, and why or how they should be applicable here. Gadrow's opinions fail to meet the standards for reliability necessary for presentation to a jury as follows:

1. <u>COVID-19 Protocols</u>

The QCC Estimate includes $21,319.11 for "COVID 19 Special Provisions", despite the fact that the QCC Estimate was completed on May 31, 2023. [Doc. 26-1, at p. 4-6]. The QCC Estimate indicates that these line items are required by an Order of Harris County Judge Lina Hidalgo [Doc. 26-1, at p. 4]. Judge Hidalgo's Order was issued on July 1, 2020, applied only to public job sites, not residential interior jobs, and was rescinded on March 18, 2022, more than a year before Gadrow visited the Plaintiffs' property. As such, Gadrow's opinion that these charges would be required to bring Plaintiffs' property back to its pre-loss condition is based on erroneous information and fails the reliability standard.

2. <u>Fall Protection Line Items in Interior Estimate</u>

The QCC Estimate also includes $3,317.55 for "General Laborer", on top of $11,611.20 for "Residential Supervision/ Project Management" [Doc. 26-1, at p. 3-4]. The General Laborer line item includes a citation to OSHA Section 1926.502(h)(1), which relates to certain fall protection requirements. *Id*. at p. 4. However, the QCC estimate relates only to the interior of

Plaintiffs' property and doesn't involve any work for which fall protection would be necessary. As such, Gadrow's opinion that these charges would be required to bring Plaintiffs' property back to its pre-loss condition is based on erroneous information and fails the reliability standard.

3. Mold Related Line Items

The QCC estimate also includes 88 hours' worth of "Hazardous Waste/Mold Cleaning" for a total cost of $6,926.48. [Doc. 26-1, at p. 4]. Plaintiffs' Expert Designations indicate that Gadrow noticed "significant contamination from mold and hazardous waste" at Plaintiffs' property and will testify to same. However, of the less than twenty photographs attached to the QCC Estimate, not one singular photo shows any type of mold or purports to. [Doc. 26-1, at p. 11-29]. Moreover, the Hazardous Waste/Mold Cleaning line item is listed under Covid 19 Special Provisions, which indicates that Gadrow only believed same was necessary in light of the above-mentioned Order of Judge Hidalgo. [Doc. 26-1, at p. 4]. Further, Plaintiffs have produced no information showing that Gadrow is qualified to opine on mold and mold remediation, which is a licensed profession in the State of Texas. As such, Gadrow's opinions should be barred because there is no reliable link between the "facts" of his observations and his conclusions.

4. Profit Margin

Lastly, the QCC Estimate applies a 11.04% profit markup—deviating from the recognized 10% industry standard without explanation or supporting data. [Doc. 26-1, at p. 10]. *Tolar v. Allstate Texas Lloyds Co.*, 772 F. Supp. 2d 825, 831 (N.D. Tex. 2011) (citing *Ghoman v. New Hampshire Ins. Co.*, 159 F. Supp. 2d 928, 936 (N.D. Texas 2001). Having deviated from industry standards, the QCC Estimate provides no understanding of why or how Gadrow arrived at these conclusions. Without the basis for Gadrow's opinion, there is no way for this Court to know why and/or how this testimony is "grounded in the methods and procedures of science." *M&S*

*Petroleum, Inc.*, 174 F.3d at 668.

     5.     <u>No Information on Prior Claims</u>

Moreover, because Plaintiffs failed to provide a list of document reviewed by Gadrow in formulating his opinions, it is unknown whether Gadrow reviewed any information relating to Plaintiffs' prior similar water damage claims. Without this information, the Court cannot discern whether Gadrow's estimate constitutes a reliable opinion of the damages to the Plaintiffs' property from the current loss, further negating the reliability of the QCC Estimate.

## V.    CONCLUSION & PRAYER FOR RELIEF

In short, the QCC Estimate gives the Court no basis to understand what factual basis supports these line items, and why or how they should be applicable here. Mr. Gadrow's opinions fail to meet the standards for reliability necessary for presentation to a jury. As such, Defendant Allstate Vehicle and Property Insurance Company respectfully prays that this Court grant this Motion to Strike Plaintiffs' Expert Richard Brandon Gadrow, prevent Gadrow from testifying at trial as an expert, and for such other and further relief to which it may show itself justly entitled.

                             Respectfully submitted,

                             Martin, Disiere, Jefferson & Wisdom, L.L.P.

                             By:  */s/ Michael W. McCoy*
                                  **Michael W. McCoy**
                                  State Bar No. 13471850
                                  SDTX Federal No. 3801
                                  E-mail: mccoy@mdjwlaw.com
                                  **Kurstin P. Grady**
                                  State Bar No. 24136868
                                  SDTX Federal No. 3866997
                                  E-mail: grady@mdjwlaw.com
                        808 Travis Street, Suite 1100
                        Houston, Texas 77002
                        Telephone: (713) 632-1700
                        Facsimile: (713) 222-0101
                        **ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF CONFERENCE**

This is to certify that the office of the undersigned conferred with counsel for the Plaintiffs via email on August 27, 2025, and Plaintiffs are opposed to this motion.

                                         */s/ Michael W. McCoy*
                                         Michael W. McCoy

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2025, I served the following counsel of record electronically or by other manner authorized by the Federal Rules of Civil Procedure:

| | *Via ECF:* |
|---|---|
| Eric B. Dick | eric@dicklawfirm.com |
| DICK LAW FIRM, PLLC | |
| 3701 Brookwoods Drive | |
| Houston, Texas 77092 | |

                                         */s/ Michael W. McCoy*
                                         Michael W. McCoy