UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MATTHEW & MONICA DAWKINS,** *Plaintiffs,* | § § § | |
| v. | § § | Civil Action No. 4:24-cv-639 |
| **ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY,** *Defendant.* | § § § § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE HANEN:

COME NOW, Plaintiffs Matthew and Monica Dawkins, and file their Response to Defendant Allstate Vehicle and Property Insurance Company's Motion for Summary Judgment, and would respectfully show the Court as follows:

**INTRODUCTION AND SUMMARY OF THE ARGUMENT**

This case presents a straightforward coverage dispute that Defendant Allstate Vehicle & Property Insurance Company ("Defendant") has transformed into an exercise in contradictory reasoning. Plaintiffs Matthew and Monical Dawkins ("Plaintiffs") suffered water damage on October 23, 2022, when their master bathroom faucet leaked. They immediately identified the source, arranged for plumbing repairs, and reported the loss to Defendant under their homeowners policy, which expressly covers water that escapes from a plumbing system due to accidental discharge or overflow.

Defendant's motion for summary judgment fails because it is built on a fundamental contradiction in its own evidence. Defendant's engineering expert, HAAG, conducted an investigation and "found evidence that minor 'leakage' occurred at the master bathtub," which is

Page **1** of **11**

the exact fixture Plaintiffs identified as the source of their October 2022 claim. Yet in the very same report, and within the same paragraph, HAAG concluded there was "no evidence of a plumbing leak in the master bathroom." Defendant cannot have it both ways: either there was leakage at the master bathtub (confirming coverage) or there was no plumbing leak (supporting denial), but not both simultaneously.

This internal contradiction reveals the outcome-driven nature of Defendant's investigation and creates genuine issues of material fact that preclude summary judgment. When an insurer's own expert acknowledges the very type of covered peril the insured claimed, that expert cannot credibly conclude no covered cause exists.

Defendant's legal theories fare no better than its factual assertions. First, Defendant misapplies the concurrent causation doctrine by attempting to shift its statutory burden under Texas Insurance Code § 554.002, which places the burden of proving exclusions squarely on the insurer. Defendant has not proven that any policy exclusion applies to the damages Plaintiffs claim, yet it argues Plaintiffs must "segregate" covered from non-covered losses. This reverses the Legislature's clear directive.

Second, Defendant's extra-contractual defenses ignore that Texas law permits Chapter 541 and bad faith claims when an insured proves either a right to policy benefits or an independent injury. Because Plaintiffs have raised triable issues on coverage confirmed by Defendant's own expert finding "leakage," their statutory claims survive regardless of any independent injury analysis.

The record establishes that Plaintiffs satisfied their initial burden to show coverage by demonstrating that water escaped from their plumbing system on October 23, 2022. Defendant's own evidence supports this showing. A professional damage assessment by Quantum Claims

Consulting documented $73,771.06 in necessary repairs, which Defendant failed to reasonably investigate or address. Instead, Defendant engaged in the type of internally inconsistent investigation that creates, rather than resolves, factual disputes.

Summary judgment is inappropriate where, as here, the movant's own evidence contradicts its legal position and creates genuine issues of material fact on coverage, causation, and the reasonableness of the claim investigation. Defendant's motion should be denied.

## STATEMENT OF THE ISSUES

The issue is whether Defendant Allstate is entitled to summary judgment when its own engineering expert confirmed "evidence that minor 'leakage' occurred at the master bathtub" on the exact date and location Plaintiffs reported a covered plumbing escape, yet Defendant simultaneously maintains there was "no evidence of a plumbing leak" - creating irreconcilable contradictions in its investigation that preclude judgment as a matter of law.

## FACTUAL BACKGROUND

On October 23, 2022, Plaintiffs Matthew and Monica Dawkins experienced water damage to their residence. Dkt. 31 at ¶6. Plaintiffs promptly discovered the source of the leak in their master bathroom faucet and immediately arranged for JC Plumbing to repair the leak. *Id.* Plaintiffs timely reported this loss to Defendant Allstate Vehicle and Property Insurance Company.

Defendant's own engineering expert, HAAG Engineering, conducted an inspection of the property on February 20, 2023. Ex. A (Sworn Declaration of Paul R. Williams), Dkt. 31. Significantly, HAAG's investigation confirmed that "minor 'leakage' occurred at the master bathtub." Dkt. 31 at ¶7. This finding directly corroborated Plaintiffs' report of a plumbing escape at the precise location they identified, which was the master bathroom fixture. The areas affected

by the October 23, 2022, incident included the master bathroom, kitchen, dining room, and associated flooring, drywall, cabinetry, and baseboards.

Despite this confirmation of a covered plumbing leak, Defendant's investigation revealed troubling internal inconsistencies. While HAAG acknowledged evidence of "minor leakage" at the master bathtub, the same report simultaneously declared there was "no evidence of a plumbing leak in the master bathroom." *Id.* These contradictory positions within a single paragraph of Defendant's own evidence demonstrate the unreliable and outcome-driven nature of the investigation.

HAAG's inspection also documented water damage in other areas of the home, including water damage to the living room flooring near the back door and peeling wall paint in the breakfast area, but attributed these conditions to wind-driven rain based on inadequate waterproofing and a dining room ceiling deformity to normal use or splashing in the bathtub. Ex. A at ¶9, Dkt. 31. These attributions were made without meaningfully addressing whether the documented October 2022 plumbing leak could have contributed to the interior moisture patterns and damage Plaintiffs reported.

Defendant's investigation also revealed knowledge of prior water damage claims at the property. However, the record establishes that these previous incidents involved different areas of the home and had been resolved through completed repairs. Defendant wrongfully attributed the October 2022 damages to these earlier, unrelated incidents.

On March 20, 2023, Defendant issued a denial letter stating that it "could not cover Plaintiffs' claimed loss because there was no evidence/support of a loss caused by a peril that we cover, and more specifically, no damages were the result of a leak from the bathtub faucet." Dkt.

31 at ¶8. This denial contradicted Defendant's own expert's finding of "leakage" at the master bathtub and ignored the contemporaneous plumbing repair.

In May 2023, Plaintiffs retained Quantum Claims Consulting to prepare a comprehensive damage assessment. Ex. D (Quantum Claims Consulting Estimate), Dkt. 31. This professional evaluation documented extensive water damage requiring repairs totaling $73,771.06, including damage to drywall, flooring, cabinetry, baseboards, and necessary hazardous material remediation.

The record reflects that Defendant failed to conduct a reasonable investigation despite having clear evidence of a covered cause of loss. Defendant's adjusters discounted this covered causation in favor of speculation about excluded causes, particularly when the previous unrelated leak had occurred in a different section of the home.

Following Defendant's wrongful denial, Plaintiffs, through counsel, sent a demand letter on September 10, 2023, seeking payment of $73,771.06 for damage to the covered property. Dkt. 31 at ¶9. Defendant rejected this demand and Plaintiffs' invocation of appraisal on October 20, 2023, asserting there is no coverage for this loss under the policy. *Id.*

## LEGAL ARGUMENT

**A. Plaintiff satisfied the initial burden to show a loss is covered by the policy.**

Defendant fundamentally mischaracterizes the evidence regarding coverage. Plaintiffs clearly satisfied their initial burden by demonstrating that water escaped from their plumbing system on October 23, 2022. As established in the record, Plaintiffs located the source of the leak in the master bathroom faucet and had JC Plumbing repair the leak. Dkt. 31 at ¶6. The policy unambiguously covers "sudden and accidental direct physical loss...caused by water that escapes from a plumbing...system...due to accidental discharge or overflow." Ex. B (The Policy) at 17 ¶13, Dkt. 31,.

Defendant's motion actually supplies additional evidence satisfying Plaintiffs' initial showing: HAAG's engineer "found evidence that minor 'leakage' occurred at the master bathtub." Dkt. 31 at ¶7. That admission directly undercut Defendant's assertion of "no covered cause" and corroborates Plaintiffs' proof that a covered plumbing escape occurred on the date of loss. Whether HAAG later attributes particular staining or ceiling deformation to "splashing" is a weight-and-credibility issue, not a basis to negate coverage at the threshold. The law requires Plaintiffs to produce evidence creating a fact question that a covered peril occurred. Plaintiffs have done so through (1) contemporaneous report and identified source, (2) a plumbing repair, and (3) defendant's own expert acknowledging leakage at the precise fixture.

Causation presents a clear question of fact for the jury. Defendant claims that damages were caused by prior incidents rather than the October 2022 plumbing leak, but this assertion conflicts with documented evidence. Plaintiffs made repairs to prior claims, and the previous claim was based on a different section of the home, yet Defendant's investigation failed to properly account for this evidence. The competing assessments between Quantum's professional evaluation and HAAG's conclusions create precisely the type of factual dispute that precludes summary judgment.

**B. Defendant's investigation was inadequate and raises genuine issues of fact.**

Defendant's own account reveals an internally inconsistent and outcome-driven investigation that a jury could readily find unreasonable. Defendant's engineer acknowledged "evidence that minor 'leakage' occurred at the master bathtub," yet the motion simultaneously asserts there was "no evidence of a plumbing leak in the master bathroom." Dkt. 31 at ¶7. Those two positions cannot both be true. The conflict appears in the very paragraph Defendant cites: HAAG notes minor leakage, then declares there was "no evidence of water damage resulting from

the claimed plumbing leak" and, in sum, "no evidence of a plumbing leak" supporting Plaintiffs' claim. That inconsistency alone creates a fact issue as to whether the investigation fairly evaluated the covered cause Plaintiffs reported. This internal inconsistency demonstrates the inadequacy of the investigation and supports Plaintiffs' bad faith claims.

Moreover, HAAG's dismissal of observable water damage documented by Quantum raises serious questions about the thoroughness and objectivity of Defendant's investigation. The engineer "observed water damage to the living room flooring near the back door and peeling wall paint in the breakfast area," but attributed those conditions to "wind-driven rain" and "inadequate waterproofing," without meaningfully addressing whether the October 2022 plumbing leak plausibly contributed to the interior moisture patterns and damage the insureds reported. That kind of reassignment of cause, especially in a home with a contemporaneously reported and repaired plumbing leak, presents a classic fact dispute for the jury. The same is true of HAAG's explanation for a minor deformity in the dining room ceiling, which it attributes to normal use/splashing in the bathtub rather than a leak. Ex. A (Sworn Declaration of Paul R. Williams), Dkt. 31. A jury could reasonably reject that inference given the admitted "minor leakage" at the master bathtub and Plaintiffs' report and repair, and could conclude the investigation discounted covered causation in favor of speculation, particularly when the previous leak was on the other side of the home.

### C. The concurrent causation doctrine conflicts with statutory law.

Texas law puts the burden of proving exclusions squarely on the insurer. Tex. Ins. Code § 554.002 ("the insurer has the burden of proof as to any language of exclusion in the policy"). Defendant's motion tries to invert that rule by invoking "concurrent causation" and insisting that Plaintiffs must segregate between covered and non-covered causes. But Defendant's own authorities do not displace the Legislature's burden rule or relieve an insurer from first *proving*

that an exclusion applies to some portion of the claimed damage. Defendant's brief confirms its approach: it asserts the insured "cannot meet their burden of segregating covered and non-covered losses" That is not what § 554.002 provides.

Defendant has not carried its threshold exclusion burden on this record. The policy covers "sudden and accidental direct physical loss…caused by water that escapes from a plumbing…system…due to accidental discharge or overflow." Ex. B at 17, ¶ 13, Dkt. 31. To shift to "concurrent causation," Defendant had to prove that a non-covered peril, by virtue of an exclusion, caused some of the damages it attributes to wind-driven rain or "splashing." Instead, it relies on HAAG's report that (a) some observed conditions were "caused by wind-driven rain" and (b) a ceiling deformity resulted from "normal use/splashing," then declares Plaintiffs failed to segregate. Without competent proof tying those conditions to a specific policy exclusion, the doctrine cannot be used to transfer the insurer's statutory burden to the insured.

Finally, to the extent any concurrent causation analysis applies, all damages claimed by Plaintiffs were caused by the water leak from the master bathroom faucet. Defendant's assertion that damages stem from other locations lacks evidentiary support and contradicts the localized nature of the damage and repair efforts. Even if the doctrine had a role here, Defendant has not shown multiple operative causes for the October 23, 2022 loss. Its motion asserts "at least some" damage came from non-covered perils and cites HAAG to say living-room and breakfast-area issues were wind-driven rain and that the dining-room ceiling deformity was "splashing," but those are disputed attribution opinions, which are not undisputed facts, and none refutes that a covered plumbing escape occurred at the master bath on the date of loss. On this record, a reasonable jury could find a single producing cause (the plumbing leak), which would make concurrent-causation

inapplicable. Summary judgment cannot rest on shifting the burden to Plaintiffs to segregate before Defendant proves any exclusion applies.

Ultimately, Defendant's framing confirms why § 554.002 controls. The motion treats concurrent causation as a universal insured's burden by stating that "the insured bears the burden of segregating damage solely attributable to the covered event from other damages", then uses that framing to argue Plaintiffs "cannot meet their burden." The statute says otherwise: the insurer bears the burden to establish exclusions. Only after the insurer meets that burden does any allocation issue arise for the fact-finder. On this motion, Defendant has not made that showing.

### D. Plaintiff's extra-contractual claims survive summary judgment.

Defendant's "independent injury" and "bona fide dispute" defenses do not warrant summary judgment on Plaintiffs' extra-contractual claims. As Defendant itself acknowledges, Texas law permits recovery on Chapter 541 and bad-faith theories when the insured (1) proves a right to benefits or (2) proves an injury independent of benefits. Because Plaintiffs have raised a triable issue that a covered plumbing escape occurred and that Defendant wrongfully denied benefits, their Chapter 541 claims may proceed without separate proof of independent injury. Additionally, Defendant's inadequate investigation, failure to properly consider evidence of prior repairs, and internal inconsistencies in their expert's findings all support claims under various provisions of Chapter 541 of the Texas Insurance Code.

In any event, Plaintiffs have creating fact disputes on statutory violations and bad faith that preclude judgment as a matter of law. The motion concedes HAAG "found evidence that minor 'leakage' occurred at the master bathtub," yet elsewhere asserts there was "no evidence of a plumbing leak," and it attributes interior damage to wind-driven rain or "splashing" without reconciling the reported leak and plumbing repair. A jury could view that internal inconsistency

and the failure to obtain or credit readily available repair proof as an unreasonable investigation and misrepresentation during claims handling, which are actionable under Plaintiffs' extra-contractual claims.

Plaintiffs' discovery responses likewise describe specific statutory and common-law violations tied to Defendant's handling: failure to reasonably investigate and timely acknowledge/accept or reject, misrepresentations about the cause and scope of loss, outcome-driven denial despite documentation, and resulting damages (including prompt-payment interest). That evidence viewed favorably to Plaintiffs creates classic jury questions on whether Defendant lacked a reasonable basis and whether its statutory violations caused recoverable harm.

At minimum, because a jury could find a right to policy benefits on this record, Plaintiffs' Chapter 541 claims survive regardless of a separate independent-injury showing.

## CONCLUSION AND PRAYER FOR RELIEF

Defendant's motion for summary judgment must fail because it rests on contradictory evidence and misapplied legal standards. Defendant cannot simultaneously rely on its expert's finding of "evidence that minor 'leakage' occurred at the master bathtub" while arguing there was no covered plumbing leak. This fundamental contradiction in Defendant's own evidence creates genuine issues of material fact that preclude judgment as a matter of law.

The record establishes that Plaintiffs have satisfied their initial burden by demonstrating a covered cause of loss, which included water that escaped from their plumbing system on October 23, 2022. The policy unambiguously covers such losses, and Texas Insurance Code § 554.002 places the burden on Defendant to prove any exclusions apply before attempting to shift causation burdens to Plaintiffs.

Defendant's investigation was internally inconsistent, outcome-driven, and failed to reasonably evaluate readily available evidence of prior repairs and the localized nature of the October 2022 incident. These deficiencies create triable issues on coverage, causation, and the adequacy of Defendant's claims handling that cannot be resolved on summary judgment.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that this Honorable Court deny Defendant's Motion for Summary Judgment in its entirety and grant such other and further relief, both general and special, at law and in equity, to which Plaintiffs may be justly entitled.

Dated: September 19, 2025.

Respectfully submitted,

/s/ Eric B. Dick
Eric B. Dick, LL.M.
TBN: 24064316
FIN: 1082959
DICK LAW FIRM, PLLC
3701 Brookwoods Dr.
Houston, TX 77092-8317
(844) 447-3234 Office
eric@dicklawfirm.com
**ATTORNEY FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that on this day I caused this document to be served on all parties of record via electronic transmission.

/s/Eric Dick
Eric Dick